**MICHAEL N. FEDER**
Nevada Bar No. 7332
DICKINSON WRIGHT PLLC
8363 West Sunset Road, Suite 200
Las Vegas, NV 89113
Telephone: 702-550-4440
Facsimile: 844-670-6009
Email: mfeder@dickinson-wright.com

**MARTIN D. HOLMES** (*Pro Hac Vice to be submitted*)
Tennessee Bar No. 012122
PETER F. KLETT (*Pro Hac Vice to be submitted*)
Tennessee Bar No. 012688
DICKINSON WRIGHT PLLC
Fifth Third Center, Suite 800
424 Church Street
Nashville, TN 37219
Telephone: 615-244-6538
Facsimile: 844-670-6009
Email: mdholmes@dickinsonwright.com
pklett@dickinsonwright.com

*Attorneys for Plaintiffs, Putative Collective Class Members and Putative Hawaii Class Members*

**DISTRICT COURT**
**CLARK COUNTY, NEVADA**

| | |
|---|---|
| DANIEL GONZALEZ and JEFFREY HUGHES, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DIAMOND RESORTS INTERNATIONAL MARKETING, INC., DIAMOND RESORTS INTERNATIONAL, INC., DIAMOND RESORTS CORPORATION, and WEST MAUI RESORTS PARTNERS, L.P.,<br>Defendants. | Case No.<br><br>COLLECTIVE AND CLASS ACTION COMPLAINT |



**COLLECTIVE AND CLASS ACTION COMPLAINT**

Plaintiffs DANIEL GONZALEZ and JEFFREY HUGHES ("Plaintiffs" or "Representative Plaintiffs") bring this collective action complaint, on behalf of themselves and all others similarly situated ("Collective Class Members"), against Defendants DIAMOND RESORTS INTERNATIONAL MARKETING, INC., DIAMOND RESORTS INTERNATIONAL, INC., DIAMOND RESORTS CORPORATION, and WEST MAUI RESORTS PARTNERS, L.P. ("Defendants") for violations of the Fair Labor Standards Act ("FLSA"). In addition, Plaintiff DANIEL GONZALEZ brings this class action complaint, on behalf of himself and all others similarly situated ("Hawaii Class Members"), against Defendants DIAMOND RESORTS INTERNATIONAL MARKETING, INC., DIAMOND RESORTS INTERNATIONAL, INC., DIAMOND RESORTS CORPORATION and WEST MAUI RESORTS PARTNERS, L.P. ("Defendants") for violations of the Hawaii Wage and Hour Law. For their Complaint against Defendants, Plaintiffs allege the following:

## I. OVERVIEW

1. This is a collective action brought by Plaintiffs on behalf of themselves and all similarly situated current and former, non-exempt Sales Representatives ("Collective Class Members") who worked on-site at one or more of Defendants' resorts (and/or affiliated resorts) at any time since May 29, 2015 (the "FLSA Recovery Period").

2. This is a class action brought by Plaintiff Daniel Gonzalez on behalf of himself and all similarly situated current and former, non-exempt Sales Representatives ("Hawaii Class Members") who worked on-site at one or more of Defendants' resorts (and/or affiliated resorts) in the state of Hawaii at any time since May 29, 2012 (the "Hawaii Class Recovery Period").

3. During their employment with Defendants, including the Recovery Periods as defined above, Plaintiffs, Collective Class Members and Hawaii Class Members were classified as non-exempt Sales Representatives employed by Defendants to work on-site at one or more of Defendants' resorts (or affiliated resorts).

4. As non-exempt employees, Plaintiffs and Collective Class Members were entitled to overtime pay pursuant to the FLSA when they worked more than forty (40) hours in a workweek.



DICKINSON WRIGHT ATTORNEYS AT LAW

5. As non-exempt employees, Plaintiff Daniel Gonzalez and Hawaii Class Members were entitled to overtime pay pursuant to the Hawaii Wage and Hour Law when they worked more than forty (40) hours in a workweek.

6. During their employment with Defendants, including during the Recovery Periods defined above, Plaintiffs, Collective Class Members and Hawaii Class Members frequently worked more than forty (40) hours in a workweek, but were not properly paid overtime because regular rate of pay was not computed based on their entire compensation for a given workweek, but instead excluded their commission and/or bonus earnings.

