UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DANIEL GONZALEZ, et al.,<br><br>    Plaintiff(s),<br><br>v.<br><br>DIAMOND RESORTS INTERNATIONAL MARKETING, INC., et al.,<br><br>    Defendant(s). | Case No.: 2:18-cv-00979-APG-NJK<br><br>**ORDER**<br><br>[Docket No. 153] |

Pending before the Court is Plaintiffs' motion to amend the complaint. Docket No. 153.[1] Defendants filed a response in opposition and Plaintiffs filed a reply. Docket Nos. 155, 157. The Court held a hearing on the motion on July 30, 2020. Docket No. 181.[2] For the reasons discussed below, the motion to amend is **DENIED**.

**I.    BACKGROUND**

Plaintiffs filed this suit on May 29, 2018. Docket No. 1. In layman's terms, Defendants are in the business of selling timeshares at vacation properties. Most pertinent to the claims in this case are three aspects of that business. Defendants sell ownership interests to prospective new owners who are staying at Defendants' properties for free, at a discount, or with some other type of promotion. *Id.* at ¶ 27. If the initial sales pitch proves unsuccessful, Defendants then refer the

---

[1] The motion is fashioned as being brought by "Plaintiffs." *See* Mot. at 2. That is not quite correct. There are currently two named Plaintiffs identified in the complaint, Daniel Gonzalez and Jeffrey Hughes. *See* Docket No. 1 (complaint). The instant motion seeks to add more named plaintiffs to bring new state law claims on which neither Mr. Gonzalez nor Mr. Hughes can recover. As such, neither Mr. Gonzalez nor Mr. Hughes appears to have any direct interest in the outcome of the motion and it is more properly characterized as being brought by the proposed class representatives of the currently unpled claims. Nonetheless, the Court will generally use "Plaintiffs" as a shorthand except where more precision is required.

[2] A transcript of the hearing is not currently available, so the Court cites herein to the audio recording.

1

customers to a second salesperson to sell them a "sampler package" that is essentially a lease-to-own program. *Id.* at ¶ 31. With respect to existing timeshare owners, Defendants also attempt to sell additional ownership interests while the owners are staying onsite. *Id.* at ¶ 29. Plaintiffs and those similarly situated to them are the employees engaged in the above sales pitches and transactions. *See id.* at ¶ 26.

Plaintiffs allege that Defendants failed to pay them properly for overtime. In particular, Plaintiffs allege that their pay consists not only of an hourly rate, but also of commissions and bonuses. *Id.* at ¶ 33. Plaintiffs allege that Defendants shortchanged them by calculating overtime pay based only on the hourly rate without accounting for the commissions and bonuses. *Id.* at ¶¶ 35-36. The operative complaint asserts that these factual circumstances give rise to two causes of action: (1) a nationwide collective action under the Fair Labor Standards Act ("FLSA") and (2) a Hawaii-specific class action under Hawaii law with Plaintiff Gonzalez acting as the class representative. *See id.* at ¶¶ 63-90.[3]

On November 5, 2018, the Court entered a scheduling order governing the manner in which the case would proceed. Docket No. 38.[4] In that scheduling order, the Court granted the parties' request to set a discovery period of more than double the presumptively-reasonable discovery period. *Id.* at 4 (allowing a 385-day discovery period); *see also* Local Rule 26-1(b)(1) (establishing a presumptively-reasonable discovery period of 180 days). The scheduling order required Plaintiffs to seek conditional certification for FLSA collective action purposes by April 30, 2019, and to seek class certification for state law purposes by July 29, 2019. Docket No. 38 at 5. The latter deadline was subsequently extended to August 5, 2019. Docket No. 53. Both the motion for conditional certification of the collective action and the motion for class certification of the Hawaii claim were timely filed, Docket Nos. 43, 54, and both motions were subsequently granted, Docket Nos. 52, 159.

---

[3] Mr. Hughes is a Florida resident. *See id.* at ¶ 14. Mr. Hughes did not bring a class action under Florida law because it has no analogue to the FLSA. Reply at 2 n.1.

[4] The scheduling order was entered by United States Magistrate Judge Carl W. Hoffman. Upon Judge Hoffman's retirement, the undersigned was assigned to this case. Docket No. 55.

