Howard E. Cole
State Bar No. 4950
Jennifer K. Hostetler
State Bar No. 11994
LEWIS ROCA ROTHGERBER CHRISTIE LLP
3993 Howard Hughes Pkwy., Suite 600
Las Vegas, NV  89169-5996
Tel:  702.949.8200
Fax:  702.949.8398
E-mail: hcole@lrrc.com
Email: jhostetler@lrrc.com

Kirstin E. Muller*
California State Bar No. 186373
Alison M. Hamer*
California State Bar No. 258281
Ferry E. Lopez*
California State Bar No. 274080
Benjamin J. Treger*
California State Bar No. 285283
HIRSCHFELD KRAEMER LLP
233 Wilshire Boulevard, Suite 600
Santa Monica, CA  90401
Tel:  310.255.0705
Fax:  310.266.0986
E-mail: kmuller@hkemployment.com
E-mail: ahamer@hkemploymentlaw.com
E-mail: flopez@hkemploymentlaw.com
E-mail: btreger@hkemploymentlaw.com
*Has complied with LR IA 11-2

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT,
DISTRICT OF NEVADA**

| | |
|---|---|
| DANIEL GONZALEZ and JEFFREY HUGHES, | Case No. 2:18-cv-00979-APG-NJK |
| Plaintiffs, | **MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT** |
| vs. | |
| DIAMOND RESORTS INTERNATIONAL MARKETING, INC., DIAMOND RESORTS INTERNATIONAL, INC., DIAMOND RESORTS CORPORATION, and WEST MAUI RESORTS PARTNERS, L.P., | |
| Defendants. | |

1

## MOTION FOR SUMMARY JUDGMENT

2

I.    **INTRODUCTION**

3        Defendants Diamond Resorts International Marketing, Inc. ( "DRIMI") and West Maui

4 Resorts Partners, L.P. ("WMRP") (collectively "Defendants") move for summary judgment or, in

5 the alternative, partial summary judgment on: (1) Plaintiffs Daniel Gonzalez and Jeffrey Hughes'

6 claim for failure to pay overtime under the Fair Labor Standards Act ("FLSA"); (2) Defendants'

7 good faith defense and (3) Plaintiff Daniel Gonzalez's claim for failure to pay overtime under

8 Hawaii state law.

9        As a preliminary matter, on December 14, 2016, the Department of Labor ("DOL")

10 investigated DRIMI and determined, among other things, that "207(i) was found applicable to all

11 sales associates[] and managers[] [as] [t]hey worked for a retail establishment . . . ." (Declaration

12 of Todd Fountain, ¶ 7, **Exhibit B**; Declaration of Benjamin J. Treger, ¶ 2, **Exhibit A**.)  In line

13 with the DOL's finding, the following undisputed materials facts establish that Defendants are

14 retail establishments and Vacation Counselors are retail employees.

15        First, Defendants' business falls squarely within retail sales in the tourism industry as

16 recognized by industry experts.  *See* 29 C.F.R. §§ 779.318, 779.319.  In line with Defendants'

17 motto, "stay vacationed," both DRIMI and WMRP sell retail vacation products, services, and

18 experiences as far ranging as concerts, cruises, sporting events, guided tours, and air mile

19 programs, as well as hotel and resort stays through their vacation membership program to

20 members of the general public.  (Declaration of Todd Fountain, ¶ 2.)

21        Additionally, Defendants employ Vacation Counselors, who function as salespeople.

22 Indeed, Plaintiffs Daniel Gonzalez and Jeffrey Hughes refer to Vacation Counselors as "Sales

23 Representatives" in their Complaint.  (ECF No. 1.)  Vacation Counselors, including Mr.

24 Gonzalez, Mr. Hughes, and the Opt-In Plaintiffs in this matter were responsible for selling

25 Defendants' retail vacation experiences, services and products directly to consumers.

26        Finally, Vacation Counselors are compensated on a commission basis and are highly

27 compensated.  In fact, the top performing Vacation Counselors earned well over a million dollars

28 annually.  (Declaration of Todd Fountain, ¶ 9.)  The FLSA was not intended to cover such highly

1

1   compensated retail sales employees.  As set forth below, the undisputed facts support a judgment

2   that Defendants are Section 7(i) retail establishments.

3       Moreover, even if Defendants are not retail establishments, Defendants have acted in good

4   faith, such that any damages are inappropriate under 29 U.S.C. Section 259 and likewise

5   liquidated damages (through a three-year statute of limitations) are inappropriate under 29 U.S.C.

6   Section 260.

7       Lastly, Vacation Counselors employed by WMRP in Hawaii are also exempt under

8   Hawaii State Law during workweeks of months in which their monthly guaranteed compensation

9   exceeds $2,000.  *See* HI Rev. Stat. § 387-1(1).

10  **II.     STATEMENT OF FACTS**

11          **A.     The Present Action**

12      On May 29, 2018, Plaintiffs Daniel Gonzalez and Jeffrey Hughes filed a putative

13  collective and class action alleging overtime violations under the Fair Labor Standards Act

14  ("FLSA") and Hawaii state law stemming from their employment with Defendants.[1]  (ECF No.

15  1.)  In Defendants' Answer, affirmative defense number two states that Plaintiffs, as well as the

16  putative collective and class members they purport to represent, were exempt from overtime

17  regulations of the FLSA and state law.  (ECF No. 26. Affirmative Defenses ¶ 2.)  In addition,

18  affirmative defense number three asserts that "Defendants' actions or omissions were in good

19  faith, and Defendants had reasonable grounds for believing that its actions or omissions did not

20  violate applicable law."  (ECF No. 26. Affirmative Defenses ¶ 3.)

21      This Court subsequently conditionally certified a collective action authorizing Plaintiffs to

22  pursue a FLSA claim relating to their overtime payments on behalf of "[a]ll Current and Former

23  Individuals Who, at Any Time Since March 20, 2016, Held the Position of Vacation Counselor,

24  acting as sales representatives, at Diamond Resorts" ("Relevant Period").  (ECF No. 80.)  This

25  Court also certified a class of Vacation Counselors employed in Hawaii relating to a Hawaii state

26

27

28

---

[1] Mr. Gonzalez also sought to represent a putative class under Rule 23 against WMRP, alleging overtime violations under Hawaii state law.  (ECF No. 1.)

