UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DANIEL GONZALEZ, et al.,<br><br>    Plaintiffs<br><br>v.<br><br>DIAMOND RESORTS INTERNATIONAL MARKETING, INC., et al.,<br><br>    Defendants | Case No.: 2:18-cv-00979-APG-NJK<br><br>**Order Granting in Part Motion for Summary Judgment**<br><br>[ECF No. 202] |

Plaintiffs Daniel Gonzalez and Jeffrey Hughes sue defendants Diamond Resorts International Marketing, Inc. and West Maui Resorts Partners, L.P. (WMRP) under the Fair Labor Standards Act (FLSA) on behalf of themselves and similarly situated vacation counselors. The defendants move for summary judgment on certain claims, arguing that some are barred by claim preclusion due to prior settlements, some are barred by the plaintiffs' failure to disclose their claims in their bankruptcy proceedings, and some are barred by the statute of limitations. Additionally, the defendants request that I sanction the plaintiffs' counsel for unreasonably multiplying the proceedings by not conceding dismissal of these claims. I grant the motion in part, but I deny the request for sanctions.

**I. ANALYSIS**

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."). I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 440-41 (9th Cir. 2017).

**A.  Prior Class Action Settlement**

The defendants contend that certain claims are barred by claim preclusion because some of the plaintiffs participated in a settlement of a prior class action in California involving the release of overtime claims. *See Diamond Resorts Wage and Hour Cases*, Lead Case No. JCCP4923. The defendants contend that Gonzalez and 127 opt-in plaintiffs were class members in the prior action and their FLSA claims against Diamond in this case are therefore barred.

The plaintiffs respond that the prior class action settlement involved only Diamond, not WMRP, so the claims against WMRP are not barred. They also argue that the prior class action applied only to class members who performed work in California, yet the defendants are trying to apply that settlement to employees who also worked in other states. Finally, the plaintiffs contend that the settlement covered work through July 2, 2018, but this case involves work performed after that date, so not all claims were released.

In their reply, the defendants concede that their motion was directed only at FLSA claims against Diamond, not unpaid overtime claims against WMRP under Hawaii state law. ECF No.

224 at 6. They also agree that 51 of the opt-in plaintiffs who continued employment with Diamond after the settlement release date of July 2, 2018 are not barred from pursuing FLSA claims that arose after that date. *Id.* at 7. Consequently, the only issue remaining is whether those class members who worked both in California and another state are barred from bringing their FLSA claim in this case for work performed outside of California before July 2, 2018.

The class in the *Diamond Resorts Wage and Hour Cases* included "all natural persons who, at any point from August 28, 2011 through the date the Court grants Preliminary Approval of the Settlement ('Class Period'), were employed/are employed as Non-Exempt Employees for [Diamond] in California." ECF No. 203-2 at 2-3. The notice to class members of the proposed settlement advised class members that if they participated in the settlement, they would release Diamond "from any and all claims, causes of action, damages, wages, . . . and any other form of relief or remedy . . . whether based on state or federal law, that are asserted in this Action or which could have been asserted in this Action related to the facts and claims asserted in this Action, including . . . all claims for unpaid wages and overtime wages . . . and . . . all other claims that were or could arise from the facts or causes of action pled in the action" for the relevant time period. ECF No. 203-4 at 6-7. The notice also advised class members that they could opt out of the settlement. *Id.* at 7. The facts alleged in the California class action included that Diamond incorrectly calculated overtime because it did not include commissions and bonuses to calculate overtime. ECF No. 203-1 at 21.

A state court judgment has "the same full faith and credit in every court within the United States . . . as [it has] by law or usage in the courts of such State." 28 U.S.C. § 1738. When determining what preclusive effect to give to a state court ruling, I apply that state's claim preclusion rules. *MHC Fin. Ltd. P'ship v. City of San Rafael*, 714 F.3d 1118, 1125 (9th Cir.

2013). A California state court approved the settlement in the *Diamond Resorts Wage and Hour Cases*, so I look to California preclusion rules.

