## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| DANIEL GONZALEZ, et al., | Case No.: 2:18-cv-00979-APG-NJK |
| Plaintiffs | **Order Denying Defendants' Motion for Summary Judgment and Granting Plaintiffs' Motion for Summary Judgment** |
| v. | |
| DIAMOND RESORTS INTERNATIONAL MARKETING, INC., et al., | [ECF Nos. 216, 219] |
| Defendants | |

Plaintiffs Daniel Gonzalez and Jeffrey Hughes sue defendants Diamond Resorts International Marketing, Inc. and West Maui Resorts Partners, L.P. (WMRP) under the Fair Labor Standards Act (FLSA) and Hawaii law on behalf of themselves and similarly situated vacation counselors. The parties filed competing motions for summary judgment on the issue of whether an exemption from paying overtime to retail or service employees applies to Diamond's vacation counselors. Diamond also moves for summary judgment on the question of whether it acted in good faith so as to preclude an award of general or liquidated damages. And Diamond moves for summary judgment on the Hawaii class claims as being exempt from the overtime requirement under Hawaii law.

For the reasons discussed below, I deny the defendants' motion. I grant the plaintiffs' motion that the retail or service exemption does not apply as a matter of law.

## I. ANALYSIS

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial.").  I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 440-41 (9th Cir. 2017).

**A.  FLSA Class**

Diamond moves for summary judgment on its good faith defense to liability and liquidated damages under the FLSA.  Both Diamond and the plaintiffs move for summary judgment on whether Diamond is a retail or service establishment for purposes of an FLSA overtime exemption.

<u>1.  Good Faith Defense on Liability</u>

Under 29 U.S.C. § 259(a), an employer can avoid liability under the FLSA for failure to pay overtime if it "pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation, of the agency of the United States specified in subsection (b) of this section, or any administrative practice or enforcement policy of such agency with respect to the class of employers to which [it] belonged."  The agency referred to is the Administrator of the Wage and

Hour Division of the Department of Labor (DOL). 29 U.S.C. § 259(b)(1).  This defense requires Diamond to "show it acted in (1) good faith, (2) conformity with, and (3) reliance on the DOL's regulations" or one of the other categories of written authority issued by the Administrator. *Frank v. McQuigg*, 950 F.2d 590, 598 (9th Cir. 1991).  The employer must show that it "actually relied upon" the DOL guidance. 29 C.F.R. § 790.16(a).  Additionally, the "regulations, orders, ruling, approvals, interpretations, administrative practices and enforcement policies relied upon and conformed with must be those of an agency and not of an individual officer or employee of the agency.  Thus, if inspector A tells the employer that the agency interpretation is that the employer is not subject to the . . . Act, the employer is not relieved from liability, despite his reliance in good faith on such interpretations, unless it is in fact the interpretation of the agency." 29 C.F.R. § 790.19(b) (quotation omitted).

Diamond contends that it relied on a letter signed by a DOL investigator following an audit of Diamond's operations in Virginia in 2016, in which the investigator concluded that the retail exemption applied so Diamond was not violating the FLSA. *See* ECF No. 219-4. However, an investigator's letter does not qualify as a ruling, order, or approval by the Administrator.  And Diamond has not presented sufficient evidence to conclusively show that it actually relied on the letter.  Diamond presents a declaration by Todd Fountain, who is the Vice President of Human Resources, North America Sales and Marketing for Diamond Resorts Centralized Services. ECF No. 219-2.  Fountain states that the investigator's letter setting forth his findings was circulated among Diamond and WMRP human resources leaders and that "[a]ccordingly," they made no changes to their pay practices. *Id.* at 4.  However, in deposition testimony, Fountain stated that he did not know who else received the letter, was not aware of any additional communications regarding the letter, and was simply forwarded an email with the

letter and a message effectively saying that Diamond had passed. ECF No. 225-1.  Viewing the facts in the light most favorable to the plaintiffs on the defendants' motion, it is questionable that this shows Diamond actually relied on the letter to set or maintain its pay policies.

In reply, Diamond contends it can also rely on the DOL's regulations. ECF No. 236 at 8. I do not consider arguments raised for the first time in reply. *See Vasquez v. Rackauckas*, 734 F.3d 1025, 1054 (9th Cir. 2013).  But even if I considered this newly raised argument, it would fail.  Diamond does not point to evidence that it relied on the regulations in setting or maintaining its pay policies.  Diamond therefore has not established a good faith defense that prevails on summary judgment.