7. Defendants' failure to pay lawful overtime pay to Plaintiffs and Collective Class Members by excluding all compensation earned from the computation of their regular rate of pay during the Recovery Periods defined above, constitutes a regular, recurring and willful violation of the FLSA.

8. Defendants' failure to pay lawful overtime pay to Plaintiff Daniel Gonzalez and Hawaii Class Members by excluding all compensation earned from the computation of their regular rate of pay during the Recovery Periods defined above, constitutes a regular, recurrring and willful violation of the Hawaii Wage and Hour Law.

9. Plaintiffs and Collective Class members are similarly situated under the FLSA, 29 U.S.C. § 216(b), as they commonly suffered wage losses under Defendants' uniform and illegal payroll policies, practices and procedures as alleged herein.

10. Plaintiff Daniel Gonzalez and Hawaii Class Members are similarly situated under Federal Rule of Civil Procedure 23, as they commonly suffered wage losses under Defendants' uniform and illegal payroll policies, practices and procedures as alleged herein.

## II. JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over the collective action brought for violations of the FLSA pursuant to 29 U.S.C. §216(b) and 28 U.S.C. §1331 & §1343. This Court has supplemental jurisdiction over the Hawaii state law claims pursuant to 28 U.S.C. §1367.

12. Venue is proper in the District of Nevada under 28 U.S.C. §1391 because Defendants' principal place of business is in this District and a substantial portion of the events



forming the basis of the suit, including the decision to not properly pay overtime to Defendants' non-exempt Sales Representatives, occurred in this District.

**III. PARTIES**

13. Plaintiff Daniel Gonzalez ("Gonzalez") is a resident and citizen of California. Gonzalez's Consent Form to join this lawsuit is attached as **Exhibit 1**. During the Recovery Periods as defined above, Gonzalez worked as a non-exempt Sales Representative for Defendants on-site at one or more of Defendants' resorts in Hawaii and California.

14. Plaintiff Jeffrey Hughes ("Hughes") is a resident and citizen of Florida. Hughes' Consent Form to join this lawsuit is attached as **Exhibit 2**. During the FLSA Recovery Period as defined above, Hughes worked as a non-exempt Sales Representative for Defendants at one of Defendants' resorts in Florida.

15. Defendant Diamond Resorts International Marketing, Inc. ("DRIMI") is a California corporation with its principal place of business located at 10600 W. Charleston Blvd., Las Vegas, Nevada 89135. DRIMI's registered agent for service in Nevada is National Registered Agents, Inc. of Nevada, 701 S. Carson Street, Suite 200, Carson City, Nevada.

16. Defendant Diamond Resorts International, Inc. ("DRII") is a Delaware corporation with its principal place of business located at 10600 W. Charleston Blvd., Las Vegas, Nevada 89135. DRII's registered agent for service in Nevada is National Registered Agents, Inc. of Nevada, 701 S. Carson Street, Suite 200, Carson City, Nevada.

17. Defendant Diamond Resorts Corporation ("DRC") is a Maryland corporation with its principal place of business located at 10600 W. Charleston Blvd., Las Vegas, Nevada 89135. DRC's registered agent for service in Nevada is National Registered Agents, Inc. of Nevada, 701 S. Carson Street, Suite 200, Carson City, Nevada.

18. Defendant West Maui Resorts Partners, L.P. ("WMRP") is a Delaware limited partnership with its principal place of business located at 10600 W. Charleston Blvd., Las Vegas, Nevada 89135. WMRP's registered agent for service in Delaware is National Registered Agents, Inc., 160 Greentree Drive, Suite 101, Dover, Delaware.



DW DICKINSON WRIGHT ATTORNEYS AT LAW

## IV. DEFENDANTS' BUSINESS OPERATIONS

19. Defendants, individually or collectively, operate under the trade name Diamond Resorts. Defendants, individually or collectively, own and/or manage over 100 ownership resorts.

20. Defendants, individually or collectively, sell ownership interests in their resort properties to the general public.

21. At many of Defendants' resorts, including those in Hawaii, California and Nevada, Defendants have sales offices on site which Defendants use to market and sell ownership interests in Defendants' resort properties. Defendants use a similar business model for sales, consisting of sales offices located on site where prospective owners and current owners are brought and solicited to purchase ownership interests in Diamond resort properties.