The deadlines for the collective action and class certification motion practice have not been adjusted further. On October 22, 2019, however, the Court granted the parties' stipulation to extend other deadlines. Docket No. 84. Most significantly for purposes of the pending motion, the Court extended the deadline to amend the pleadings or add parties to March 27, 2020, and extended the discovery cutoff to July 27, 2020. *Id.* at 1, 2. In conjunction with its denial of Defendants' motion to stay proceedings in light of concerns arising out of the current pandemic, the Court also *sua sponte* extended the discovery cutoff further to October 27, 2020, to provide some breathing room to the parties and to enable meet-and-confer efforts on existing discovery disputes. Docket No. 171 at 5.[5]

On March 27, 2020, Plaintiffs filed the motion for leave to amend that is currently before the Court. Docket No. 153. That motion seeks leave to add nine new named plaintiffs to act as class representatives for four new class action claims brought under Missouri, Nevada, North Carolina, and Washington state law.

## II. MAGISTRATE JUDGE AUTHORITY

Before turning to the substance of the pending motion, the undersigned first evaluates her authority to resolve the matter. The authority of a magistrate judge is derived from 28 U.S.C. § 636, which generally provides a magistrate judge with the authority to "hear and determine" nondispositive matters. *See* 28 U.S.C. § 636(b)(1)(A); *see also S.E.C. v. CMKM Diamonds, Inc.*, 729 F.3d 1248, 1259 (9th Cir. 2013). Dispositive matters are also sometimes referred to a magistrate judge, but in those circumstances the magistrate judge submits a recommendation to the assigned district judge that is subject to the district judge's *de novo* review. *See* 28 U.S.C. § 636(b)(1)(B); *see also CMKM Diamonds*, 729 F.3d at 1259-60. Section 636 specifically enumerates eight different types of matters to be treated as "dispositive." *See* 28 U.S.C. §

---

[5] After the hearing on the pending motion for leave to amend, the parties stipulated to stay proceedings to aid in their efforts at mediating the claims in dispute. Docket No. 185 (order granting stipulation). The stipulation and resulting order expressly exclude resolution of the motion for leave to amend from the stay. *Id.* at 6. The imposition of the stay does not materially alter the timeline or procedural posture as it relates to the pending motion, including with respect to prejudice to Defendants, as any order lifting the stay will presumably return the parties to the *status quo* as it existed at the time the stay was imposed.

636(b)(1)(A). When a matter falls outside of those expressly enumerated matters, courts look to the nature and effect of the issued ruling to determine whether the underlying matter should be considered dispositive or nondispositive. *Flam v. Flam*, 788 F.3d 1043, 1046 (9th Cir. 2015).

"Generally, a motion for leave to amend the pleadings is a nondispositive matter that may be ruled on by a magistrate judge." *Morgal v. Maricopa Cty. Bd. of Sup'rs*, 284 F.R.D. 452, 458 (D. Ariz. 2012); *see also Anderson v. Woodcreek Venture Ltd.*, 351 F.3d 911, 917 (9th Cir. 2003) (identifying a motion for leave to amend the complaint as a nondispositive matter within a magistrate judge's authority to resolve). It is particularly well-established that a magistrate judge is empowered to grant leave to amend. *See Bastidas v. Chappell*, 791 F.3d 1155, 1163-64 (9th Cir. 2015) (discussing *U.S. Dominator, Inc. v. Factory Ship Robert E. Resoff*, 768 F.2d 1099, 1102 n.1 (9th Cir. 1985)). On the other hand, denial of a motion for leave to amend can be considered dispositive in some circumstances. *Bastidas*, 791 F.3d at 1163-64.