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:18-cv-00979-APG-NJK

1  law overtime claim.  (ECF No. 159.)[2]

2              **B.      DRIMI and WMRP Sell Retail Vacation Experiences, Products and**

3                        **Travel Services Through Vacation Memberships to the General Public**

4              In line with their motto, "Stay Vacationed," Defendants are businesses established to sell

5  vacation memberships, also known as "Vacation Ownership Interests," in the form of points, to

6  the general public.  (Declaration of Todd Fountain, ¶ 2.)  Members redeem these points for a

7  variety of vacation experiences, products, and travel services.  (Declaration of Todd Fountain, ¶

8  2-3.)  At Defendants' Sales Centers, members of the public are invited to learn about Defendants'

9  retail offerings and buy vacation memberships, symbolized by points.  DRIMI's Vacation

10  Counselors sell points in the continental U.S., while WMRP's Vacation Counselors sell points in

11  Hawaii.  (Declaration of Todd Fountain, ¶ 5.)

12             Defendants are retail sales organizations, and their workforces consist primarily of

13  Vacation Counselors, Concierges, marketers, and other sales-focused employees.  (Declaration of

14  Todd Fountain, ¶ 3.)  Defendants maintain corporate offices in Nevada and Florida and run their

15  retail sales operations out of 25 sales centers in the United States.  (Declaration of Todd Fountain,

16  ¶ 3.)

17             Defendants have been at the forefront of the shift away from the traditional timeshare

18  industry model of offering fixed or floating-week intervals at individual resorts, which provide

19  the right to use the same property each year, to points-based memberships, which may be

20  redeemed to stay in multi-resort vacation networks as well as for vacation services, experiences,

21  and various consumer products.  (Declaration of Todd Fountain, ¶ 4.)  Defendants' points-based

22  system permits customers to maintain flexibility relating to the location, season and duration of

23  their vacation.  (Declaration of Todd Fountain, ¶ 5.)  Additionally, while Defendants provide

24  customers with unique local vacation experiences, Defendants also sell retail vacation

25  experiences and products that range beyond regional boundaries and extend well beyond

26  _____

27  [2] Defendants filed a Motion to Dismiss for lack of jurisdiction due to certain Opt-In Plaintiffs and
Hawaii Class Members binding arbitration agreements with Defendants.  (ECF No. 199.)

28  Defendants do not intend to waive their arbitration defense by filing this motion and accordingly
request that the Court rule on their Motion to Dismiss prior to ruling on this motion.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:18-cv-00979-APG-NJK

accommodations.  For example, the memberships customers purchase give an annual or biennial allotment of points that can be used towards:  (1) vacations at resort properties within affiliated and unaffiliated resorts, luxury residences, or hotels, as well as to attend Events of a Lifetime® (*e.g.*, VIP dining experiences, exclusive concerts, Vegas shows, sporting events, helicopter tours, meetings with celebrities, and access to theme parks); (2) travel services, such as mileage points on major airlines, car rentals, cruises, luggage delivery services, photography services, and travel tours; (3) products, such as wine, designer purses, bath and bedding for members' homes, flowers, as well as discounts on electronics and accessories; and (4) unique local experiences, such as access to The National Parks and Federal Recreational Lands Pass, discounted participation at RV Parks and Campgrounds, and much more.  (Declaration of Todd Fountain, ¶ 5.)  In fact, given Defendants' vast offerings of vacation experiences, services and products, industry experts have recognized Defendants as retail sales establishments in the tourism industry. (Declaration of Expert Howard Nusbaum, ¶ 13.)

Neither the memberships (nor the corresponding allotment of points) are offered for immediate resale.  (Declaration of Todd Fountain, ¶ 6.)  Defendants do not have a resale or buy-back program.  (Declaration of Todd Fountain, ¶ 6.)  Defendants have no knowledge at the time of sale if or when a member will resell the vacation membership or the corresponding points that they have purchased.  (Declaration of Todd Fountain, ¶ 6.)  Defendants also prohibit their Vacation Counselors from initiating any conversations with customers or potential customers about resale of points, or a secondary market for the sale of points.  (Declaration of Todd Fountain, ¶ 6 **Exhibit A**, Sales Integrity Process and Training Materials.)  Indeed, when executing the Purchase and Security Agreements, members specifically acknowledge:

> You are purchasing the Membership for your personal use and enjoyment. You are not purchasing the Membership as a financial investment or for financial returns of any kind, including through resale, refinancing, tax advantages, or appreciation or depreciation. Diamond has not made any promises about such benefits.

(Declaration of Todd Fountain, ¶ 10, **Exhibit F,** p. 2 "Promises and Acknowledgements".)

While such agreements will differ across states and over time, this language can be found either verbatim or in similar form across Purchase and Security Agreements throughout the

1     relevant time period and geographical scope.

2                **C.**     <u>**Vacation Counselors' Duties and Compensation**</u>

3           Vacation Counselors act as the primary sales contact for Defendants' customers.

4     (Declaration of Todd Fountain, ¶ 8.)  They are responsible for direct sales of the points to

5     customers.  (Declaration of Todd Fountain, ¶ 6.)  Vacation Counselors meet with potential (and

6     existing) customers with the aim of selling Defendants' retail vacation products, services, and

7     experiences via points as described above.  (Declaration of Todd Fountain, ¶ 6.)

8           During the Relevant Period, Vacation Counselors "were paid on a commission and bonus

9     basis."  (ECF No. 43-1, Declaration of Daniel Gonzalez at ¶ 9; ECF No. 43-3, Declaration of

10     Jeffrey Hughes at ¶ 9.)  Specifically, most Vacation Counselors earn the greater of a guaranteed

11     base compensation of minimum wage and commissions that are directly related to the sales

12     volume that they sell to customers.  (Some Vacation Counselors earn the base commissions and

13     bonuses in addition to the guaranteed base compensation.)  (Declaration of Todd Fountain, ¶ 9,

14     **Exhibit D**.)  For example, the aforementioned exhibit shows Plaintiff Hughes' 2016-01-01

15     Incentive Plan.  The final page contains tables summarizing the applicable commission and bonus

16     rates.  In this example, a Vacation Counselor would earn a specific percentage Base Commissions

17     on a sale of $45,000 or more points to a non-member (*i.e.*, a new customer) if that customer puts

18     certain level down as a down payment.  As shown, the applicable commission percentage varies

19     based on whether the sale is to a new or existing customer, the amount of the down payment, and

20     the net sale price.  (Declaration of Todd Fountain, ¶ 9, **Exhibit D**, Table A.)

21           In addition, Vacation Counselors earn a Volume Bonus, which is calculated monthly.

22     (Declaration of Todd Fountain, ¶ 9, **Exhibit D**, Table B.)  By way of example, a Vacation

23     Counselor will earn a specific percentage as a bonus based on the monthly sales volume.  The

24     monthly bonus percentage will vary depending on the monthly sales volume as indicated in Table

25     B.  Lastly, Vacation Counselors will earn an additional bonus based on their Annual performance.

26     (Declaration of Todd Fountain, ¶ 9, **Exhibit D**, Table C.)  The Annual Bonus is a flat rate amount

27     based on the total sales volume for the year.