Under California law, claim preclusion "prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them." *DKN Holdings LLC v. Faerber*, 352 P.3d 378, 386 (Cal. 2015) (quotation omitted). Claim preclusion bars a second suit if it "involves: (1) the same cause of action (2) between the same parties (3) after a final judgment on the merits in the first suit." *Id.* If claim preclusion applies, it bars relitigation of "matters which were raised or could have been raised" in the prior action. *Busick v. Workmen's Comp. Appeals Bd.*, 500 P.2d 1386, 1392 (Cal. 1972) (en banc) (quotation omitted).

The plaintiffs do not dispute that the prior California class action resulted in a final judgment on the merits between Diamond and some of the FLSA plaintiffs in this case. Thus, the issue is whether the two lawsuits involve the same cause of action.

California courts apply the "primary rights theory" to "determine whether two proceedings involve identical causes of action for purposes of claim preclusion." *Boeken v. Philip Morris USA, Inc.*, 230 P.3d 342, 348 (Cal. 2010) (quotation omitted). Under that theory, the "cause of action is the right to obtain redress for a harm suffered, regardless of the specific remedy sought or the legal theory (common law or statutory) advanced." *Id.* The "determinative factor is the harm suffered." *Id.* Consequently, when "two actions involving the same parties seek compensation for the same harm, they generally involve the same primary right." *Id.*

The plaintiffs do not dispute that, as a general matter, the two lawsuits involve the same primary right to obtain redress for the harm of not being paid overtime wages due to Diamond's

alleged failure to properly account for commissions and bonuses.[1]  Instead, they contend that the same claim is not at issue because the class was defined in the prior action to include only those who worked for Diamond in California, and thus it did not cover work those class members performed for Diamond in other states.  The class membership defined who was covered by the settlement (assuming they did not opt out), but it did not define the scope of the release to which those class members agreed.  That release was broad and did not state that it applied only to overtime claims for work performed in California.  It contained no geographic scope, instead referring to the release of "any and all" claims, whether under state or federal law, for overtime wages.

      Moreover, claim preclusion applies not only to those claims that were actually brought, but also to those that could have been brought.  The plaintiffs could have litigated their FLSA overtime claims for work performed in other states in the prior action, including by opting out of the settlement and litigating their claims individually or by objecting to the settlement to the extent it did not compensate class members for work performed for Diamond in states other than California.[2]  The Ninth Circuit found claim preclusion barred a plaintiff's FLSA claim based on

---

[1] *Compare* ECF No. 1 (complaint in this action alleging Diamond failed to pay overtime "because regular rate of pay . . . excluded [employees'] commission and/or bonus earnings"), *with* ECF No. 203-1 at 21 (prior action's complaint alleging that Diamond "failed to properly calculate all forms of compensation resulting in inaccurate payment of regular and overtime wages" because Diamond did not "use the commission/non-discretionary bonuses/non-discretionary performance pay to calculate the regular rate of pay used to calculate . . . overtime rates").

[2] It is unclear from the parties' submissions whether the amount class members each received in the prior action accounted for work performed outside of California. *See* ECF No. 203-3 at 12-13.  The amount each class member received was based in part on how many weeks each class member worked for Diamond. *See id.*  Class members could dispute with the Settlement Administrator the number of workweeks indicated for that class member. *Id.* at 19-20.  There is no evidence before me that any of the plaintiffs in this case who were members of the prior class action sought to include workweeks that included work performed in another state and no evidence as to whether such a request, if one was made, was granted or denied.

5

a prior California class action settlement under similar circumstances. *See Rangel v. PLS Check Cashers of Cal., Inc.*, 899 F.3d 1106, 1111-12 (9th Cir. 2018).

Consequently, I grant the defendants' motion for summary judgment on the FLSA claims against Diamond for those opt-in plaintiffs who are bound by the settlement in the prior state court action. However, the following claims are not precluded: (1) any Hawaii class member's claims against WMRP and (2) FLSA claims by opt-in plaintiffs who worked for Diamond after the July 2, 2018 settlement release date and which are based on time worked after July 2, 2018.