## 2.  Good Faith Defense on Liquidated Damages

An employer who violates the FLSA's overtime requirement may be required to pay liquidated damages in an amount equal to the unpaid overtime. 29 U.S.C. § 216(b).  The court may, in its discretion, decline to award liquidated damages, or may award a reduced amount, if the employer "shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that [it] had reasonable grounds for believing that [its] act or omission was not a violation" of the FLSA. 29 U.S.C. § 260.  For this defense to apply, Diamond must show "that it had an honest intention to ascertain and follow the dictates of the Act and that it had reasonable grounds for believing that its conduct complied with the Act." *Flores v. City of San Gabriel*, 824 F.3d 890, 904-05 (9th Cir. 2016) (simplified).  "An employer who failed to take the steps necessary to ensure its practices complied with [the] FLSA and who offers no evidence to show that it actively endeavored to ensure such compliance has not satisfied § 260's heavy burden." *Id.* at 905 (simplified).

If the "employer fails to satisfy its burden under § 260, an award of liquidated damages is mandatory." *Id.* "Whether the employer acted in good faith and whether it had objectively reasonable grounds for its action are mixed questions of fact and law." *Id.*

Diamond does not point to evidence regarding what steps it took to ensure it complied with its duties under the FLSA. Fountain stated in his deposition that Diamond engaged in no deliberative process in determining how to compensate other categories of employees, such as concierges and marketing supervisors. ECF No. 215-4. There is no testimony that Diamond engaged in a deliberative process with respect to vacation counselors either. And, as discussed above, it is questionable whether Diamond considered the letter in setting or maintaining its pay policies beyond circulating the letter to a few individuals and indicating it passed a review. It therefore has not shown it is entitled to summary judgment under § 260.

### 3. Retail or Service Establishment Exemption

Under 29 U.S.C. § 207(i), an employer need not pay overtime for an "employee of a retail or service establishment" if "(1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him . . ., and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services." To qualify for the § 207(i) exemption, Diamond must show that: (1) it was "a retail or service establishment";[1] (2) each plaintiff's "regular rate of pay was more than one and one-half times the minimum wage"; and (3) "more than half of plaintiffs' compensation

---

[1] Note that an establishment "refers to a distinct physical place of business rather than to an entire business or enterprise which may include several separate places of business." 29 C.F.R. § 779.23 (simplified). The parties do not distinguish between a physical place of business and Diamond's overall business model. However, Diamond has presented evidence that it has 25 sales centers in the United States, and these presumably are where the vacation counselors work. *See* ECF No. 219-2 at 2.

1 represented commissions on the sale of goods or services." *Gieg v. DDR, Inc.*, 407 F.3d 1038,

2 1046 (9th Cir. 2005) (simplified).

3       Both parties move for summary judgment on the first of these elements: whether

4 Diamond is a retail or service establishment within the FLSA's meaning.  The FLSA does not

5 define the term, but the DOL regulations adopt a prior statutory definition that the term means

6 "an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or

7 of both) is not for resale and is recognized as retail sales or services in the particular industry."

8 29 C.F.R. § 779.312.  Consequently, to qualify as a retail or service establishment:

9 "(a) [Diamond must] engage in the making of sales of goods or services; and (b) 75 percent of its

10 sales of goods or services, or of both, must be recognized as retail in the particular industry; and

11 (c) not over 25 percent of its sales of goods or services, or of both, may be sales for resale." 29

12 C.F.R. § 779.313.

13       *a.  Engaged in the sales of goods or services*

14       The FLSA defines goods as "goods . . ., wares, products, commodities, merchandise, or

15 articles or subjects of commerce of any character, or any part or ingredient thereof, but does not

16 include goods after their delivery into the actual physical possession of the ultimate consumer

17 thereof other than a producer, manufacturer, or processor thereof." 29 U.S.C. § 203(i).  Under the

18 FLSA, goods "are not limited to commercial goods or articles of trade, or, indeed, to tangible

19 property." 29 C.F.R. § 776.20(b).  According to a DOL regulation, "things such as ideas, orders,

20 and intelligence are subjects of commerce. . . .  Other articles or subjects of commerce which fall

21 within the definition of goods include . . . bonds, stocks, bills of exchange, bills of lading,

22 checks, drafts, negotiable notes and other commercial paper." *Id.* (simplified).