22. In addition, the on-site sales offices share common management and/or a common management structure, and utilize the same uniform policies, practices and procedures for conducting sales operations, as well as timekeeping, compensation and payroll for Sales Representatives.

23. Defendants also utilize an upper management structure at the levels above the on-site sales offices, consisting of regional managers, as well as management at Defendants' corporate offices in Las Vegas, Nevada.

24. Upper level management decisions, including those related to the policies, practices and procedures for conducting sales operations, timekeeping, compensation and payroll, are made at the corporate level in Las Vegas, Nevada, throughout the Recovery Periods defined above.

25. At all relevant times, including throughout the Recovery Periods, Defendants employed and continue to employ non-exempt Sales Representatives at their on-site offices to help market and sell ownership interests in Defendants' properties.

26. Defendants' Sales Representatives share the same job duties and responsibilities of selling ownership interests in Diamond properties to prospective owners and existing owners.

27. First, certain Sales Representatives focus on attempting to sell ownership interests to prospective new owners who are staying at a Diamond resort or affiliated resort. Some of the prospective owners receive a free or discounted stay or some other type of promotion, and in exchange, obligate themselves to attend a meeting at Diamond's offices (typically referred to as a



"tour"), where the Sales Representatives pitch Diamond's ownership program and attempt to make a sale.

28. If successful, a purchase agreement is drafted and the closing occurs, almost always on the same day of the sale.

29. Second, certain Sales Representatives attempt to sell additional ownership interests to existing owners, thereby increasing the individual or couple's ownership interest in Diamond's resort properties. Typically, while an owner is staying on site at a Diamond resort or affiliated resort, Defendants utilize various marketing strategies to convince an existing owner to come to Diamond's sales office, at which time the Sales Representative who is assigned the "tour" attempts to convince the existing owner to increase his or her ownership interest.

30. If a sale is made, a purchase agreement is drafted and the closing occurs, almost always on the same day of the sale.

31. Third, if a Sales Representative is unsuccessful in making a sale to a prospective new owner, the prospective owner is referred to another Sales Representative, who attempts to sell the prospective owner a "sampler package," which is essentially a lease to purchase agreement allowing the purchaser to "convert" to ownership within a certain period of time, typically one (1) year.

32. If successful, a purchase agreement is drafted and executed on the same day of the sale.

33. During the Recovery Periods, Sales Representatives were paid on a commission and bonus basis, with an hourly minimum wage advance (typically the minimum wage rate in the state where the Sales Representative worked) that was recouped or recoverable from earned commissions.

34. During the Recovery Periods, Defendants classified all Sales Representatives as "non-exempt," overtime eligible employees who were entitled to receive overtime pay in workweeks in which they worked more than forty (40) hours in a workweek based on their total compensation for the workweek.

35. During the Recovery Periods, when Defendants' Sales Representatives recorded more than (40) hours in a workweek, Defendants paid them overtime based one and one-half times



the hourly minimum wage advance (typically one and one-half times the minimum wage rate in the state where the Sales Representative worked).

36. During the Recovery Periods, when Defendants' Sales Representatives recorded more than (40) hours in a workweek, Defendants did not pay them overtime based on their total compensation for the workweek, including commission and/or bonus earnings), but instead paid them overtime at the rate of one and one-half times the hourly minimum wage advance) they received.

37. During the FLSA Recovery Period, Gonzalez worked as a Sales Representative at one of Defendants' resorts in San Diego, California. During the FLSA Recovery Period, Gonzalez worked more than forty (40) hours in certain workweeks but his regular rate of pay for purposes of calculating the overtime pay he was due was based on the hourly minimum wage advance he received, and not his total earnings for the workweek.

38. During the FLSA Recovery Period, Hughes worked more than forty (40) hours in certain workweeks but his regular rate of pay for purposes of calculating the overtime pay he was due was based on the hourly minimum wage advance he received, and not his total earnings for the workweek.