Although brought within the framework of a motion for leave to amend, the instant motion boiled down to its essence is a request by new would-be class representatives to join themselves as formal parties to this suit and to bring currently unpled claims with respect to which the currently-named Plaintiffs have no interest. A denial of the motion would prevent these proposed class representatives from being added as parties in that capacity for the purpose of bringing their new proposed claims in this matter. Such a denial would not address the substance of the proposed new claims.[6] Such a denial would also not prevent the currently-named Plaintiffs from continuing forward with their claims, the scope of which are not impacted by the instant motion. Given the circumstances, the denial of the instant motion by would-be plaintiffs to add themselves and their claims to this existing case is a nondispositive matter within a magistrate judge's authority to resolve. *Clardy v. Mullens*, Civil Action No. 12-cv-11153, 2012 WL 2673334, at *1 n.1 (E.D. Mich. July 5, 2012) (holding that denial of a motion by would-be plaintiffs to join an existing case is a nondispositive matter within a magistrate judge's authority to resolve); *see also Ellsworth v.*

---

[6] The nature of the denial of the motion would be a closer call if it were premised on futility grounds. *Cf. JJCO, Inc. v. Isuzu Motors Am., Inc.*, Civ. Case No. 08-00419-SOM/LEK, 2009 WL 3818247, at *3 (D. Haw. Nov. 12, 2009) (discussing case law addressing whether denial of leave to amend on futility grounds is dispositive for purposes of determining magistrate judge authority).

4

*Corizon Health, Inc.*, Case No. CV-11-8070-PCT-RCB-MEA, 2012 WL 1267995, at *1 & n.1 (D. Ariz. Apr. 16, 2012); *O.M. ex rel. McWhirter v. Orange County (N.C.) Bd. of Educ.*, Case No. 1:09CV692, 2013 WL 664900, at *10 & n.12 (M.D.N.C. Feb. 22, 2013) (collecting cases).

The Court is making this determination without the aid of counsel, who understandably did not brief the issue in the pending motion practice. Regardless of whether the Court issues an order (as a nondispositive matter) or a report and recommendation (as a dispositive matter), the parties may object to the assigned district judge. Fed. R. Civ. P. 72(a), 72(b)(2). The briefing on any such objection may include argument whether the instant ruling is of a nondispositive or dispositive nature. *See Florence v. Stanback*, 607 F. Supp. 2d 1119, 1122 (C.D. Cal. 2009); *see also Bastidas*, 791 F.3d at 1162 (as part of waiver analysis, encouraging magistrate judges to warn litigants of the ability to object to a determination that a matter is nondispositive). Given the Court's evaluation of the issue and the ease to obtain review of that evaluation in this case, the Court declines to issue a report and recommendation as a means to "err on the side of caution." *Cf. Estate of Sauceda v. City of N. Las Vegas*, Case No.: 2:11-cv-02116-GMN-NJK, 2020 WL 1982288, at *2 (D. Nev. Apr. 15, 2020) (discussing circumstances in which it may be more appropriate to issue a report and recommendation to err on the side of caution).

Accordingly, the Court will treat the instant ruling as a nondispositive order.

### III.  STANDARDS

Requests for leave to amend the complaint are generally governed by Rule 15(a) of the Federal Rules of Civil Procedure, which provides that "[t]he court should freely give leave [to amend] when justice so requires." There is a strong public policy in favor of permitting amendment. *Bowles v. Reade*, 198 F.3d 752, 757 (9th Cir. 1999). As such, the Ninth Circuit has made clear that Rule 15(a) is to be applied with "extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). Under Rule 15(a), courts consider various factors, including: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of the amendment; and (5) whether the plaintiff has previously amended the complaint. *See id.* at 1052. These factors do not carry equal weight, however, with prejudice being the most significant factor. *See id.* The party opposing the amendment bears the burden of showing why leave should

5

be denied. *Desert Protective Council v. U.S. Dept. of the Interior*, 927 F. Supp. 2d 949, 962 (S.D. Cal. 2013) (citing *Genentech, Inc. v. Abbott Labs.*, 127 F.R.D. 529, 530-31 (N.D. Cal. 1989)).[7]

District courts have broad discretion in supervising the pretrial phase of litigation. *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002). Although there is a liberal policy in favor of allowing amendment, such relief is not granted automatically. *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1387 (9th Cir. 1990). Indeed, district courts possess broad discretion to deny leave to amend the pleadings. *Mir v. Fosburg*, 646 F.2d 342, 347 (9th Cir. 1980).

## IV. ANALYSIS

The pending motion for leave to amend seeks to add nine new named plaintiffs to act as class representatives for four new class action claims brought under Missouri, Nevada, North Carolina, and Washington state law. Defendants argue that the motion should be denied in light of, *inter alia*, Plaintiffs' undue delay and the prejudice to Defendants.[8] The Court will address these two factors in turn below.