28           While the specific benchmarks for these commissions and bonuses will vary by location

5

and over time, the overall framework remains the same throughout the relevant time period and geographic scope.  Because of the commission structure, Vacation Counselors at DRIMI and WMRP are highly compensated.  In fact, during the Relevant Period, the top performing Vacation Counselors earned well over a million dollars annually.  (Declaration of Todd Fountain, ¶ 9.)

### D.   The DOL Already Determined that DRIMI is a 207(i) Retail Establishment

Over the course of October 2015 through the end of September 2016, the DOL conducted an investigation that specifically reviewed the exempt status of DRIMI's managers and sales associates in Virginia, in DOL Case ID: 1797284.  (Declaration of Todd Fountain, ¶ 7, **Exhibit B**; Declaration of Benjamin J. Treger, ¶ 2, **Exhibit A**, DOL Case ID: 1797284.)  At the conclusion of the investigation, the investigator met with DRIMI's representatives and informed them of its findings.  (Declaration of Todd Fountain, ¶ 7.)  The DOL issued a Compliance Action Report that found: 1) "Employees classified as Managers … meet the requirements for the 541.100 exemption;" and 2) "***207(i) was found applicable to all sales associates, and managers***."  (Emphasis added).  Moreover, the DOL found that DRIMI was a retail establishment.  (*Id.*)  In reaching this conclusion, the DOL held:

> [A]ll of [Defendant's] managers and *sales associates are exempt from overtime*.
> Their employees work for a retail establishment; their regular rate of pay during
> overtime week is in excess of one and one-half times the minimum wage
> applicable to them under section 206, and more than ½ their compensation for a
> representative period (not less than one month) represents commissions on goods
> or services (Set forth in 29 CFR 779. 410-421).

(Declaration of Todd Fountain, ¶ 7, **Exhibit B**; Declaration of Benjamin J. Treger, ¶ 2, **Exhibit A**, DOL Case ID: 1797284.) (Emphasis added.)  Thereafter, this information was circulated amongst Defendants' human resources leadership reviewed.  (Declaration of Todd Fountain, ¶ 7.)  Accordingly, Defendants did not make any changes to its pay practices given the ruling which confirmed that DRIMI was a retail sales establishment, and that its pay practices were compliant.  (Declaration of Todd Fountain, ¶ 7.)

## III.   LEGAL STANDARD

The Court must render judgment whenever "the pleadings, the discovery and disclosure

6

1    materials on file, and any affidavits show that there is no genuine issue as to any material fact and
2    that the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(c).  The mere
3    existence of some evidence supporting the nonmoving party will not defeat a motion for summary
4    judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  Rather, there must be
5    "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."
6    *Id.* Summary adjudication is authorized by Federal Rules of Civil Procedure 56(b) and (d).  *Lies*
7    *v. Farrell Lines, Inc.*, 641 F.2d 765, 768 (9th Cir. 1981) ("Rule 56 authorizes a summary
8    adjudication that will often fall short of a final determination, even of a single claim . . . .")
9    (internal quotation marks omitted).  Summary judgment is appropriate where a "dispute" is not
10   genuine and the evidence does not demonstrate "that a reasonable jury could return a verdict for
11   the nonmoving party."  *Anderson*, 477 U.S. at 248.  As established below, there can be no dispute
12   that Defendants are retail establishments in the tourism industry.

13   **IV.    LEGAL ARGUMENT**

14           **A.    Defendants are Retail Establishments as a Matter of Law**

15           The FLSA, 29 U.S.C. Section 201 *et seq.*, imposes overtime requirements on employers.
16   Section 7(i) provides an exemption to those overtime requirements for commission-compensated
17   employees if they meet the following three conditions: (1) the employee must be employed by a
18   retail or service establishment; (2) the employee's regular rate of pay must exceed one and one-
19   half times the applicable minimum wage; and (3) more than half the employee's total
20   compensation in a representative period (not less than one month) must consist of commissions
21   on goods or services.  29 U.S.C. § 207(i); 29 C.F.R. §§ 779.410 *et seq.*  Defendants now seek a
22   ruling with respect to this first requirement.[3]

23           As the United States Supreme Court recently held, FLSA exemptions deserve a "fair
24   (rather than narrow) interpretation" because the exemptions are "as much a part of the FLSA's
25   purpose as the overtime-pay requirement."  *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134,
26   1142 (2018) (internal quotation marks and citations omitted).  A fair interpretation of the

27   _____
28   [3] Defendants are including the third and elements in this motion to illustrate their application to
     its Vacation Counselors; however, they are not seeking a ruling on such elements.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:18-cv-00979-APG-NJK

1    exemptions set forth below establishes that Defendants are retail establishments pursuant to the

2    Section 7(i) exemption.

3         Section 7(i) does not contain a definition of the term "retail or service establishment."  *See*

4    29 U.S.C. § 207(i).  However, courts have relied on the now repealed Section 13(a)(2) of the

5    FLSA for the definition of "retail or service establishment."  *See, e.g., Gieg v. DRR, Inc.*, 407

6    F.3d 1038, 1047 (9th Cir. 2005).  Specifically, federal regulations enacted pursuant to Section

7    13(a)(2) explain that to qualify as a retail or service establishment, the employer must be "an

8    establishment 75 per centum of whose annual dollar volume of sales of goods or services (or

9    both) is not for resale and is recognized as retail sales or services in the particular industry."  29

10   C.F.R. § 779.313.  As set forth below, Defendants meet these requirements and, therefore, are

11   retail establishments under Section 7(i).

12                    **1.    At Least 75% of Defendants' Sales are Not for Resale**

13        The term "resale" is not defined within the FLSA.  *See* 29 C.F.R. § 779.331.  However,

14   the DOL has promulgated regulations that define and interpret the term.  29 C.F.R. §§ 779.330-

15   336.  Those regulations and case law establish that transactions between customers and

16   Defendants are not Section 7(i) resales.

17        The regulations state that the common meaning of the term "resale" is "the act of selling

18   again" and that a sale is made for resale, under the FLSA, where "the seller knows or has

19   reasonable cause to believe that the goods or services will be resold."  29 C.F.R. § 779.331.  The

20   operating definition of resale considers the seller's knowledge at the time of the sale, not the

21   future disposition of the goods.  *Id.* ("[I]f at the time the sale is made, the seller has no knowledge

22   or reasonable cause to believe that the goods are purchased for the purpose of resale, the fact that

23   the goods later are actually resold is not controlling.").  The Ninth Circuit has interpreted this to

24   mean that the seller must have knowledge that the goods are being purchased for "immediate"

25   resale.  *See Gieg v. DRR, Inc.*, 407 F.3d 1038, 1048 (9th Cir. 2005).