### B. Individual Settlements

The defendants argue that opt-in plaintiff Mary Bowling settled her claim against WMRP in separate litigation. They also contend that plaintiffs Silver Aly, Jeffrey Barclay, Natasha Vea, and Maxwell Miller settled their claims in separate lawsuits. The plaintiffs do not contest that these plaintiffs should be dismissed. I therefore grant this portion of the defendants' motion as unopposed.

### C. Bankruptcy Filings

The defendants argue that plaintiff Jeffrey Hughes and certain opt-in FLSA plaintiffs and Hawaii class members lack standing to bring their claims because the claims belong to their bankruptcy estates. The defendants also contend these plaintiffs should be judicially estopped from bringing their claims because they did not disclose the claims in their bankruptcy filings.

The plaintiffs respond that judicial estoppel does not apply because some plaintiffs amended their bankruptcy schedules. They alternatively argue that their bankruptcy proceedings were dismissed, so they did not take inconsistent positions, the bankruptcy court did not accept their position, or they obtained no benefit from the omission. The plaintiffs also argue that one plaintiff filed for bankruptcy and was discharged before he worked for the defendants, and thus

he had no claim to disclose in his bankruptcy schedules.[3]  They also contend that many of the plaintiffs did not know they had a claim to disclose before receiving the notice of this FLSA action or the Hawaii class action.  They contend that for those plaintiffs who have pending bankruptcies, they should be permitted to amend their schedules to include their claims in this case.  Finally, they assert that I should not judicially estop claims for unpaid wages that arose after bankruptcy discharge or dismissal.

### 1.  Plaintiff John Backman

In reply, the defendants agree to withdraw opt-in plaintiff John Backman from the motion because Backman filed for bankruptcy and obtained a discharge before he commenced working for the defendants. ECF No. 224 at 8 n.5.  The motion is therefore denied as to Backman.

### 2.  Standing

The plaintiffs do not specifically respond to the defendants' standing argument, except to argue that (1) some opt-in plaintiffs and Hawaii class members have claims that arose after their bankruptcies were discharged or dismissed, and those claims would not be part of the bankruptcy estate, (2) some plaintiffs have pending bankruptcies and should be allowed to amend their schedules to include these claims, and (3) plaintiff Jeffrey Hughes filed a Chapter 13 petition and amended his schedules to include these claims.

The plaintiffs have constitutional standing because they allege that they suffered an injury in fact in the form of unpaid overtime wages, that the injury is fairly traceable to the defendants' alleged conduct in miscalculating overtime, and that a favorable court decision could likely redress the injury. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).  In addition to

---

[3] Although the plaintiffs suggest there may be others whose bankruptcies were discharged or dismissed before they started working for the defendants, they identify only one such individual, John Backman. *See* ECF Nos. 210 at 10; 210-4 at 3.

7

constitutional standing, the plaintiffs must show they have prudential standing, meaning they are asserting their "own legal interests as the real party in interest." *Dunmore v. United States*, 358 F.3d 1107, 1112 (9th Cir. 2004); *see also Smelt v. Cnty. of Orange*, 447 F.3d 673, 682 (9th Cir. 2006) (stating that the party asserting it has standing has the burden of showing it).

### a. Post-Discharge/Dismissal Claims

The defendants do not dispute in reply that any plaintiff whose claims against the defendants arose after their bankruptcy proceedings were discharged or dismissed would have standing to assert their claims because the claims were not part of a bankruptcy estate. I deny this portion of the defendants' motion as to those plaintiffs who have claims that arose after their bankruptcy proceeding was discharged or dismissed. The plaintiffs do not identify who these plaintiffs are, however, and I will not scour the record to determine their identities. The parties shall confer about who falls into this category. If they cannot agree as to all plaintiffs, they can file an appropriate motion.