23

1  The Act does not define services, but the regulations state that the term "must be given a

2  meaning consistent with its usage in ordinary speech, with the context in which it appears and

3  with the legislative history of the exemption as it explains the scope, the purposes and the

4  objectives of the exemption." 29 C.F.R. § 779.314.

5      Although in a very general sense every business might be said to perform a service it is
       clear from the context and the legislative history that all business establishments are not
6      making sales of "services" of the type contemplated in the Act; that is, services rendered
       by establishments which are traditionally regarded as local retail service establishments
7      such as the restaurants, hotels, barber shops, repair shops, etc. . . .  It is to these latter
       services only that the term "service" refers.

8

9  *Id.*

10  The parties disagree about what it is that Diamond's vacation counselors sell.  Diamond

11  argues that it sells goods and services because vacation counselors sell memberships in a

12  vacation club that permits purchasers to use their points to buy stays at resorts, experiences like

13  concerts, or tangible goods like towels.  Diamond thus likens itself to a travel agency.  The

14  plaintiffs, on the other hand, liken Diamond to a real estate company: vacation counselors sell

15  use rights in a pool of resort properties that have been placed in a trust.  The members are

16  automatically enrolled in the vacation club and are awarded points proportionate to the interest

17  they purchased.  Those points can be used to buy vacation stays, concert tickets, towels, and the

18  like.  Consequently, the plaintiffs contend that a timeshare company like Diamond does not sell

19  goods or services, it sells real estate interests.

20  Vacation counselors sell what are self-described as timeshare interests called

21  memberships in the Diamond Resorts U.S. Collection, which owns a collection of resorts. ECF

22  No. 216-3 at 23.  Titles to the resort properties are owned by a trustee acting for the benefit of the

23  Association and its members. *Id.* at 24.  Purchasers become members of the Association and are

assigned a proportionate number of points based on their membership interest, which is tied to their use rights in the underlying property. *Id.* at 24, 26; ECF Nos. 216-5 at 11; 235-1 at 3; *see also* ECF No. 219-8 at 3 (describing the membership as a "'right-to-use' timeshare interest"). Everywhere except Florida, purchasers are automatically enrolled in The Club, a program that allows them to exchange points for stays at collection resorts and, under an affiliation agreement, stays at other accommodations outside the collection. ECF No. 216-3 at 25-26, 41-43.  The reservation system and The Club program are run by a separate company, Diamond Resorts International Club, Inc. *Id.* at 26-27, 41.

Although Diamond tries to distinguish itself from other timeshare companies, there is evidence that they share common characteristics, including that if the collection is dissolved, the collection's assets will be distributed to members; members may vote at general meetings of the Association and be eligible for election to the Association's board; and members must pay maintenance fees to maintain the resort collection properties. ECF No. 216-3 at 24-25, 33-34, 36, 38, 42.  The timeshare interest does not expire, and it can be passed to heirs. ECF Nos. 219-8 at 3; 235-1 at 7.

Diamond sells use rights in property, and the points are a calculation of the members' proportionate use rights.  Use rights in property are neither goods nor services within the meaning of the FLSA's retail exemption.  A company selling use rights in real property is not traditionally regarded as a local retail service establishment such as restaurants, hotels, barber shops, repair shops, or similar establishments. *See Williams v. Trendwest Resorts, Inc.*, No. 2:05-cv-0605-RCJ-LRL, 2007 WL 2429149, at *8 (D. Nev. Aug. 20, 2007) (holding that a timeshare company that sold vacation credits tied to real property interests was not selling goods or

1  services because buyers received real estate interest and the vacation credits were "part of the

2  purchasers' larger ownership interests").

3                              *b. Recognized as retail*

4         The exemption in § 207(i) is available only to a "traditional local retail or service

5  establishment." 29 C.F.R. § 779.315.  Consequently, "[n]ot only must the particular sales or

6  services in question be recognized as retail in the industry, but the industry itself must be one

7  which Congress contemplated as falling within the 'retail concept'." *Brennan v. Keyser*, 507

8  F.2d 472, 475 (9th Cir. 1974); *see also* 29 C.F.R. § 779.315 (stating that the term "retail" must

9  be read in the context of congressional objectives).  The "term 'retail' is alien to some businesses

10 or operations" such that the "concept of retail selling or servicing does not exist." 29 C.F.R.