39. During the Hawaii Class Recovery Period, Gonzalez worked as a Sales Representative at one of Defendants' resorts in Hawaii. During the Hawaii Class Recovery Period, Gonzalez worked more than forty (40) hours in certain workweeks but his regular rate of pay for purposes of calculating the overtime pay he was due was based on the hourly minimum wage advance he received, and not his total earnings for the workweek.

40. Attached as **Exhibit 3** are pay records for Plaintiff Daniel Gonzalez for the pay periods of February 1-14, 2015; February 15-28, 2015; March 1-14, 2015; March 15-28, 2015; and May 24 - June 6, 2015. In each of these pay periods, Mr. Gonzalez was paid an advance at the rate of $7.75 per hour (the minimum wage rate in Hawaii at that time). In each of these pay periods, Mr. Gonzalez worked more than forty (40) hours and was paid overtime at the rate of $11.63 per hour (one and one-half times the minimum wage rate of $7.75 in Hawaii at that time), and Defendants excluded his commissions and other earnings from the computation of his regular rate and overtime pay.



41. Attached as **Exhibit 4** are pay records for Plaintiff Jeffrey Hughes for the pay periods of January 15-28, 2017; April 9-22, 2017; May 7-20, 2017; and July 16-29, 2017. In each of these pay periods, Mr. Hughes was paid an advance at the rate of $8.10 per hour (the minimum wage rate in Florida at that time). In each of these pay periods, Mr. Hughes was paid overtime at the rate of $12.15 per hour (one and one-half times the minimum wage rate of $8.10 in Florida at that time), and Defendants excluded his commissions and other earnings from the computation of his regular rate and overtime pay.

42. The aforementioned examples demonstrating the manner in which Plaintiffs Gonzalez and Hughes were compensated, including the improper and illegal calculation of overtime pay, were and are consistent with Defendants' policies, practices and procedures of compensating other Sales Representatives throughout the Recovery Periods.

## V. COVERAGE UNDER THE FLSA

43. During the FLSA Recovery Period, Defendant DRIMI was and/or is an employer of Hughes, Gonzalez and Collective Class members within the meaning of §3(d) of the FLSA, 29 U.S.C. §203(d).

44. During the FLSA Recovery Period, Defendant DRII was and/or is an employer of Hughes, Gonzalez and Collective Class members within the meaning of §3(d) of the FLSA, 29 U.S.C. §203(d).

45. During the FLSA Recovery Period, Defendant DRC was and/or is an employer of Hughes, Gonzalez and Collective Class members within the meaning of §3(d) of the FLSA, 29 U.S.C. §203(d).

46. During the FLSA Recovery Period, Defendant WMRP was and/or is an employer of Gonzalez and Collective Class members within the meaning of §3(d) of the FLSA, 29 U.S.C. §203(d).

47. During the FLSA Recovery Period, Defendant DRIMI has constituted an enterprise within the meaning of §3(r) of the FLSA, 29 U.S.C. §203(r).

48. During the FLSA Recovery Period, Defendant DRII has constituted an enterprise within the meaning of §3(r) of the FLSA, 29 U.S.C. §203(r).



49. During the FLSA Recovery Period, Defendant DRC has constituted an enterprise within the meaning of §3(r) of the FLSA, 29 U.S.C. §203(r).

50. During the FLSA Recovery Period, Defendant WMRP has constituted an enterprise within the meaning of §3(r) of the FLSA, 29 U.S.C. §203(r).

51. During the FLSA Recovery Period, Hughes, Gonzalez and Collective Class Members are or were employees within the meaning of §3(e)(1) of the FLSA. 29 U.S.C. §203(e)(1).

52. During the FLSA Recovery Period, the minimum wage and overtime provisions set forth in §6 and §7, respectively, of the FLSA applied to Defendants, and to each of Defendants' non-exempt Sales Representatives.

53. During the FLSA Recovery Period, Hughes and Gonzalez were classified as non-exempt employees, entitling them to overtime pay under the FLSA.

54. The job duties performed by Hughes and Gonzalez during their employment with one or all Defendants were substantially similar to those performed by Collective Class Members during their employment with Defendants, including during the FLSA Recovery Period as defined above.

## VI. COVERAGE UNDER HAWAII WAGE AND HOUR LAWS

55. During the Hawaii Class Recovery Period, Defendant DRIMI was and/or is an employer of Gonzalez and Hawaii Class members within the meaning of Chapter 387 of the Hawaii Wage and Hour Law, HRS 387-1.