### A. Undue Delay

The parties most vigorously contest whether Plaintiffs unduly delayed in moving for leave to amend. Defendants argue that Plaintiffs knew of the factual and legal bases for these claims two years ago when they filed the initial complaint, which warrants a finding of undue delay in

---

[7] The Court has a duty to apply the correct legal standards even when the parties themselves do not. *Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1224 (9th Cir. 2000). The Court also enforces its own scheduling order even when not prompted by the parties to do so. *Bonavito v. Nev. Prop. 1 LLC*, Case No. 2:13-cv-417-JAD-CWH, 2014 WL 5364077, at *4 (D. Nev. Oct. 21, 2014). When a motion for leave to amend requires modification of the scheduling order, an additional showing of "good cause" must be made pursuant to Rule 16(b) of the Federal Rules of Civil Procedure. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992). This additional "good cause" standard applies here. The deadline to move for class certification expired on August 5, 2019. *See* Docket No. 53. Because granting Plaintiffs' motion for leave to amend would result in additional class certification motion practice, *e.g.*, Mot. at 5, Plaintiffs now acknowledge that granting their motion implicitly requires modification of the scheduling order and that the Rule 16 analysis is triggered, Hearing Rec. (7/30/2020) at 2:04-2:05 p.m.; *see also Arredondo v. Delano Farms Co.*, Case No. 1:09-cv-01247 MJS, 2015 WL 6167448, at *6 & n.6 (E.D. Cal. Oct. 20, 2015). Neither party briefed that standard with respect to this motion. Given that the motion for leave to amend fails even under the generous standards of Rule 15, the Court will not also analyze whether Plaintiffs satisfied the Rule 16 standard.

[8] The existence of prejudice and undue delay warrants denial of leave to amend, *see Jackson*, 902 F.2d at 1388-89, so the Court will not address the other factors.

seeking amendment. *See* Resp. at 4-5. Plaintiffs concede that they knew the bases for these claims when the initial complaint was filed, *see* Hearing Rec. (7/30/2020) at 2:37 p.m., but they blame Defendants for not providing information sooner from which Plaintiffs' counsel could locate potential class representatives to bring the claims, Reply at 4-6. Plaintiffs also highlight that they filed the instant motion on the date of the extended deadline for seeking leave to amend. *See id.* at 3. Defendants have the better argument.

The Ninth Circuit has made clear that the filing of a motion for leave to amend by the outer deadline set in the scheduling order does not necessarily insulate the movant from a finding of undue delay. *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 953 (9th Cir. 2006). Courts instead consider whether the movant knew or should have known of the facts and theories raised by amendment at the time of filing the original pleading. *Jackson*, 902 F.2d at 1388. Courts also inquire into whether any delay between the time of obtaining a basis for a claim and seeking leave to amend was unreasonable. *AmerisourceBergen*, 465 F.3d at 953. The Ninth Circuit has regularly found undue delay when several months pass between the movant knowing the basis for a claim and the time of seeking leave to amend. *See Jackson*, 902 F.2d at 1388 (holding that seven months constituted undue delay); *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 799 (9th Cir. 1991) (same for one year); *AmerisourceBergen*, 465 F.3d at 953 (same for 15 months); *M/V Am. Queen v. San Diego Marine Const. Corp.*, 708 F.2d 1483, 1492 (9th Cir. 1983) (same for one-and-a-half years). Undue delay is not sufficient grounds to deny leave to amend standing alone. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). Nonetheless, the existence of undue delay will militate against allowing leave to amend. *AmerisourceBergen*, 465 F.3d at 953.

The primary issue in dispute is whether the 22-month delay in seeking to add the new class representatives to bring these new claims was justified based on the circumstances of Defendants' disclosure—or lack thereof—of the information from which Plaintiffs' counsel could find the class representatives. Defendants scoff at Plaintiffs' position, noting succinctly that they are not required to provide Plaintiffs with the means to find clients and that the litigation should not be used "as an advertising tool to solicit class representatives" for unpled state law claims. *See, e.g.*, Resp. at 2-3. The Court agrees with Defendants.