26        Here, Defendants have no knowledge or expectation that the vacation memberships they

27   sell are being purchased to be resold.  In fact, the memberships (as well as the corresponding

28   points which may be redeemed for a multitude of purposes) are specifically not offered for

8

immediate resale.  (Declaration of Todd Fountain, ¶ 6.)  Defendants do not have a resale or buy-back program.  (Declaration of Todd Fountain, ¶ 6.)  Defendants also prohibit their employees from initiating any conversations with customers or potential customers about resale of points, or a secondary market for the sale of points.  (Declaration of Todd Fountain, ¶ 6, **Exhibit A**, Sales Integrity Process.)  Indeed, when executing the Purchase and Security Agreements, members specifically acknowledge that:

> You are purchasing the Membership for your personal use and enjoyment. You are not purchasing the Membership as a financial investment or for financial returns of any kind, including through resale, refinancing, tax advantages, or appreciation or depreciation. Diamond has not made any promises about such benefits.

(Declaration of Todd Fountain, ¶ 10, **Exhibit F,** p. 2 "Promises and Acknowledgements".)

It should further be noted that the exemption's use of the term "resale" is not concerned with the possibility of an eventual sale.  In *Gieg*, the Ninth Circuit considered whether the lease of an automobile was a sale made for resale within the meaning of the FLSA.  *Id.* at 1049.  The *Gieg* court determined that, despite the fact that all leased cars were likely to be eventually resold, their sale did not constitute a sale for resale because "the distinguishing characteristic of a 'sale for resale' is that the sale is made for the purpose of immediate resale."  *Id.* (emphasis added).  The court noted that, "[n]either the dealer nor the customer enters into a lease with the expectation that the vehicle or its parts will be promptly resold."  *Id.*

Similar to the defendant in *Gieg*, Defendants have no reason to believe that their sales are made expressly for the purpose of an immediate resale.  (Declaration of Todd Fountain, ¶ 6.) Defendants prohibit their employees from making any representations to prospective members that they may obtain financial gain from purchasing points.  (Declaration of Todd Fountain ¶ 6.) It is also against Defendants' policy to make any representations to prospective members regarding vacation memberships being an investment.  (Declaration of Todd Fountain, ¶ 6, **Exhibit A**.)  Thus, Defendants' sales are not for resale.

## 2.    Defendants are Recognized for Selling Retail Vacation Experiences and Products in the Tourism Industry

As noted above, federal regulations define retail establishment to mean an establishment

9

1    75% of whose sales are "recognized as retail sales . . . in the particular industry."  29 C.F.R. §

2    779.411.  Courts determine whether sales are recognized as retail within an industry by

3    examining whether the industry at issue, as well as the particular employer, have a "retail

4    concept."  *English v. Zimmerlee*, 2008 U.S. Dist. LEXIS 25862, at *41 (S.D.N.Y. 2008).  In

5    considering whether a particular establishment has a retail concept, courts are guided by whether

6    the business: 1) sells goods or services to the general public; 2) serves the everyday needs of the

7    community; and 3) is at the end of the stream of distribution and does not take part in the

8    manufacturing process.  *Gatto v. Mortgage Specialists of Ill., Inc.*, 442 F. Supp. 2d 529, 540

9    (N.D. Ill. 2006); *Reich v. Cruises Only, Inc.*, No. 95-660-CIV-ORL-19, 1997 U.S. Dist. LEXIS

10   23727, *10 (M.D. Fla. 1997); 29 C.F.R. §§ 779.312, 779.318(a).  Defendants have all of these

11   characteristics.

12           First, Defendants sell goods and services.  The term "sale" is defined under the FLSA as

13   including "any sale, exchange, contract to sell, consignment for sale, shipment for sale, or other

14   disposition."  29 U.S.C. § 203(k).  "Goods" include: "products, commodities, merchandise, or

15   articles or subjects of commerce of any character."  29 U.S.C. § 203(i).  Courts have found that

16   services performed by a travel agency, such as selling consumers cruise vacations, as well as air

17   and land transportation and lodging as part of their cruise vacations, have a retail concept to

18   qualify as a retail or service establishment under Section 7(i).  *Cruises Only, Inc.*, 1997 U.S. Dist.

19   LEXIS 23727, *2, 9-11, 16.  Here, Defendants sell vacation memberships, which are quantified

20   as points, the amount of which is determined by customers' personal preference.  (Declaration of

21   Todd Fountain, ¶ 5.)  Members then redeem these points for a wide variety of travel services,

22   such as vacations at affiliated and unaffiliated hotels and resorts and for stays at other properties,

23   from hotels and villas owned and operated by a vast area of companies.  (Declaration of Todd

24   Fountain, ¶ 5.)  Members may also redeem their points to attend Events of a Lifetime® (*e.g.*, VIP

25   dining experiences, exclusive concerts, Vegas shows, sporting events, helicopter tours, meetings

26   with celebrities, and access to theme parks), and for air miles with different airlines, booking a car

27   rental, luggage delivery services, booking travel adventures, booking sport events, guided travel

28   tours, dining experiences, booking a cruise, discounts at RV Parks and Campgrounds, access to

10

1   The National Parks and Federal Recreational Lands Pass, and concert tickets.  (Declaration of

2   Todd Fountain, ¶ 5.)  Members can also redeem their points for products, such as wine, bath

3   towels and bedding for their homes, flowers, designer purses, photographer services, as well as

4   discounts on electronics and accessories.  (Declaration of Todd Fountain, ¶ 5.)  The foregoing are

5   unequivocally "products, commodities, merchandise," "subjects of commerce of any character,"

6   and retail services.[4]  *See* 29 U.S.C. § 203(i); *Cruises Only, Inc.*, 1997 U.S. Dist. LEXIS 23727,

7   *9-11.

8        Second, Defendants sell to any prospective member in the general public.  At Defendants'

9   sales centers, members of the public may learn about Defendants' vacation offerings and buy

10  vacation memberships in the form of points, which they can redeem for a variety of vacation

11  experiences and products.  (Declaration of Todd Fountain , ¶¶ 2, 4, 5.)  Moreover, Vacation

12  Counselors deal directly with customers to make the sales.  (Declaration of Todd Fountain, ¶ 8.)

13  *Gatto, supra*, 442 F. Supp. 2d at 541-542 (explaining that dealing directly with consumers is a

14  "retail" aspect).