### b. Those With Current Bankruptcies

The plaintiffs argue that any plaintiffs with a currently open bankruptcy proceeding should be allowed to amend their bankruptcy schedules to include the claims in this case. I grant that request and require all such plaintiffs to amend their schedules within 30 days of the date of this order. Plaintiffs with a currently open bankruptcy proceeding who do not timely amend their schedules will be dismissed from this case for lack of standing.

But amending the schedules does not necessarily resolve the standing issue. A Chapter 7 debtor lacks standing even as to scheduled claims because the trustee is the bankruptcy estate's representative and therefore is generally "the only party with standing to prosecute causes of action belonging to the estate." *In re Pena*, 974 F.3d 934, 938 (9th Cir. 2020) (quotation

omitted). Thus, even if a plaintiff with a Chapter 7 bankruptcy amends his or her schedules, that does not confer standing on the plaintiff/debtor, as opposed to the trustee. Consequently, those plaintiffs with a Chapter 7 proceeding will not only have to amend their schedules, they must also either have the trustee pursue the claim on behalf of the estate or obtain trustee approval for them to prosecute the action.

In a Chapter 13 bankruptcy, the debtor retains standing to continue pursuing civil claims on behalf of the estate. *See Silva v. Pro Transp., Inc.*, 898 F.3d 1335, 1341 n.6 (11th Cir. 2018); *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 343 (4th Cir. 2013) (collecting cases). As to those plaintiffs, amending their schedules to include these claims will suffice to confer prudential standing in this action.

### c. Jeffrey Hughes

The plaintiffs contend that Hughes filed a Chapter 13 petition that was based on a 100% payment plan, he amended his schedules to disclose this action, and he later dismissed his petition. Because Hughes amended his schedules to include the claims and later dismissed his bankruptcy petition, the claims have reverted to Hughes. *See* 11 U.S.C. § 349(b)(3). He therefore has standing.

### d. Remainder of the Plaintiffs With Bankruptcies

As to the remainder of the plaintiffs who filed bankruptcies, the plaintiffs have not shown, or even attempted to show, they have standing. For those plaintiffs with a prior Chapter 7 bankruptcy, a Chapter 7 debtor lacks standing because the trustee is the real party in interest. For those plaintiffs with a Chapter 13 bankruptcy, the plaintiffs have not shown that they included the claims on their schedules. And the plaintiffs have not cited any authority that a Chapter 7 or Chapter 13 debtor who did not schedule a claim and later dismissed the bankruptcy

petition has standing to bring the unscheduled claim. *See Dunmore*, 358 F.3d at 1112 (unscheduled claims remain Chapter 7 estate's property post-bankruptcy, so debtor lacks standing to assert those claims); *Stein v. United Artists Corp.*, 691 F.2d 885, 893 (9th Cir. 1982) (stating in relation to a Chapter 11 bankruptcy that only property "administered or listed in the bankruptcy proceedings and supervised by the bankruptcy court . . . reverts to the bankrupt upon termination of the bankruptcy proceedings"). These plaintiffs have not met their burden of showing they have prudential standing to bring the claims in this case.

I therefore dismiss for lack of standing the claims of the remaining plaintiffs who filed bankruptcies not otherwise discussed above. The parties will confer on who these plaintiffs are and, within 45 days of the date of this order, file either a stipulation to dismiss them or a notice with their identities so I may enter an order dismissing them for lack of standing. If the parties disagree as to any plaintiff, they can file an appropriate motion.

### 3. Judicial Estoppel

Judicial estoppel is a discretionary equitable doctrine, "applied on a case-by-case basis." *Ah Quin v. Cty. of Kauai Dep't of Transp.*, 733 F.3d 267, 270, 272 (9th Cir. 2013) (citing *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001)). "[I]ts purpose is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Id.* at 270 (quotation omitted). In deciding whether to judicially estop a party, I generally consider three factors. "First, a party's later position must be clearly inconsistent with its earlier position." *New Hampshire*, 532 U.S. at 750 (quotation omitted). Second, I ask "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled." *Id.* (quotation

omitted). Finally, I consider "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 751.