11 § 779.316.  "Such establishments not having been traditionally regarded as retail or service

12 establishments cannot under any circumstances qualify as a 'retail or service establishment'

13 within the statutory definition of the Act, since they fail to meet the first requirement of the

14 statutory definition." *Id.*  Thus, even if an employer meets "the statutory requirements of the

15 retail sales or service exemption," there may be "another barrier to [its] inclusion within that

16 exemption." *Brennan*, 507 F.2d at 475; *see also Idaho Sheet Metal Works, Inc. v. Wirtz*, 383 U.S.

17 190, 202-03 (1966) (stating that in determining the meaning of retail, "it is generally helpful to

18 ask first whether the sale of a particular type of goods or services can ever qualify as retail

19 whatever the terms of sale; if and only if the answer is affirmative is it then necessary to

20 determine the terms or circumstances that make a sale of those goods or services a retail sale").

21         "Industry usage of the term 'retail' is not in itself controlling in determining when

22 business transactions are retail sales under the Act." 29 C.F.R. § 779.316.  That is because a

23

9

1    "'retail concept' cannot be artificially created in an industry in which there is no traditional

2    concept of retail selling or servicing." *Id.*

3         Based on case law, and as recognized in the DOL regulations, the following industries

4    do not (and cannot) have a retail concept: "banks, insurance companies, building and loan

5    associations, credit companies, newspapers, telephone companies, gas and electric utility

6    companies, telegraph companies, etc., because there is no concept of retail selling or servicing in

7    these industries." *Mitchell v. Ky. Fin. Co.*, 359 U.S. 290, 295 (1959) (quotation omitted).  More

8    relevant here, the Supreme Court held that operating and maintaining a loft building in which

9    goods for commerce were produced was not a "service establishment[]" because "[s]elling space

10   in a loft building is not the equivalent of selling services to consumers." *Kirschbaum v. Walling*,

11   316 U.S. 517, 526 (1942).  Whether "the industry itself falls within the retail concept of the Act

12   is [a question] of law" because it involves statutory interpretation. *Brennan*, 507 F.2d at 475; *see*

13   *also Gieg*, 407 F.3d at 1044-45 (stating that "[i]nterpretations of the FLSA and its regulations are

14   questions of law").

15        Diamond sells real estate interests, and therefore it is not in an industry that falls within

16   the retail concept of the FLSA regardless of whether it otherwise meets the statutory and

17   regulatory requirements.  Similar to selling or leasing loft space in a building, selling use rights

18   in real property is not the equivalent of selling goods or services to consumers. *See Kirschbaum*,

19   316 U.S. at 526.

20        Every court that has examined whether timeshare companies fall within the retail concept

21   has concluded that they do not. *See Williams*, 2007 WL 2429149, at *6-9; *Davidson v. Orange*

22   *Lake Country Club, Inc.*, No. 6:06-cv-1674-ORL-19KRS, 2008 WL 254136, at *5-6 (M.D. Fla.

23   Jan. 29, 2008), *clarified on denial of reconsideration*, No. 6:06-cv-1674-ORL-19KRS, 2008 WL

596120 (M.D. Fla. Feb. 29, 2008); *Reynolds v. Wyndham Vacation Resorts, Inc.*, No. 4:14-cv-2261-PMD, 2016 WL 362620, at *4-5 (D.S.C. Jan. 29, 2016).  Diamond contends these cases are no longer good law because they rely on a withdrawn DOL regulation that listed types of businesses that did not have a retail concept.[2]

The DOL previously issued two companion regulations, one that listed types of businesses that had a retail concept and one that listed those that did not. 29 C.F.R. §§ 779.317, 779.320.  The DOL rescinded both in May 2020 after criticism in the courts that the lists seemed to have no analysis or rationale behind why some businesses were included on the respective lists. *See Partial Lists of Establishments that Lack or May Have a "Retail Concept" Under the Fair Labor Standards Act*, 85 FR 29867-01 (May 19, 2020).  The DOL stated that it would thereafter apply the regulatory factors to any type of business. *Id.* (stating that "the Department will apply one analysis—the same analysis—to all establishments, thus promoting consistent treatment for purposes of the section 7(i) exemption").  Despite saying that the test would apply to all establishments, the DOL did not rescind its regulations that state that some types of businesses can never have a retail concept.  And it stated in its rescission decision that "[n]othing in this action should be construed to suggest that any particular type of establishment previously listed by the Department is, or is not, a retail establishment." *Id.*

Consequently, the question of whether a particular industry can have a retail concept within the FLSA's meaning remains a threshold inquiry, under both DOL regulations and

---

[2] Although each case mentions the withdrawn regulation, they do not rely solely on it.  The *Williams* court concluded the timeshare company does not sell goods or services and is not a traditional retail establishment under 29 C.F.R. §§ 779.315, 779.318, and 779.319 before the court mentioned the withdrawn regulation. 2007 WL 2429149, at *7-8.  *Davidson* and *Reynolds* generally rely on *Williams*. *See Davidson*, 2008 WL 254136, at *5-6; *Reynolds*, 2016 WL 362620, at *4-5.