56. During the Hawaii Class Recovery Period, Defendant DRII was and/or is an employer of Gonzalez and Hawaii Class members within the meaning of Chapter 387 of the Hawaii Wage and Hour Law, HRS 387-1.

57. During the Hawaii Class Recovery Period, Defendant DRC was and/or is an employer of Gonzalez and Hawaii Class members within the meaning of Chapter 387 of the Hawaii Wage and Hour Law, HRS 387-1.

58. During the Hawaii Class Recovery Period, Defendant WMRP was and/or is an employer of Gonzalez and Hawaii Class members within the meaning of Chapter 387 of the Hawaii Wage and Hour Law, HRS 387-1.



DICKINSON WRIGHT
ATTORNEYS AT LAW

59. During the Hawaii Class Recovery Period, Gonzalez and Hawaii Class Members are or were employees within the meaning of Chapter 387 of the Hawaii Wage and Hour Law, HRS 387-1.

60. During the Hawaii Class Recovery Period, the overtime provisions set forth in the Hawaii Wage and Hour Law, HRS 387-2, applied to Defendants, and to each of Defendants' non-exempt Sales Representatives who worked in Hawaii.

61. During the Hawaii Class Recovery Period, Gonzalez worked as a non-exempt employee, entitling him to overtime pay under the Hawaii Wage and H3ur Law.

62. The job duties performed by Gonzalez during his employment with one or all Defendants in Hawaii were substantially similar to those performed by Hawaii Class Members during their employment with Defendants, including during the Class Recovery Period as defined above.

## VII. FIRST CAUSE OF ACTION – FLSA COLLECTIVE ACTION ALLEGATIONS

63. Plaintiffs reassert and re-allege the allegations set forth above.

64. Plaintiffs bring this FLSA collective action on behalf of themselves and all other persons similarly situated pursuant to §16(b) of the FLSA (codified at 29 U.S.C. §216(b)), which provides, in pertinent part, as follows:

> An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.

65. The Collective Action Class consists of all current and former, non-exempt Sales Representatives who worked on site at one or more of Defendants' resorts (and/or affiliated resorts) at any time since May 29, 2015.

66. Section 13 of the FLSA, codified at 29 U.S.C. §213, exempts certain categories of employees from overtime pay obligations. None of the FLSA exemptions from overtime pay apply to Plaintiffs or Collective Class Members while working on site as Sales Representatives at one or more of Defendants' resorts (and/or affiliated resorts) at any time since May 29, 2015.



67. The FLSA requires covered employers, such as Defendants, to compensate all non-exempt employees for all hours worked, including overtime pay for work performed in excess of forty (40) hours per in a workweek.

68. Throughout the FLSA Recovery Period, Defendants classified the Collective Class Members as non-exempt employees who were entitled to receive overtime when they worked more than forty (40) hours in a workweek.

69. Throughout the FLSA Recovery Period the FLSA, and regulations promulgated pursuant to the FLSA, required covered employers, such as Defendants, to pay overtime to non-exempt employees based on the employees' regular rate of pay which is calculated using the total compensation they earned for the workweek.

70. Plaintiffs and Collective Action Class Members are and were victims of Defendants' widespread, repeated, systematic, illegal and uniform compensation policies, practices and/or procedures designed to evade the overtime requirements of the FLSA.

71. Defendants willfully engaged in a pattern of violating the FLSA throughout the FLSA Recovery Period by knowingly failing to pay overtime to Sales Representatives for all hours worked in excess of forty (40) in a workweek and/or failing to pay overtime at the proper regular rate based on Plaintiffs' and Collective Action Class Members' total compensation earned for the workweek.