Litigants must generally possess the requisite basis to bring claims in federal court without the aid of the discovery process; the discovery process is a mechanism to collect evidence on existing claims that are sufficiently pled and is not a mechanism to develop a basis on which to bring claims. *Mujica v. AirScan Inc.*, 771 F.3d 580, 593 (9th Cir. 2014). Similarly, class action attorneys are expected to locate appropriate class representatives "at the inception of the litigation" and an attempt to add class representatives years later when the case is at or beyond the class certification stage would be untimely. *In re Flash Memory Antitrust Litig.*, No. C 07-0086 SBA, 2010 WL 2332081, at *17 (N.D. Cal. June 9, 2010). The Ninth Circuit long ago made clear that a district court acts within its discretion to prevent discovery of similarly situated persons during litigation for the purpose of soliciting support for class certification. *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 416 (9th Cir. 1985); *see also Douglas v. Talk Am., Inc.*, 266 F.R.D. 464, 467 (C.D. Cal. 2010) (denying motion to compel interrogatory answers identifying class members because such discovery was an improper "fishing expedition" to find suitable class representatives). The Ninth Circuit went further recently in holding that district courts <u>must</u> deny discovery efforts aimed at finding potential class representatives. *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 540 (9th Cir. 2020). In short, the litigation process and the power of the courts should not be utilized as a means to solicit new clients in the form of prospective class representatives. *See id.* at 539.

Although arising in slightly different contexts, these decisions are instructive here. There is no dispute that the legal and factual bases for the proposed new claims were known at the time of filing the original complaint; indeed, the pending motion touts that these new claims are "*identical*" in substance to those previously pled under the FLSA and Hawaii law. *E.g.*, Mot. at 6 (emphasis in original). Despite knowing the factual and legal bases for these class action claims, however, Plaintiffs did not include them in the original complaint because counsel had not located class representatives from these states. Reply at 4-5 & n.3.[9] Plaintiffs then attempt to justify the 22-month delay in seeking amendment by foisting onto Defendants an obligation to furnish the information from which Plaintiffs' counsel could solicit these class representatives. For example,

---

[9] An attempt to plead such a claim at that time would have failed for lack of standing. *See Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (*en banc*).

Plaintiffs point to their discovery request served in 2018 that sought the identity and contact information for all putative collective action members, which "by definition" would have included class members for the state claims now at issue. Reply at 2 n.2; *see also* Docket No. 157-1 at 9 (request for production 1). That effort was stymied by Defendants' objection and refusal to provide responsive information at that juncture. *See* Reply at 2 & n.2. Plaintiffs' counsel also sought to rectify the lack of suitable class representatives by relying on Defendants' disclosures made in conjunction with providing notice of the FLSA collective action, but Plaintiffs assert that Defendants did not promptly comply in full with the order for that disclosure. *See id.* at 2-3. In short, Plaintiffs assert that there was no undue delay in filing the motion for leave to amend because Defendants should have provided them sooner with the information needed to solicit class representatives for the new claims they seek to add. *Id.* at 5-6. Given that Plaintiffs' counsel eventually received the FLSA disclosure information a few months before filing the instant motion, Plaintiffs contend that there is no undue delay. *See id*.[10]

   As an initial matter, it is important to recognize that the instant motion has two components: (1) a request to add new state law claims and (2) a request to add new class representatives to bring those claims. In the context of the request to add new claims, the undue delay analysis turns on when the bases for those claims were known. The bases were indisputably known here at the time of filing the original complaint. In the context of a request to add new class representatives, the undue delay analysis depends not just on the time since learning of a desire to become class representatives, but instead must be assessed against the backdrop of the proceedings to that point and of the procedural posture of the case more generally. *Lucas v. Breg, Inc.*, Case No. 15-cv-258-BAS-NLS, 2016 WL 127583, at *4 (S. D. Cal. Jan. 11, 2016). That Plaintiffs' counsel learned relatively recently of the desire of the proposed class representatives to act in that capacity does

---

[10] Plaintiffs note that, at the hearing on the stipulation to revive the deadline to amend and to extend other deadlines, counsel advised that this was one of the scenarios in which they envisioned seeking leave to amend. *See* Reply at 4; *see also* Docket No. 156 at 6. At that time, the Court expressed concern as to the parties' diligence and the threadbare showing of excusable neglect, but ultimately granted that stipulation as a courtesy to counsel since the request was jointly made by all parties. Docket No. 84 at 1. The Court was not expressing any opinion as to the merits of any anticipated motion for leave to amend.