15       Third, Defendants serve the needs of their customers who desire vacation experiences and

16  products.  "[T]hose in the vacation industry serve the community's everyday needs."  *See*

17  *Williams v. Trendwest Resorts, Inc.*, 2007 U.S. Dist. LEXIS 62396 *19 (D. Nev. Aug. 20, 2007)

18  (explaining a company that sells vacation credits to customers in the public "seems to serve the

19  community's everyday needs by offering vacation services") (*citing Cruises Only, Inc.*, *supra*,

20  1997 U.S. Dist. LEXIS 23727, *9-11 (explaining a travel agency that sells cruises and reserves

21  airline and/or land transportation and lodging for its customers serves the everyday needs of the

22  community by conveniently arranging travel packages).  By offering vacation goods and services

23  in the form of Vacation Ownership Interests in which members can redeem points to take

24

25  [4] The fact that "'[g]oods is expressly defined by Sec. 3 of the [FLSA] to cover 'articles or subjects of commerce[]' . . . [the FLSA] comprehends the intangible as well as the tangible . . . ." *Darr v. Mutual Life Ins. Co.*, 74 F. Supp. 80, 83 (S.D.N.Y. 1947) (explaining that telegraph messages, stocks and bonds, written advertising matter, and insurance contracts constitute goods, although they are intangible).  Therefore, although the vacation memberships and the points by which they are quantified are intangible, in addition to the services and goods for which they may be redeemed, the vacation memberships and points themselves constitute "goods" as defined under the FLSA.

26

27

28

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:18-cv-00979-APG-NJK

vacations, reserve airfare, car rentals, cruises, and obtain other various vacation related services and products, like Trendwest Resorts, Inc. and Cruises Only, Inc. who sold vacation services and cruises, Defendants serve the everyday needs of the community in which they are located.  The needs of Defendants' customers are no less "everyday needs" because they are not daily needs. *See Cruises Only, Inc.*, *supra*, 1997 U.S. Dist. LEXIS 23727, *11; *see also Gatto*, 442 F. Supp. 2d at 541 (stating a regulation "can't be interpreted to mean that a consumer must use the establishment every day").

Finally, Defendants' sales are at the end of the stream of distribution.  *See* Section IV.A.2. Nor do Defendants take part in the manufacturing process.  Defendants do not develop, own, or operate any of the properties or cruises at which members may redeem their points for vacation stays.  (Declaration of Todd Fountain, ¶ 5)  Nor do they own or operate any of the services or products members may obtain by redeeming their points.  (Declaration of Todd Fountain, ¶ 5.) Rather, Defendants partner with various airlines, car rental companies, companies that provide member adventures, guided tours, escorted journeys and retail establishments that manufacture the services and goods members obtain with their points.  (Declaration of Todd Fountain, ¶ 5.)

Whether the goods or services an establishment sells are recognized as retail in the particular industry may also be demonstrated by statements from industry leaders or relevant trade associations.  *See, e.g., Cruises Only, Inc.*, *supra*, 1997 U.S. Dist. LEXIS 23727, at *5 (relying on affidavits from industry experts to conclude that services provided by a travel-agency were recognized as retail in its particular industry).  Here, Defendants are recognized as retail sales establishments in the tourism industry by industry experts.  (Declaration of Expert Howard Nusbaum, ¶ 13.)  Unlike companies in the traditional deeded timeshare industry (an industry that did not exist at the implementation of the regulations), Defendants are more akin to businesses in the tourism industry.  Defendants do not sell a deeded real estate interest in any property.  Rather, they have shifted away from the traditional timeshare industry model of offering fixed-or floating-week intervals at individual resorts, which provide the right to use the same property each year, to points-based memberships in multi-resort vacation networks through a credit sale for intangible personal property.  (Declaration of Expert Howard Nusbaum, ¶ 12; Declaration of

12

1   Todd Fountain, ¶ 5.)  Unlike interval-based vacation ownership products, Defendants' points-

2   based system permits its members to maintain flexibility relating to the location, season and

3   duration of their vacation.  (Declaration of Todd Fountain, ¶ 5.)  Additionally, while Defendants'

4   vacation membership allows members use points to stay at resorts, it offers many more diverse

5   options for using points, including vacation experiences, products, and services.  *See* Section

6   IV.A.2, *supra*. Defendants are squarely in the business of retail sales and services by selling these

7   products and services in the tourism industry.

8            **B.      Case Law Addressing Other Businesses is Contrary to the Department of
                        Labor's Subsequent Withdrawal of 29 C.F.R. Section 779.317**
9

10          Although Defendants' businesses fall squarely within retail and/or service establishments

11   in the tourism industry, Defendants anticipate Plaintiffs will misleadingly argue, based on

12   withdrawn regulations, that Defendants' businesses are in the real estate business and therefore

13   lack a retail concept.

14          Defendants are aware of only three district courts that have applied the 7(i) analysis, using

15   since withdrawn regulations to superficially similar, though fundamentally different and

16   distinguishable businesses:  (1) *Davidson v. Orange Lake Country Club, Inc.*, 2008 U.S. Dist.

17   LEXIS 6420 (M.D. Fl. Jan. 29, 2008); (2) *Williams v. Trendwest Resorts, Inc.*, 2007 U.S. Dist.

18   LEXIS 62396 (D. Nev. Aug. 20, 2007); and (3) *Reynolds v. Wyndham Vacation Resorts, Inc.*,

19   2016 U.S. Dist. LEXIS 10568 (D.S.C. Jan. 29, 2016).  In any event, in light of the DOL's

20   subsequent withdrawal of 29 C.F.R. Section 779.317 (which lists specific types of establishments

21   that lacked a retail concept) these cases, are not good law—and arguably never were.  In each of

22   those cases, the district courts concluded the companies at issue lacked a retail concept because

23   they sold *real estate interests*, relying on the now withdrawn and discredited FLSA regulation.  In

24   holding that these companies were not retail establishments, the courts relied on the fact that the

25   FLSA regulation then in place (29 C.F.R § 779.317) listed "real estate companies" as among

26   those businesses that typically lack a retail concept.  *See Davidson*, 2008 U.S. Dist. LEXIS 6420

27   at *16; *Williams*, 2007 U. S. Dist. LEXIS at *24-25; *Reynolds*, 2016 U.S. Dist. LEXIS 10568 at

28   *17-18.