Because judicial estoppel is a discretionary equitable doctrine, these are not the only factors I may consider. *Ah Quin*, 733 F.3d at 270-71. For example, I may also consider whether applying judicial estoppel unfairly punishes the plaintiff-debtor's creditors and inequitably provides a windfall to the alleged bad actor in the estopped lawsuit. *Id.* at 275-76. Likewise, I may consider any public policy concerns raised by the lawsuit that is sought to be estopped. *See Cannata v. Wyndham Worldwide Corp.*, 798 F. Supp. 2d 1165, 1174 (D. Nev. 2011) (considering the employment discrimination nature of the underlying lawsuit under Title VII of the Civil Rights Act of 1964).

"In the bankruptcy context, the federal courts have developed a basic default rule: If a plaintiff-debtor omits a pending (or soon-to-be-filed) lawsuit from the bankruptcy schedules and obtains a discharge (or plan confirmation), judicial estoppel bars the action." *Ah Quin*, 733 F.3d at 271. Courts have recognized an exception to this default rule for inadvertent mistakes in failing to schedule a claim. *Id.* at 272. When a debtor has not amended her schedules to include the claim previously omitted, then this exception is "narrow," and courts apply "a presumption of deliberate manipulation." *Id.* at 272-73. But where the "plaintiff-debtor reopens bankruptcy proceedings, corrects her initial error, and allows the bankruptcy court to re-process the bankruptcy with the full and correct information, a presumption of deceit no longer" applies. *Id.* at 273 (emphasis omitted). Consequently, in that scenario, I do not apply a presumption of deceit and instead inquire whether the plaintiff's omission "was, in fact, inadvertent or mistaken, as those terms are commonly understood." *Id.* at 276. This inquiry includes, but is not limited to,

"the plaintiff's knowledge of the pending claim and the universal motive to conceal a potential asset." *Id.* "The relevant inquiry is, more broadly, the plaintiff's subjective intent when filling out and signing the bankruptcy schedules." *Id.* at 276-77.

### a. Post-Discharge/Dismissal Claims

Plaintiffs whose claims arose after their bankruptcy was discharged or dismissed had nothing to disclose. Thus, judicial estoppel based on a failure to list the claims in their schedules does not apply. I therefore deny the defendants' motion on this basis as to any plaintiff that falls within this category.

### b. Those With Current Bankruptcies

I cannot determine whether judicial estoppel is appropriate as to any plaintiff who has a current bankruptcy until that plaintiff amends his or her schedules and the trustee either pursues the claim or authorizes the plaintiff to do so. I therefore deny this portion of the defendants' motion as to plaintiffs who fall within this category, without prejudice to renew once those issues are resolved.

### c. Jeffrey Hughes

Hughes filed a Chapter 13 petition in October 2016. ECF No. 203-10 at 4. That proceeding was dismissed in September 2017 due to Hughes' failure to make timely plan payments. *Id.* at 9. The case was closed in November 2017. *Id.* Hughes did not disclose the present claims in his bankruptcy schedules. ECF No. 203-12 at 8. Hughes states in his affidavit that he did not know at that time that he had a claim for unpaid overtime because he "did not know that an employer had to pay overtime based on total compensation, as opposed to overtime paid on just the hourly component of . . . pay." ECF No. 210-3 at 3.

Hughes filed for bankruptcy again on May 7, 2018. ECF No. 203-13 at 4.  He again did not include his overtime wage claim in his schedules, despite this lawsuit being filed with Hughes as a named plaintiff later that same month. ECF Nos. 1; 203-14 at 15.  In his affidavit, Hughes explains that he did not do so because he was asked to list any lawsuits to which he was a party within one year preceding the petition, and this lawsuit had not yet been filed, so he did not include it. ECF No. 210-3 at 3.  Hughes further states that he did not know he needed to include this case in his schedules until October 2018, when counsel in this case advised him to do so. *Id.*  That same month, Hughes amended his schedules to include the present lawsuit. *Id.*; *see also* ECF No. 203-17.  Hughes voluntarily dismissed the petition in June 2020. ECF Nos. 203-13 at 9; 210-3 at 9.