1  Supreme Court authority.  Based on *Kirschbaum* and the DOL regulations that have not been

2  rescinded, I agree with the three cases finding that timeshare companies have no retail concept

3  because Diamond does not sell goods or services and selling real estate interests is not the

4  equivalent of selling goods or services to consumers.  Diamond is not a traditional local retail

5  establishment within the FLSA's meaning.  Diamond does not, and cannot, have a retail concept

6  under the FLSA and it therefore cannot resort to the retail or service establishment exemption as

7  a matter of law.  I therefore deny this portion of Diamond's motion and grant the plaintiffs'

8  motion.

9      **B.  Hawaii Class**

10     WMRP argues that under Hawaii law, an individual who is guaranteed compensation of

11  $2,000 or more per month is exempt from earning overtime.  WMRP contends that in months in

12  which class members worked at least 40 hours each week, their base compensation was at least

13  $1,616, calculated as the Hawaii minimum wage of $10.10 per hour times 40 hours for 4 weeks.

14  WMRP also argues that vacation counselors earn a bonus commission in addition to this base

15  pay, and that the lowest expected bonus commission is $500 per month.  WMRP thus contends

16  that when base pay and the lowest expected bonus are added together, vacation counselors are

17  guaranteed at least $2,000 per month.  The plaintiffs respond that WMRP's analysis depends on

18  a bonus, which is not guaranteed.  They also argue that WMRP uses only the current minimum

19  wage rate, even though Hawaii's minimum wage was lower in prior years within the class

20  period.

21     Under Hawaii law, an employer must pay an "employee" overtime for a workweek

22  longer than 40 hours. Haw. Rev. Stat. § 387-3(a).  However, excluded from the term "employee"

23  is "any individual employed . . . [a]t a guaranteed compensation totaling $2,000 or more a

1  month, whether paid weekly, biweekly, or monthly." Haw. Rev. Stat. § 387-1.  The statute does

2  not define what "guaranteed compensation" means.  The Supreme Court of Hawaii has not

3  addressed this issue.  I therefore must predict what that court would do if presented with the

4  question. *High Country Paving, Inc. v. United Fire & Cas. Co.*, 14 F.4th 976, 978 (9th Cir.

5  2021).

6          Under Hawaii law, when interpreting a statute, a "court's foremost obligation is to

7  ascertain and give effect to the intention of the legislature, which is to be obtained primarily from

8  the language contained in the statute itself." *Gillan v. Gov't Emps. Ins. Co.*, 194 P.3d 1071, 1077

9  (Haw. 2008) (quotation omitted).  If a "term is not statutorily defined," then a "court may resort

10 to legal or other well accepted dictionaries as one way to determine its ordinary meaning." *Id.*

11 (simplified).  A guarantee means the "assurance that a contract or legal act will be duly carried

12 out." *Black's Law Dictionary* (11th ed. 2019).

13         WMRP has not presented sufficient evidence to show conclusively that vacation

14 counselors are guaranteed $2,000 per month.  WMRP notes that the lowest bonus tier would

15 result in a $500 bonus, but it presents no evidence that an employee is guaranteed to get at least

16 $500 per month in addition to the base rate.  Moreover, WMRP relies on the $10.10 minimum

17 wage rate, but that rate went into effect on January 1, 2018.  WMRP does not address how the

18 $2,000 per month compensation was guaranteed in prior years within the class period where the

19 minimum wage rate was lower. *See* Haw. Rev. Stat. § 387-2(a).  Consequently, I deny this

20 portion of the defendants' motion for summary judgment.

21 **II.  CONCLUSION**

22         I THEREFORE ORDER that the plaintiffs' motion for partial summary judgment on

23 Defendants' § 207(i) affirmative defense **(ECF No. 216) is GRANTED**.

13

I FURTHER ORDER that the defendants' motion for summary judgment **(ECF No. 219)**
**is DENIED**.

DATED this 27th day of December, 2021.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

14