72. Defendants' conduct constitutes willful violations of the FLSA within the meaning of 29 U.S.C. §255.

73. Defendants are liable under the FLSA for failing to properly compensate Plaintiffs and Collective Action Class Members for the overtime hours they worked during the FLSA Recovery Period. Plaintiffs are substantially similar to Collective Action Class Members, and, as such, notice should be sent to the Collective Class. There are numerous similarly situated current and former Sales Representatives of Defendants who have suffered from Defendants' common and uniform policies, practices and/or procedures of not paying Sales Representatives, including Plaintiffs and Collective Action Class Members, overtime pay for all hours worked above forty (40) in a workweek and/or not paying overtime at the Sales Representatives' lawful regular rate of pay which is calculated based on their total compensation for the workweek. These similarly

situated current and former Sales Representatives would benefit from the issuance of a Court-supervised notice of the present lawsuit and the opportunity to join in this action. Those similarly situated employees are known to Defendants, and are readily identifiable through Defendants' records.

74. Plaintiffs and Collective Action Class Members are entitled to damages equal to the overtime pay for all hours worked above forty (40) in a workweek based on Plaintiffs' and Collective Action Class Members' proper regular rate of pay based on their total earnings for a given workweek as mandated by the FLSA within the three (3) years preceding the filing of the Complaint, because Defendants acted willfully and knew, or showed reckless disregard for whether, their conduct was prohibited by the FLSA.

75. Defendants have not acted in good faith or with reasonable grounds to believe that their actions and omissions were not a violation of the FLSA as alleged in the preceding paragraphs. As a result thereof, Plaintiffs and Collective Action Class Members are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime compensation, as permitted by §16(b) of the FLSA. *See* 29 U.S.C. §216(b). Alternatively, should the Court find that Defendants acted in good faith and with reasonable grounds to believe they were complying with the FLSA, Plaintiffs and Collective Action Class Members are entitled to an award of prejudgment interest at the applicable legal rate of pay.

76. As a result of the aforementioned violations of the FLSA, overtime compensation has been unlawfully withheld by Defendants from Plaintiffs and Collective Action Class Members. Accordingly, Defendants are liable under §16(b) of the FLSA (codified at 29 U.S.C. §216(b)), together with an additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorney's fees, and costs of this action.

## VIII. SECOND CAUSE OF ACTION - HAWAII STATE LAW CLASS ACTION ALLEGATIONS

77. Gonzalez reasserts and re-alleges the allegations set forth above.

78. Gonzalez brings this Hawaii state law class action pursuant to Fed. R. Civ. P. 23(a) and (b) on behalf of himself and all other persons similarly situated (the "Hawaii Class"). The



Hawaii Class is defined as current and former, non-exempt Sales Representatives who worked on site at one or more of Defendants' resorts (and/or affiliated resorts) in the state of Hawaii at any time since May 29, 2012.

79. The persons in the Hawaii Class identified above are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, Defendants employ or have employed more than 50 individuals who satisfy the definition of a Hawaii Class Member during the Recovery Period from May 29, 2012, to the present.

80. There are questions of law and fact common to the Rule 23 Hawaii Class that predominate over any questions solely affecting individual Class Members, including, but not limited to:

A. Whether Defendants employed Gonzalez and Hawaii Class Members within the meaning of the Hawaii Wage and Hour Law;

B. Whether Defendants had a uniform policy of failing to pay overtime to Gonzalez and Hawaii Class Members based on a regular rate of pay which included the total compensation they earned for the workweek;

C. Whether Defendants had a uniform policy of paying Gonzalez and Hawaii Class Members overtime pay only at a rate of one and one-half times the minimum wage which excluded their total earnings for the week and if so, whether this violated the Hawaii Wage and Hour Law;

D. Whether Defendants acted willfully, entitling Gonzalez and Hawaii Class Members to liquidated damages pursuant to HRS 387-12(4)(b); and

E. The proper measure of damages sustained by Gonzalez and Hawaii Class Members.

81. Gonzalez's claims are typical of those of Hawaii Class Members. Like other Hawaii Class Members, Gonzalez was subjected to Defendants' illegal policy, practice and procedure of requiring, suffering and/or permitting Sales Representatives to work more than forty (40) hours in a workweek without paying overtime based on the Sales Representatives' regular rate of pay which included their total earnings for a given workweek.

82. Gonzalez will fairly and adequately protect the interests of the Hawaii Class and has retained counsel experienced in complex wage and hour litigation.

83. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, particularly in the context of wage and hour litigation where individual employees lack the financial resources to vigorously prosecute separate lawsuits in federal court against a large employer, particularly those with relatively small claims.