9

not negate their undue delay in seeking amendment when viewed in the context of the case as a whole.

The circumstances here evidence an undue delay. The bases for these claims were known at the time of the initial complaint, 22 months before the pending motion was filed. Plaintiffs attempt to explain away that significant delay by the fact that counsel had been unsuccessful in finding class representatives for the claims now in dispute when the case was filed and then shifting the blame to Defendants for not finding them sooner. Plaintiffs' reliance on Defendants' litigation conduct presupposes that it was proper for Plaintiffs' counsel to rely upon the litigation process on an existing FLSA claim as a means to solicit new clients to act as potential class representatives on unpled class action claims. Plaintiffs fail to fortify that foundational principle. For example, Plaintiffs' reliance on Defendants' discovery objection fails from the start because Plaintiffs make no persuasive showing that the objection was not proper and, as noted above, Ninth Circuit authority supports Defendants' objection and refusal to produce the contact information. Obviously, the Court cannot fault a party for refusing to provide discovery to which its opponent was not entitled. Plaintiffs' reliance on the circumstances of the FLSA disclosures also falls short, as they have made no persuasive showing that they were entitled to use the judicial process for notice on the existing FLSA claim as a means to find new class representatives for unpled state law claims.[11] No persuasive explanation has been advanced as to why the 22-month period in this case was not an undue delay simply because Plaintiffs hoped to use information provided for another reason in order to solicit new class representatives.

---

[11] The case law discussed herein addresses whether discovery is a proper vehicle for obtaining information to solicit class representatives. The same logic applies to the FLSA disclosures. The purpose for the order requiring Defendants to disclose contact information of potential opt-in plaintiffs was to provide notice of the collective action certification. *See* Docket No. 52 at 9-10, 11. As Plaintiffs acknowledged at the hearing, the Court did not order Defendants to disclose this contact information as a means for Plaintiffs' counsel to solicit class representatives to bring new claims. *See* Hearing Rec. (7/30/2020) at 2:14-2:15 p.m. The Court is not persuaded that Plaintiffs' intent to use these disclosures for a purpose other than that for which they were ordered justifies the lengthy delay in seeking amendment.

10

While Plaintiffs paint Defendants as engaging in "obstructive conduct" with respect to Plaintiffs' counsel's attempts to locate new class representatives, Reply at 5,[12] Plaintiffs have not justified their own failure to identify class representatives for the proposed claims at the outset of the case nor have they justified their passive attempt to remedy that deficiency through judicial process on the separate FLSA claim. Given the circumstances, the 22-month delay in seeking leave to amend is not justified by the inability of Plaintiffs' counsel to earlier obtain from Defendants the information they desired to solicit class representatives.[13]

In short, the factual and legal bases for the proposed claims were known to Plaintiffs 22 months before filing the motion for leave to amend. The delay in not seeking amendment earlier remains an undue one, regardless of Plaintiffs' characterization of the process by which they sought to identify potential class representatives through the discovery process or disclosures related to the FLSA claim. Accordingly, Plaintiffs' 22-month wait in seeking leave to amend represents an undue delay and militates against allowing amendment.

B.     Prejudice

The Court turns next to the parties' positions with respect to prejudice. Defendants argue that they will be prejudiced by allowing the proposed amendment. Resp. at 9. In particular, Defendants contend that allowing amendment would "revers[e] the clock" by reverting the case back to the class certification phase with the accompanying discovery and motion practice. *Id.*

---

[12] Of course, pointing to a defendant's obstructive behavior only gets a plaintiff so far, as the plaintiff ultimately bears the responsibility for advancing the case. *Osakan v. Apple Am. Grp.*, Case No. C 08-4722 SBA, 2010 WL 1838701, at *4 (N.D. Cal. May 5, 2010) (rejecting similar argument as made here because the plaintiff did not file a motion to compel discovery in prompt fashion when the defendants refused to provide class member information in discovery).