1        This regulation, however, was subsequently ***withdrawn***.  *See* 29 C.F.R § 779.317 ("The

2    Department hereby withdraws the regulatory provision found at 29 CFR 779.317, which lists

3    specific types of establishments that, in the Department's view, lacked a retail concept and were

4    therefore ineligible to claim the section 7(i) exemption.").  85 F.R. 29867.  The DOL's stated

5    reason for withdrawing the list of establishments that it previously viewed as having no retail

6    concept was to recognize that business practices and industries evolve and are not static over time

7    and thus to avoid erroneous decisions such as those in the aforementioned timeshare cases.  The

8    DOL explained that "the generally applicable analysis set forth in § 779.318 and elsewhere in part

9    779 is better suited to account for developments in industries over time regarding whether they

10   are retail or not."  85 F.R. 29867.  By way of example, "an industry may gain or lose retail

11   characteristics over time as the economy develops and modernizes, or for other reasons," and "[a]

12   static list of establishments that absolutely lack a retail concept cannot account for such

13   developments or modernization."  Dept. of Labor, Wage & Hour Div., Opinion Letter No.

14   FLSA2020-11 (August 31, 2020).[5]  Defendants' businesses quintessentially embody this principle

15   by selling a wide variety of vacation products in a rapidly evolving industry, which industry did

16   not even exist at the time the regulations were adopted in 1961.

17        The district courts in *Davidson*, *Trendwest*, and *Reynolds* rejected the 7(i) exemption by

18   finding that the defendant companies in those matters were not retail establishments.

19   Specifically, though "timeshare" and timeshare-like industries are not mentioned anywhere in the

20   regulations, the district courts viewed the defendant companies in those matters as "real estate

21   companies."  These rulings, however, were based on the now ***withdrawn*** regulation.

22        The DOL withdrew this regulation, however, to avoid the erroneous outcomes of the

23   *Davidson*, *Trendwest*, and *Reynolds* cases.  Those courts rigidly applied the category of "real

24

[5] This reasoning has also been widely acknowledged by caselaw even before the withdrawal of
25   the regulation, and is explicitly informative of the DOL's withdrawal of the regulations.  *See, e.g.*,
*Alvarado*, 719 F. Supp. 2d at 946 (criticizing blind reliance on the regulations, and referring to
26   them as an "incomplete, arbitrary, and essentially mindless catalog of sellers lacking 'a retail
concept'" and listing cases refusing to defer to Section 779.317).  *See also*, *Martin v.*
27   *Refrigeration School, Inc.*, 968 F.2d 3, 7 n.2 (9th Cir. 1992) (finding that "the list does not appear
to flow from any cohesive criteria for retail and nonretail establishments").

28

1  estate company" to those defendants because the products sold were tangentially related to "real

2  estate" even though the companies bore little resemblance to actual real estate companies.  Such

3  an approach is misguided and is precisely why the DOL has withdrawn the regulation: to prevent

4  courts from erroneously wedging defendants into arbitrary categories, rather than properly

5  analyzing the criteria set forth in Section 779.318.  Indeed, the DOL's Wage and Hour Division

6  recently explained:

> [The DOL] withdrew . . . 85 FR 29867[] in part because numerous courts have
> questioned its reasoning.  For instance, one court of appeals criticized the list as
> an 'incomplete, arbitrary, and essentially mindless catalog.'  *Alvarado*, 782 F.3d
> at 371.  Another noted that the list 'does not appear to flow from any cohesive
> criteria.'  *Martin v. The Refrigeration Sch., Inc.*, 968 F.2d 3, 7 n.2 (9th Cir. 1992).
> With the withdrawal of the list, [the Wage and Hour Division of the DOL] now
> applies the same analysis to all establishments to determine their 'retail concept,'
> thus reading the Section 7(i) exemption more consistently.  Establishments that
> had been listed as lacking a retail concept . . . may now qualify as retail or service
> establishments.

13  Dept. of Labor, Wage & Hour Div., Opinion Letter No. FLSA2020-11 (August 31,

14  2020).

15          C.      **Policy Justifications for Section 7(i) Exemption Compel a Finding that**

16                  **Defendants are Retail Establishments Because Their Vacation**
                    **Counselors are Highly Compensated, Commissioned, Sales Employees**

17                  1.      **Vacation Counselors are Highly Compensated**

18          The underlying purpose of the FLSA was to protect employees from substandard wages

19  and oppressive working hours, not to provide highly compensated employees with an unexpected

20  windfall.  *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U. S. 728, 739 (1981).  Vacation

21  Counselors at DRIMI and WMRP are highly compensated commissioned salespeople, with top

22  performers earning well over a million dollars annually.  (Declaration of Todd Fountain, ¶ 9.)  "It

23  is hard to see how any of the intended beneficiaries of the Fair Labor Standards Act—a statute

24  primarily designed as we have said to limit competition from marginal workers, that is workers

25  willing to accept substandard wages or to work overtime without demanding a premium—would

26  be helped by the imposition of the overtime provisions of the Act in this setting."  *Mechmet v.*

27  *Four Seasons Hotels, Ltd.*, 825 F.2d 1173, 1176-1177 (7th Cir. 1987).

28          In fact, the legislative history makes clear that the 7(i) exemption was implemented

15

precisely for the situation at hand.  The highly compensated commissioned employee was the very motivation for keeping the 7(i) exemption as to commissioned employees while eliminating the exemption for retail and sales establishments as a whole.  As two of the committee members recognized when the FLSA was amended to eliminate the complete exemption for retail and service establishments and to add the 7(i) exemption:

> [M]any high commission employees work long hours during peak periods. To require the payment of overtime on such high commissions would result in fantastic payments during periods of heavy selling. The committee bill takes partial cognizance of this problem [by retaining the exemption for certain commissioned salespersons] but it does not fully meet it.

*See* S. Rep. No. 145, at 266 (1961), *reprinted in* Legislative History of the Fair Labor Standards Amendments of 1961 (1963).  Vacation Counselors are exactly the type of position that Congress intended to exempt by Section 7(i).

Indeed, Vacation Counselors' compensation structure meet the second and third elements of the Section 7(i) exemption.

### 2.     Vacation Counselors Earn More than One and a Half the Minimum Wage

Section 7(i)'s second requirement is that the regular rate for the employee must be 1.5 times the minimum wage for the exemption to apply in any particular workweek.  29 U.S.C. § 207(i).  For the purposes of 7(i), the regular rate is defined as "'the hourly rate actually paid the employee for the normal, nonovertime workweek for which he is employed' and 'by its very nature must reflect all payments which the parties have agreed shall be received regularly during the workweek, exclusive of overtime payments.'"  29 C.F.R. § 779.419 (*quoting Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419 (1945)).  The regular rate is calculated by dividing straight-time earnings by hours worked.  *Id.*  Here, the federal minimum was $7.25 per hour during the entire recovery period.  This element of the 7(i) exemption will accordingly be satisfied for all weeks in which a Vacation Counselor's regular rate of pay exceeds $10.88 per hour.  Indeed, the DOL investigated DRIMI's sales associates, which include Vacation Counselors, and determined that "their regular rate of pay during overtime week is in excess of

1  one and one-half times the minimum wage applicable to them under section 206. . . ."