Hughes has submitted an affidavit stating that he did not know he had an overtime claim in relation to his first bankruptcy and that he did not realize he needed to schedule this lawsuit in his second bankruptcy schedules until present counsel informed him to do so, at which point he immediately amended his schedules.  The defendants have presented no contrary evidence, other than the timing between when he filed for bankruptcy and when this lawsuit was filed.  Viewing this evidence in the light most favorable to Hughes, a reasonable fact finder could conclude that his omissions were mistakes rather than a deliberate effort to deceive.  Given that he amended his schedules to include these claims in his second bankruptcy, and both bankruptcy petitions were dismissed, a reasonable fact finder could conclude that he did not obtain a benefit or derive an unfair advantage from the inconsistent position he initially took in his bankruptcy proceedings.  Finally, a reasonable fact finder could conclude that estopping this lawsuit would give the defendants an unwarranted windfall for their alleged overtime violations, and that would

be contrary to public policy as reflected in the FLSA and Hawaii wage and hour laws. I therefore deny the defendants' summary judgment motion on this basis as to Hughes.

### d. Remaining Plaintiffs Who Filed Bankruptcies

I need not address judicial estoppel with respect to the remaining plaintiffs who filed bankruptcies because I have already dismissed them for lack of standing.

### D. Statute of Limitations

The defendants argue that the claims of 31 opt-in plaintiffs are untimely even considering the tolling of the limitation period that I ordered. The plaintiffs agree that the 31 opt-in plaintiffs' FLSA claims are untimely. However, the note that three of these individuals are also members of the Hawaii class. They assert that Adam Hegi, Brian Stacey, and Ashley Wellman worked for WMRP in Hawaii and because the Hawaii statute of limitations is six years, the Hawaii state law claims are not time-barred. In reply, the defendants agree that their motion on statute of limitations grounds was directed only at the FLSA claims. ECF No. 224 at 3 n.2. Consequently, the identified opt-in plaintiffs' FLSA claims are dismissed as untimely.

### E. Sanctions

The defendants argue I should sanction the plaintiffs' counsel under 28 U.S.C. § 1927 or my inherent power because the defendants advised the plaintiffs' counsel of the grounds for dismissal presented in this motion and the plaintiffs refused to dismiss those claims. The plaintiffs respond that sanctions are not warranted because the defendants repeatedly refused to provide information related to the pending motion, including information about any plaintiff other than the named plaintiffs. They contend the defendants also failed to produce time and pay records until just prior to the December 2020 mediation and did not provide information verifying which employees participated in the California class action settlement.

14

I decline to sanction the plaintiffs' counsel because I find no recklessness or bad faith. *See Lahiri v. Universal Music & Video Distrib. Corp.*, 606 F.3d 1216, 1219 (9th Cir. 2010). I have not granted the defendants' motion in its entirety, so the plaintiffs' counsel did not act in bad faith by refusing to agree to blanket dismissals of various categories of plaintiffs. Indeed, the defendants withdrew the motion as to one plaintiff based on the plaintiffs' response to this motion. Additionally, the plaintiffs' counsel has explained why he would not agree to the defendants' requests to dismiss categories of plaintiffs without further information that had not been supplied until shortly before this motion was filed. ECF No. 210-1.

## II. CONCLUSION

I THEREFORE ORDER that the defendants' motion for summary judgment **(ECF No. 202) is GRANTED in part** as set forth above.

I FURTHER ORDER that within 45 days of the date of this order, the parties shall file a stipulation or a status report identifying which plaintiffs should be dismissed for lack of standing based on this order.

DATED this 27th day of December, 2021.

                                                         ANDREW P. GORDON
                                                         UNITED STATES DISTRICT JUDGE