84. Class certification is appropriate under Fed. R. Civ. P. 23(b)(3), because questions of law and fact common to Hawaii Class Members predominate over any questions affecting only individual members of the Hawaii Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendants' common and uniform policies, practices and procedures denied Hawaii Class Members from receiving their full and lawful wages for all hours worked, including overtime, to which they were and are entitled. The damages suffered by individual Hawaii Class Members are small compared to the expense and burden of individual prosecution of this litigation.

85. This action is properly maintainable as a class action under Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Hawaii Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Hawaii Class as a whole.

86. Gonzalez intends to send notice to all Class Action Class Members to the extent required by the Court and Rule 23.

87. The foregoing conduct, as alleged, violates the Hawaii Wage and Hour Law, including the provisions contained in HRS 387-3.

88. Gonzalez and Hawaii Class Members are not exempt from the overtime pay requirements of the Hawaii Wage and Hour Law.

89. Gonzalez, on his own behalf and on behalf of the Hawaii Class, seeks damages in the amount of the unpaid wages earned and due as provided by HRS 387-3, liquidated damages as provided by HRS 387-12(4)(b), as well as such other legal and equitable relief from Defendants' unlawful and willful conduct as the Court deems just and proper.



90. Gonzalez, on his own behalf and on behalf of Hawaii Class, also seeks recovery of attorney's fees, costs, and expenses of this action to be paid by Defendants, as provided by HRS 387-12(4)(c).

## IX. PRAYER FOR RELIEF

91. Wherefore, Plaintiffs, on behalf of themselves and all other similarly situated Members of the Collective Action Class, respectfully request that this Court grant the following relief:

A. An order designating this action as a collective action on behalf of Collective Action Class Members and prompt issuance of notice pursuant to 29 U.S.C. §216(b) to all similarly situated members of the Collective Action Class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual consents to join this lawsuit pursuant to 29 U.S.C. §216(b);

B. An order designating Plaintiffs as representatives of the Collective Action Class;

C. An order designating Dickinson Wright PLLC as counsel for the Collective Action Class;

D. An award of unpaid wages, including all overtime compensation, due under the FLSA;

E. An award of liquidated damages as a result of the Defendants' failure to exercise good faith in failing to pay lawful overtime compensation pursuant to 29 U.S.C. §216;

F. An award of prejudgment and post-judgment interest;

G. An award of costs and expenses of this action, together with reasonable attorney's fees pursuant to FLSA; and

H. Such other and further relief as this Court deems just and proper.

92. Wherefore, Plaintiff Gonzalez, on behalf of himself and all other similarly situated Members of the Hawaii Class, respectfully requests that this Court grant the following relief:

A. An order certifying this action as a class action on behalf of the Hawaii Class under Fed. R. Civ. P. 23(a) and 23(b)(2) and/or Fed. R. Civ. P(b)(3);



B. An order designating Plaintiff Gonzalez as a representative of the Hawaii Class;

C. An order designating Dickinson Wright PLLC as counsel for the Hawaii Class;

D. An award of unpaid wages, including all overtime compensation, due under Hawaii state law;

E. An award of liquidated damages as a result of the Defendants' willful failure to comply with the Hawaii Wage and Hour Law pursuant to HRS 387-12(4)(b)*;*

F. An award of prejudgment and post-judgment interest;

G. An award of costs and expenses of this action, together with reasonable attorney's fees pursuant to HRS 387-12(4)(c); and

H. Such other and further relief as this Court deems just and proper.

Respectfully submitted,

DICKINSON WRIGHT PLLC

By: */s/ Michael N. Feder*
Michael N. Feder (NV Bar No. 7332)
8363 West Sunset Road Suite 200
Las Vegas, NV 89113
Telephone: 702-550-4440
Facsimile: 844-670-6009
Email: MFeder@dickinson-wright.com

Martin D. Holmes (TN Bar No. 012122)
Peter F. Klett (TN Bar No. 012688)
Fifth Third Center, Suite 800
424 Church Street
Nashville, TN 37219
Telephone: 615-244-6538
Facsimile: 844-670-6009
mdholmes@dickinsonwright.com
pklett@dickinsonwright.com

*Attorneys for Plaintiffs, Putative Collective Class Members and Putative Hawaii Class Members*