[13] The briefing at times veers off course into whether it is appropriate to bring both FLSA and state law class claims in the same case. *See* Reply at 6-9; *see also* Resp. at 6-7. That is not the issue before the Court.

The issue is also not whether it is ever appropriate to rely on information obtained on an existing claim to seek amendment to add a new claim or a new party. The issue here is more narrowly targeted at whether a 22-month delay in seeking amendment is rendered innocuous based on alleged hiccups in Plaintiffs' attempts to gain from Defendants information from which to solicit new class representatives.

11

Plaintiffs downplay any prejudice because the claims in the initial complaint rely on the same theories as the existing claims. *See* Reply at 10-11.  Defendants have the better argument.

There will be attendant litigation costs involved with any request to add a new class action claim to a case and such costs do not ordinarily constitute the type of prejudice sufficient to derail a motion for leave to amend. *Cf. Thomas v. Smith-Palluck Assocs. Corp.*, Case No. 2:17-cv-02001-MMD-CWH, 2019 WL 8061212, at *3 (D. Nev. May 14, 2019). Nonetheless, "[i]n appropriate circumstances, an amendment that would require additional discovery, new depositions, and additional expense will justify a denial of leave to amend." *Lucas*, 2016 WL 127583, at *3 (citing *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 809 (9th Cir. 1987) and *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1161 (9th Cir. 1989)). In seeking to add new class action claims and new class representatives, courts are more likely to find prejudice when the case has already progressed to or beyond the class certification phase, at which time class-related discovery and class-certification motion practice should be finished.[14] In that context, courts routinely find the additional discovery and motion practice attendant to granting leave to amend would create "precisely the sort of prejudice that justifies denial of a motion to amend." *In re Milk Prods. Antitrust Litig.*, 195 F.3d 430, 438 (8th Cir. 1999) (affirming denial of leave to amend to add class representatives after the defendants responded to the motion for class certification); *see also Lucas*, 2016 WL 127583, at *4; *Soto v. Castlerock Farming & Transp., Inc.*, Case No. 1:09-cv-00701 AWI JLT, 2011 WL 3489876, at *6 (E.D. Cal. Aug. 9, 2011); *Flash Memory Antitrust Litigation*, 2010 WL 2332081, at *17; *Osakan*, 2010 WL 1838701, at *5. Such prejudice warrants denial of leave to amend, notwithstanding counterarguments regarding the similarity with the issues already in the case. *E.g.*, *Lucas*, 2016 WL 127583, at *4; *Soto*, 2011 WL 3489876, at *6; *Osakan*, 2010 WL 1838701, at *5.

In this case, the deadline to file a motion for class certification expired a year ago. Docket No. 53 (extending that deadline to August 5, 2019). Plaintiffs' motion for class certification of the

---

[14] Class certification matters are meant to be decided relatively early in the life of proceedings. *See, e.g.*, *China Agritech, Inc. v. Resh*, __ U.S. ___, 138 S.Ct. 1800, 1806-07 (2018); Fed. R. Civ. P. 23(a)(1)(A).

12

Hawaii claim has been briefed and resolved. *E.g.*, Docket No. 159. Class-related discovery and class certification motion practice should be complete.[15] Reverting this case back to class certification proceedings would force Defendants to complete new class-related discovery and prepare new briefing on class certification, which would be prejudicial. Moreover, the Court is unpersuaded by Plaintiffs' efforts to downplay this prejudice based on the similarity to issues already in the case, as courts within the Ninth Circuit have regularly rejected various iterations of that argument.

In short, reverting this case backward for additional class-related discovery and class certification motion practice would be prejudicial to Defendants. Particularly when coupled with Plaintiffs' undue delay, leave to amend should be denied in light of this prejudice.

**V.   CONCLUSION**

For the reasons discussed above, the motion for leave to amend is **DENIED**.

IT IS SO ORDERED.

Dated: August 21, 2020

_____
Nancy J. Koppe
United States Magistrate Judge

---

[15] Although Judge Hoffman did not set a particular class-related discovery cutoff, such discovery by implication should have been completed before the deadline to file a motion for class certification.