2  (Declaration of Todd Fountain, ¶ 7, **Exhibit B**; Declaration of Benjamin J. Treger, ¶ 2, **Exhibit**

3  **A,** DOL Case ID: 1797284.)

4         **3.**       **More Than Half of Vacation Counselors' Compensation Represents**
                   **Commissions**

5

6       The final element of the 7(i) exemption — that at least half of the plaintiff's income

7  derive from commissions in a representative period of not less than one month — is satisfied

8  here.  While the FLSA does not define the term "commission" it does not require a "commission

9  under § 7(i) to be strictly based on a percentage of the end cost to the consumer." *Parker v.*

10  *NutriSystem, Inc.*, 620 F.3d 274, 278, 283 (3d Cir. 2010).  Instead, "when the flat-rate payments

11  made to an employee based on that employee's sales are proportionally related to the charges

12  passed on to the consumer, the payments can be considered a bona fide commission rate for the

13  purposes of § 7(i)." *Id.*

14       Here, Vacation Counselors "were paid on a commission and bonus basis."  (ECF No. 43-

15  1, Declaration of Daniel Gonzalez at ¶ 9; ECF No. 43-3, Declaration of Jeffrey Hughes at ¶ 9.)

16  Their commissions were based directly on their sales volume.  (Declaration of Todd Fountain, ¶

17  9, **Exhibit D**.)  Moreover, in reviewing the compensation structure of DRIMI's Vacation

18  Counselors, the DOL determined that "more than ½ their compensation for a representative

19  period (not less than one month) represents commissions on goods or services."  (Declaration of

20  Todd Fountain, ¶ 7, **Exhibit B**; Declaration of Benjamin J. Treger, ¶ 2, **Exhibit A,** DOL Case ID:

21  1797284.)  Accordingly, the commissions paid qualify as commissions within the meaning of

22  7(i).  *See Yi v. Sterling Collision Ctrs., Inc.*, 480 F.3d 505, 508 (7th Cir. 2007) (explaining the

23  "essence of a commission is that it bases compensation on sales").  This element of the 7(i)

24  exemption will accordingly be satisfied for all weeks in which a Vacation Counselor's

25  compensation comprised of more than half commissions.

26         **D.**       **Defendants Acted in Good Faith, Such that Any Damages, Including**
                  **Liquidated Damages, are Inappropriate**

27

28       For the reasons discussed above, Plaintiffs cannot recover damages under the FLSA to the

extent they were exempt under the retail sales or services exemption.  In addition, the FLSA includes two good-faith defenses, one to liability and one to liquidated damages.  The FLSA provides that "no employer shall be subject to any liability" for failing "to pay minimum wages or overtime compensation" if it demonstrates that the "act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation of the Administrator of the Department's Wage and Hour Division." 29 U.S.C. §§ 259(a), (b)(1).  Additionally, under the FLSA, if "the employer shows . . . that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission . . . was not a violation of the [FLSA] . . . the court may, in its sound discretion, award no liquidated damages.  29 U.S.C. § 260; *see also Alvarez v. IBP, Inc.*, 339 F.3d 894, 909 (9th Cir. 2003).

Here, Defendants had good faith, reasonable grounds for believing its Vacation Counselors were exempt from earning overtime compensation under the FLSA.  The DOL conducted an audit and investigation of DRIMI's sales associates and managers and held a closing meeting during which it informed DRIMI:

> [A]ll of [Defendant's] managers and ***sales associates are exempt from overtime***. Their employees work for a retail establishment; their regular rate of pay during overtime week is in excess of one and one-half times the minimum wage applicable to them under section 206, and more than ½ their compensation for a representative period (not less than one month) represents commissions on goods or services (Set forth in 29 CFR 779. 410-421).

(Declaration of Todd Fountain, ¶ 7, **Exhibit B**; Declaration of Benjamin J. Treger, ¶ 2, **Exhibit A,** DOL Case ID: 1797284.)

As a result, Defendants acted in good faith and reasonably believed their Vacation Counselors were exempt from the FLSA's overtime provisions.  Such facts support a finding of good faith both under 29 U.S.C. Section 259, and 29 U.S.C. Section 260.

### 1.        General Liability

To be insulated from liability under Section 259's good faith exception, an employer must show it acted in (1) good faith, (2) conformity with, and (3) reliance on any written administrative regulation, order, ruling, approval, or interpretation of the DOL.  *See Frank v. McQuigg*, 950 F.2d

590, 598 (9th Cir.1991).  The term "ruling" commonly refers to an interpretation made by an agency "as a consequence of individual requests for rulings upon particular questions."  Opinion letters of an agency expressing opinions as to the application of the law to particular facts presented by specific inquiries fall within this description.  29 C.F.R. § 790.17(d). Moreover:

> [the FLSA] and its regulations strongly imply that an employer who relies on and conforms to an Opinion Letter *which specifically addresses him and his circumstances* is acting in good faith.  *See* 29 C.F.R. § 790.15(b) (1990).  The regulations and relevant precedent also indicate that any duty of inquiry owed by the employer is satisfied by an inquiry to the Administrator.

*Frank v. McQuigg*, 950 F.2d 590, 598-99 (9th Cir.1991) (emphasis added).

This is precisely the case here.  As noted above, Defendants relied on the DOL's ruling that held that its "managers and sales associates are exempt from overtime [under Section 207(i)]."  (Declaration of Todd Fountain, ¶ 7, **Exhibit B**; Declaration of Benjamin J. Treger, ¶ 2, **Exhibit A,** DOL Case ID: 1797284.)  This ruling is not just a general ruling from which Defendants gleaned interpretive guidance (which would have also been sufficient).  Rather, this ruling is a specific audit of Defendants and the very employees and circumstances in question here.  Accordingly, Defendants have acted in good faith in reliance on this ruling.

## 2.    Liquidated Damages

Additionally, this finding of good faith will also insulate Defendants from liquidated damages pursuant to 29 U.S.C. Section 260.  The statute of limitations for an FLSA claim depends upon whether a good-faith defense exists, because a two-year statute of limitations applies unless the plaintiff establishes that the defendant acted in "willful violation" of the FLSA, thereby extending the limitations period to three years.  29 U.S.C. § 255(a).  As the United States Supreme Court has made clear, a company's good-faith attempt to comply with the FLSA precludes a finding of willfulness.  *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).  Rather, to establish the propriety of a three-year statute of limitations, Plaintiffs must prove Defendants acted voluntarily, deliberately, and intentionally.  *See id.*

Courts have denied plaintiffs liquidated damages and held that an employer acts in good faith when it relies on DOL decisions that the employer's conduct does not violate the FLSA.  *See*

1   *Steele v. Leasing Enters.*, 826 F.3d 237, 247 (5th Cir. 2006) (affirming district court's denial of

2   liquidated damages); *see also Nelson v. Ala. Inst. for Deaf & Blind*, 896 F. Supp. 1108, 1115

3   (N.D. Ala. 1995) (recognizing that even a mistaken interpretation of a DOL Opinion Letter is

4   sufficient to avoid liquidated damages).  Specifically, "[a] letter received as a result of a DOL

5   investigation may sustain a defense of good faith reliance against a claim for liquidated

6   damages." *Kautsch v. Premier Communs.*, 2008 U.S. Dist. LEXIS 14327, *11, 13 (Miss. W.D.C.

7   Feb. 26, 2008) (internal citations omitted).  Defendants' reliance on the aforementioned DOL

8   ruling is precisely what was contemplated by the law and serves to insulate Defendants from a

9   claim for liquidated damages.  Therefore, the Court should dismiss Plaintiffs' claim for liquidated

10  damages with respect to their FLSA claim, and if the Court finds that any damages are warranted,

11  limit the statute of limitations to two years.

12          **E.      Hawaii Class Members are Exempt under Hawaii State Law**

13          Under Hawaii state law, an individual who is guaranteed compensation of $2,000 or more

14  per month is exempt from earning overtime, regardless of their employer or occupation.  HI Rev.

15  Stat. § 387-1(1).  Hawaii Revised Statutes does not define "guarantee," but "[t]o determine the

16  ordinary meaning of an undefined term, we may refer to dictionary definitions." *United States v.*

17  *Pacheco*, 977 F.3d 764, 767 (9th Cir. 2020) (internal citation omitted).  Black's Law Dictionary

18  defines "guarantee" as "[t]he assurance that a contract or legal act will be duly carried out."

19  *Guarantee*, Black's Law Dictionary (11th ed. 2019).  In months in which the Hawaii Class

20  Members worked at least forty hours each week, their base compensation was at least $1,616 (*i.e.*,

21  Hawaii minimum wage of $10.10 * 40 hours * 4 weeks).  As described above, in addition to this

22  base pay, Vacation Counselors earn a base commission, and a monthly bonus commission, the

23  latter is in addition to any base compensation.  (Declaration of Todd Fountain, ¶ 9, **Exhibit E**.)

24  Viewing even the lowest expected bonus tier for Hawaii compensation plans shows a monthly

25  bonus of $500 (i.e. 1% of $50,000).  While bonuses are often much greater than this, factoring

26  even this low-end monthly bonus into the guaranteed base pay yields a guaranteed monthly

27  income of $2,116.  (Declaration of Todd Fountain, ¶ 9, **Exhibit E**.)  Hence, the Hawaii Class

28  Members were guaranteed compensation of $2,000 or more per month in the months in which

they worked any potential overtime as a result of the combination of their base pay and commissions and bonuses as assured by their compensation agreements and accordingly satisfy the aforementioned requirement.  *See* HI Rev. Stat. § 387-1(1).

## V.     <u>CONCLUSION</u>

For all of the above reasons, Defendants request the Court grant summary judgment or, alternatively, partial summary judgment that Defendants are Section 7(i) retail establishments and therefore they are entitled to the exemption in workweeks in which Plaintiffs and Opt-In Plaintiffs' regular rate of pay exceeded one and one-half times the applicable minimum wage and more than half of their total compensation consisted of commissions.  Defendants also request that this Court rule that Defendants acted in good faith, such that neither general liability under the FLSA is appropriate, and that liquidated damages under the FLSA is also inappropriate.  Last, Defendants request that the Court grant summary judgment or, alternatively, partial summary judgment that the Hawaii Class Members are exempt under Hawaii state law.

DATED this 26th day of April, 2021.

HIRSCHFELD KRAEMER LLP


 */s/ Kirstin E. Muller*
KIRSTIN E. MULLER *(Admitted Pro Hac Vice)*
California Bar No. 186373
ALISON M. HAMER *(Admitted Pro Hac Vice)*
California Bar No. 258281
FERRY E. LOPEZ *(Admitted Pro Hac Vice)*
California Bar No. 274080
BENJAMIN J. TREGER *(Admitted Pro Hac Vice)*
California Bar No. 285283
Hirschfeld Kraemer LLP
233 Wilshire Boulevard, Suite 600
Santa Monica, CA  90401

HOWARD E. COLE
Nevada Bar No. 4950
JENNIVER K. HOSTETLER
Nevada Bar No. 11994
3993 Howard Hughes Pkwy, Suite 600
Las Vegas, NV  89169-5996

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 26, 2021, I caused a true and accurate copy of the foregoing,

**MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL**

**SUMMARY JUDGMENT** to be filed with the Clerk of the Court via the Court's CM/ECF

system, which sent an electronic copy of the same to the following counsel of record:

Michael N. Feder
DICKINSON WRIGHT PLLC
8363 West Sunset Road, Suite 200
Las Vegas, NV  89113
Phone: (702) 550-4440
Fax: (844) 670-6009
Email: mfeder@dickinson-wright.com

Martin D. Holmes
Peter F. Klett
DICKINSON WRIGHT PLLC
Fifth Third Center, Suite 800
424 Church Street
Nashville, TN  37219
Phone: (615) 244-6538
Fax: (844) 670-6009
Email: mdholmes@dickinsonwright.com
Email: pklett@dickinsonwright.com

Howard E. Cole
Jennifer K. Hostetler
LEWIS ROCA ROTHGERBER CHRISTIE LLP
3993 Howard Hughes Pkwy., Ste. 600
Las Vegas, NV  89169-5996
Phone: (702) 949-8200
Fax: (702) 949-8398
Email: hcole@lrrc.com; jhostetler@lrrc.com

Trevor W. Howell
Howell Law, PLLC
P.O. Box 158511
Nashville, TN 37215
Phone: (615) 406-1416
Email: trevor@howelllawfirmllc.com

Dated this 26th day of April, 2021.

_____
Robbin DeRuisć