1 | **MICHAEL N. FEDER**
Nevada Bar No. 7332
2 | DICKINSON WRIGHT PLLC
3 | 3883 Howard Hughes Parkway, Suite 800
Las Vegas, NV 89169
4 | Telephone:    702-550-4400
Facsimile:    844-670-6009
5 | Email:    mfeder@dickinsonwright.com

6 | **MARTIN D. HOLMES** (*Pro Hac Vice*)
7 | Tennessee Bar No. 012122
**PETER F. KLETT** (*Pro Hac Vice*)
8 | Tennessee Bar No. 012688
**AUTMUN L. GENTRY** (*Pro Hac Vice*)
9 | Tennessee Bar No. 012688
DICKINSON WRIGHT PLLC
10 | Fifth Third Center, Suite 800
424 Church Street
11 | Nashville, TN 37219
12 | Telephone:    615-244-6538
Facsimile:    844-670-6009
13 | Email:    mdholmes@dickinsonwright.com
pklett@dickinsonwright.com
14 | agentry@dickinsonwright.com

15 |
16 | *Attorneys for Plaintiffs, Collective Class Members*
*and Hawaii Class Members*
17 |

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEVADA

| | |
|---|---|
| DANIEL GONZALEZ and JEFFREY HUGHES, on behalf of themselves and others similarly situated, | Case No. 2:18-cv-00979-APG-NJK |
| Plaintiffs, | **PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND SUPPORTING MEMORANDUM** |
| v. | |
| DIAMOND RESORTS INTERNATIONAL MARKETING, INC., and WEST MAUI RESORTS PARTNERS, L.P., | |
| Defendants. | |



1

Pursuant to Fed. R. Civ. P. 23(e), Plaintiffs Daniel Gonzalez ("Gonzalez") and Jeffrey Hughes ("Hughes") (collectively referred to as "Plaintiffs" or "Named Plaintiffs"), respectfully move the Court, to: 1) preliminarily approve the settlement as set forth in the parties' Settlement Agreement and Release attached hereto as **Exhibit 1** in compliance with Fed. R. Civ. P. 23(e)(3) (the "Agreement");[1] 2) approve the proposed Notice to send to Hawaii Class Members attached hereto as **Exhibit 2** (the "Notice");[2] and 3) schedule a fairness hearing to consider final approval of the entire settlement and any related matters.

## INTRODUCTION

Plaintiffs Gonzalez and Hughes initiated this FLSA collective action on behalf of themselves and all similarly situated current and former Vacation Counselors who worked for Defendants Diamond Resorts International Marketing, Inc. ("DRIMI") and West Maui Resorts Partners ("WMRP") at any time since May 29, 2015. *ECF No. 1, Compl., ¶¶ 1–6.* In addition, Gonzalez initiated this Rule 23 class action on behalf of himself and all similarly situated current and former Vacation Counselors who worked for WMRP since May 29, 2012. *Id., ¶ 2.* The Complaint alleged that Plaintiffs and putative class members were uniformly subjected to Defendants' policies and procedures of calculating overtime pay without including commissions and bonuses in the regular rate of pay. Specifically, Plaintiffs alleged that both the FLSA and Hawaii Wage and Hour Law require than an employer pay overtime based on the employees' regular rate of pay, which includes *all* compensation earned for the workweek including commissions and bonuses; however, when determining the regular rate of pay to calculate Vacation Counselors' overtime pay, Defendants only used Vacation Counselors' hourly rate and failed to include Vacation Counselors' commissions and bonuses. *Id., ¶¶ 6-10.*

---

[1] This is a "hybrid" action involving both certified Rule 23 class claims and conditionally certified FLSA claims. While preliminary approval of a Rule 23 class action settlement is required by Fed. R. Civ. P. 23(e) as it relates to the Hawaii Class claims, preliminary approval is not required for the FLSA Collective Action claims. Therefore, this motion only seeks preliminary approval of the Rule 23 class action settlement. Subject to the Court's granting of preliminary approval of the Rule 23 class claims' settlement and the setting of a final approval hearing, Plaintiffs intend to submit a motion for final approval of both the Rule 23 and FLSA class claims.

[2] The Notice is only being sent to Hawaii Class Members, not FLSA Collective Class Members who are not also Hawaii Class Members. Under the FLSA, notice of a proposed settlement is not required. Further, FLSA Collective Class Members do not have the right to "opt-out" or object to the settlement as do Rule 23 Hawaii Class Members.

DW
DICKINSON WRIGHT
ATTORNEYS AT LAW

On February 25, 2019, Plaintiffs filed a Motion for Conditional Certification of this Matter as a Collective Action and Approval of 29 U.S.C. § 216(b) Notice. *ECF No. 43*. Defendants vigorously opposed conditional certification and the matter was briefed extensively at great time and expense. *See ECF No. 46, Defs.' Opp.; and ECF No. 47, Pls.' Reply.*

By Order entered on July 29, 2019 (*ECF No. 52*), the Court granted conditional certification, finding that Plaintiffs were similarly situated to current and former Vacation Counselors nationwide. As part of the July 29, 2019 Order, the Court directed that notice be sent to all current and former Vacation Counselors who worked for DRIMI and WMRP from March 20, 2016, to the present with an accompanying consent form to join the lawsuit. *Id, p. 11.* The contents of the notice were also contested by Defendants at great time and expense. *ECF No. 69, Defs.' Brief re: Notice; ECF No. 70, Pls.' Brief re: Notice.* At the conclusion of the briefing on the contents of the notice, the Court entered an Order ruling in Plaintiffs' favor on all issues. *ECF No. 80, Order.*

On August 5, 2019, Gonzalez filed a Motion for Rule 23 Class Certification of Hawaii State Law Wage and Hour Claims and Supporting Memorandum. *ECF No. 54*. Defendants vigorously opposed class certification and the matter was briefed extensively at great time and expense. *See ECF No. 58, Defs.' Opp.; ECF No. 63, Pls.' Reply.* By Order entered on May 1, 2020 (*ECF No. 159*), the Court granted class certification pursuant to Fed. R. Civ. P. 23, certifying the Hawaii Class consisting of all individuals employed as Vacation Counselors by WMRP at any time since May 29, 2012. The Court also appointed Gonzalez to serve as the Representative Plaintiff and Dickinson Wright PLLC to serve as Hawaii Class Counsel. *Id., p. 14.*

Pursuant to the court-supervised notice sent to putative FLSA opt-in plaintiffs, **798** individuals (collectively referred to as "Collective Class Members") filed consent forms and joined the lawsuit. Similarly, following the Court's Order granting class certification of the Hawaii Class, notice was sent to **620** current and former Vacation Counselors (collectively referred to as "Hawaii

1  Class Members") who worked for WMRP in Hawaii since May 29, 2012.  None elected to opt out
2  of the case.[3]

3          At the conclusion of discovery, Defendants filed a Motion for Summary Judgment, or in
4  the Alternative, Partial Summary Judgment of the Named Plaintiff and Certain Collective Class
5  Members and Hawaii Class Members Pursuant to FRCP Rule 56.  *ECF No. 202*.  By Order entered
6  December 27, 2021 (*ECF No. 259*), the Court granted Defendants' Motion for Summary
7  Judgment, in part.  As a result, **1,165** individuals remain in the lawsuit.  Broken down by claims,
8  there are **600** Hawaii Class Members (51 who also have claims under the FLSA), and an additional
9  **565** FLSA Collective Class Members.[4]

10         Further, the Court granted Defendants' Motion to Dismiss, in part, holding that those
11 Hawaii Class Members and Collective Class Members who were subject to Defendants' arbitration
12 agreement were compelled to submit their claims to arbitration.  *ECF No. 258, Order, p. 8*.  The
13 Court stayed the case as to only those individuals pending the completion of arbitration.  *Id.*

14         Of the remaining **1,165** individuals in the lawsuit, based on the Court's ruling, **556** were
15 compelled to pursue their claims in arbitration.  *Ex. 3, Declaration of Martin Holmes ("Holmes*
16 *Decl."),¶ 21.*   Further, given that Defendants' arbitration agreement contained a class and
17 collective action waiver, these individuals would have to pursue their arbitration claims on an
18 individual basis.  *Id.*  Finally, in each arbitration action, Defendants would argue that the claimant's
19 claim was not tolled by the filing of his or her Consent Form (as it relates to the FLSA Collective
20 Class Members) and/or not tolled by the filing of the Complaint (as it relates to the Hawaii Class
21 Members).  *Id.*  In its Order, the Court declined to rule on the tolling issue, directing the parties to
22 present their respective arguments to the arbitrator.  *ECF No. 258, Order, p. 7*.

23         Since the filing of this action over four years ago, the matter has been hotly contested with
24 extensive written discovery, multiple discovery disputes (some involving numerous, lengthy meet

25
26 [3]  Of the 620 Hawaii Class Members, 59 of those individuals had previously joined the lawsuit as FLSA Opt-in
Plaintiffs by filing consents.

27 [4]  As part of Defendants' Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment,
Defendants successfully argued that Gonzalez's claim under the FLSA were barred based on an earlier class action
28 settlement in California.  As a result, Hughes is the sole representative Plaintiff of the FLSA Collective Class and
Gonzalez remains the sole representative plaintiff of the Hawaii Class.

and confers, and some resulting in the filing of motions to compel), multiple depositions, extensive and protracted motion practice, expert proof, expert depositions, a failed mediation in December 2020, and a successful mediation on April 6, 2022.  As a result, both Defendants and Plaintiffs have incurred millions of dollars in attorney's fees and Plaintiffs have incurred hundreds of thousands of dollars in expenses, most attributable to Plaintiffs' experts, Charles River Associates ("CRA"), who were essential and necessary in the prosecution of this case, particularly in the examination and analyses of Defendants' time and pay data on the issue of liability, and also to calculate unpaid overtime owed to each Hawaii Class Member and Collective Class Member.

Plaintiffs move, without Defendants' opposition, for preliminary approval of a **$6,740,862.96** settlement that resolves all claims in this litigation, as reflected in the Agreement attached hereto as **Exhibit 1**.[5]  As discussed below, the parties have reached an agreement which provides *more* than complete and total monetary relief to the 1,165 Hawaii Class Members and Collective Class Members. *Ex. 3, Holmes Decl.), ¶¶ 21 & 33*.  More specifically, and as discussed below, the minimum Net Settlement Amount[6] will provide each Hawaii Class Member and Collective Class Member with a payment that not only equals 100% of their miscalculation of overtime claim, but also an additional monetary premium.  The minimum Net Settlement amount ensures that each Hawaii Class Member and Collective Class Member will receive *the most* that they could have possibly had they gone to trial and prevailed on all issues, including the amount of their miscalculation claims, an equal amount in liquidated damages under the FLSA or the Hawaii Wage and Hour Law, the maximum six-year recovery period under the Hawaii Wage and Hour Law and the maximum three-year recovery period under the FLSA.  In addition, after each

---

[5]  This case and the related companion case of *Delara v. Diamond Resorts International Marketing, Inc.*, Case No. 2:19-cv-00022-APG-NJK (the "*Delara* case"), were mediated together on April 6, 2022, and were settled collectively for **$7,900,000.00**.  Based on the number of total number of workweeks of class members in both cases, and after determining the amount of overtime wages, liquidated damages, and separating attorney's fees, costs and settlement administration fees for each case, **$6,740,862.96** was allocated to this case and **$1,159,137.04** was allocated to the *Delara* case.  In the *Delara* case, Plaintiff Alberto Delara is filing a Motion for Final Approval of the FLSA Settlement. Because the *Delara* case is not a "hybrid" action which includes a Rule 23 class component, Plaintiff and FLSA Collective Action Members in the *Delara* case will seek final approval of their Settlement without being required to wait for final approval in this case.

[6]  The Agreement defines "Net Settlement Amount" as the Gross Settlement minus Class Counsel's attorney's fees and costs, Incentive Awards for the Named Plaintiffs which includes consideration for their general releases, and settlement administration costs. *Ex. 1, Agreement, ¶ 21*.

DW
DICKINSON WRIGHT
ATTORNEYS AT LAW

Hawaii Class Member and Collective Class Member receives 100% of his or her miscalculation claim, a residual amount of at least **10.39%** the minimum Net Settlement Amount will remain, which will be distributed amongst Hawaii Class Members and Collective Class Member on a pro rata basis based on the number of workweeks that he or she worked during the recovery periods. Thus, not only will the Net Settlement Amount provide Hawaii Class Members and Collective Class Member with full and complete compensation for their miscalculation of overtime claims asserted in this lawsuit, but also an additional *premium* of approximately **10.39**% which will be distributed amongst Hawaii Class Members and Collective Class Members on a pro rata basis.

For these reasons, and for the reasons discussed below, the Court should grant preliminary approval of the settlement and the relief sought by Plaintiffs in this Motion.

### KEY SETTLEMENT TERMS

The Agreement resolves fully, finally, and with prejudice, the claims of Hawaii Class Members and Collective Class Members. The key terms of the Settlement Agreement include the following, subject to the Court's approval:

1.    Defendants will pay **$6,740,862.96** (the "Gross Settlement Amount"),[7] which is the maximum amount Defendants can be required to pay under the Agreement, including all:  a) payments to Hawaii Class Members and Collective Class Members; b) Hawaii Class Members and Collective Class Members' employee payroll taxes;[8] c) Class Counsel's fees; d) Class Counsel's costs; e) settlement administrator costs; and f) Incentive Award payments to the Named Plaintiffs, which include consideration for the Named Plaintiffs' general releases. Unless the Agreement is voided or not approved by the Court, none of the settlement funds revert to Defendants. *Ex. 1, Agreement,¶ 33.*

2.    Defendants will not oppose Plaintiffs' motion to award Class Counsel their attorney's fees not to exceed $2,723,173.50 and costs not to exceed $450,763.00. All attorney's

---

[7] "Gross Settlement Amount" is defined in Paragraph 12 of the Agreement. *See Ex. 1, Amt., ¶ 12.*

[8] Defendants remain responsible for paying their portion of payroll taxes (including FICA, FUTA and SUTA), and such amounts are neither included in nor will be deducted from the Gross Settlement Amount.

fees and costs awarded to Class Counsel will be paid out of the Gross Settlement Amount. *Id., ¶ 34.*

3.    Defendants will not oppose Plaintiffs' motion for Incentive Awards in the amount of $20,000.00 to each Named Plaintiff ("Incentive Award"), which includes consideration for their general releases. The Incentive Awards will be paid out of the Gross Settlement Amount. *Id., ¶ 35.*

4.    KCC Class Action Services, LLC, ("KCC") or another settlement administrator approved by the Court, will administer the settlement.[9] All settlement administration costs, not to exceed $37,500.00, shall be paid out of the Gross Settlement Amount. To the extent that the settlement administration costs are less than the not-to-exceed quote of $37,500.00, the difference will be added to the Net Settlement Amount. *Id., ¶ 36.*

5.    The settlement administrator's responsibilities will include the establishment a Qualified Settlement Fund ("QSF"), as well as other duties and responsibilities to administer the Settlement in accordance with the Agreement. *Id., ¶¶ 27, 36 & 38.*

6.    The Net Settlement Amount payable to Hawaii Class Members and Collective Class Members will consist of the Gross Settlement Amount minus: a) Class Counsel's fees and costs; b) Incentive Awards for the Named Plaintiffs, including consideration for the Named Plaintiffs' general releases; and c) settlement administration costs. *Id., ¶ 20.*

7.    Within 7 calendar days of the Order Granting Preliminary Approval, Defendants will provide the Settlement Administrator a list, in electronic format, of the names, Last Known Addresses, Last Known E-mail Addresses, and Social Security numbers of Hawaii Class Members. The Notice in the form of **Exhibit 2** (Exhibit A to the Agreement) will be sent to all Hawaii Class Members by mail and, and to the extent the Parties are in possession of a personal email addresses, by electronic email to personal email addresses. The Notice will be mailed within 21 calendar days of the Order Granting Preliminary Approval. *Id., ¶ 39.*

---

[9] Subject to the Court's approval, Class Counsel has selected KCC as the settlement administrator. Defendants have approved KCC to serve as the settlement administrator.

8.     Any Hawaii Class Member may request exclusion from the settlement by "opting out."  Hawaii Class Members who choose to do so must mail a written, signed statement to the Settlement Administrator that he or she is opting out of the Settlement ("Opt-Out Statement").  To be effective, an Opt-Out Statement must be sent via First Class United States Mail and postmarked by a date certain to be specified on the Notice, which will be 45 calendar days after the Settlement Administrator mails the Notice.  Defendants may void the Settlement if 5% or more of the Hawaii Class Members opt out.  *Id., ¶ 41.*

9.     Hawaii Class Members who wish to present objections to the proposed Settlement at the Fairness Hearing must first do so in writing.  To be considered, such statement must be sent to the Settlement Administrator via First-Class United States mail, or e-mail, and be received by the Settlement Administrator by a date certain, to be specified on the Notice, which shall be the final date of the Opt-Out Period.  The objection must state the specific basis for each objection, whether it applies only to the objector, to a specific subset of the class, or to the entire class.  An objector also has the right to appear at the Fairness Hearing either in person or through counsel hired by the objector.  Any Hawaii Class Member who has submitted an Opt-Out Form may not submit an objection to the Settlement.  *Id., ¶ 41.*

10.     The claim shares from the Net Settlement Amount will be distributed to Hawaii Class Members and Collective Class Members as determined by Class Counsel in their discretion, subject to Court approval.  *Id., ¶¶ 11 & 14.*  The proposed formula is described below.

**PROPOSED DISTRIBUTION OF THE NET SETTLEMENT AMOUNT**

During discovery, Defendants provided voluminous time and pay records related to Hawaii Class Members and Collective Class Members, including large amounts of electronic data.  To facilitate the review and analyses of these records, and to calculate the amount of overtime due and owing to each Hawaii Class Member and Collective Class Member for his or her miscalculation claim, Plaintiffs retained CRA.  Based on their review and analyses of Defendants' records, CRA determined that the classes as a whole were underpaid overtime and that based on their calculations and Defendants' records, had Defendants included all earnings, including

DICKINSON WRIGHT
ATTORNEYS AT LAW

commissions and bonuses, for which Hawaii Class Members and Collective Class Members may have been eligible, Hawaii Class Members and Collective Class Members would have received an additional **$1,580,481.82** in overtime pay.  Further, based on their review and analyses of Defendants records, CRA determined how much each Hawaii Class Member and Collective Class Member was owed based upon Defendants' records had all earnings, including commissions and bonuses, for which Hawaii Class Members and Collective Class Members may have been eligible, been included in the overtime calculation during the recovery periods.

The Gross Settlement Amount of this "hybrid" action is $6,740,862.96.  If the Court awards Class Counsel attorney's fees in the amount of $2,723,173.50 and costs in the amount of $450,763.00, awards the Named Plaintiffs Incentive Awards in the amount of $40,000.00, and the settlement administrator fees are the maximum amount of the Settlement Administrators "not to exceed" quote of $37,500.00, that will result in a Net Settlement Amount of **$3,489,427.46**.

Based on the foregoing, Plaintiffs and Class Counsel have devised the following formula to allocate the Net Settlement Amount, subject to the Court's approval.  First, each Hawaii Class Member and Collective Class Member will receive his or her pro rata share of the **$1,580,481.82** total owed to them for Defendants' underpayment of overtime.   Second, each Hawaii Class Member and Collective Class Member will receive an equal amount representing liquidated damages under the FLSA and/or Hawaii Wage and Hour Law totaling **$1,580,481.82**.  When those two figures are combined, which compensates each Hawaii Class Member and Collective Class Member for 100% of his or her claims in this lawsuit for Defendants' underpayment in overtime (doubled for liquidated damages and the maximum recovery periods under the FLSA and Hawaii Wage and Hour Law), the total is **$3,160,963.64**, leaving a residual of at least **$328,462.82**.

Third, as to the residual left of the Net Settlement Amount after deducting the overtime miscalculation claims (doubled for liquidated damages), Class Counsel determined that the fairest and most equitable way to distribute this amount would be on a workweek basis, subject to the Court's approval.  Class Counsel, in consultation with CRA, have determined that there are a total of **61,098** workweeks for Hawaii Class Members and Collective Class Members during the FLSA

and Hawaii Class recovery and class periods. Based on the foregoing, each Hawaii Class Member and Collective Class Member will receive his or her pro rata share of any residual based on the number of their workweeks during the recovery periods.

## TIMING OF EVENTS

As part of this Motion for Preliminary Approval of the Agreement, as well as the terms of the Agreement itself, Plaintiffs request that the Court establish deadlines for mailing the Notice to Hawaii Class Members, deadlines for Hawaii Class Members to object or opt out, and set a final approval hearing date.

The proposed deadlines per the Agreement are summarized below:

1.     Mailing of Notice to Hawaii Class Members – within 21 calendar days after entry of the Order Granting Preliminary Approval;

2.     Opt Out – within 45 days after the Settlement Administrator mails Notice;

3.     Objections – within 45 days after the Settlement Administrator mails Notice; and

4.     Responses to Objections – no later than 14 calendar days before the Fairness Hearing and hearing on Plaintiffs' Motion for Final Approval.

Based on the foregoing, subject to the Court's approval, Plaintiffs request that the Court schedule a fairness and final approval hearing on or after [80 days after entry of Order Granting Preliminary Approval; actual calendar day will be determined by the entry date of the Order Granting Preliminary Approval].

## LAW AND ARGUMENT

## I.     The Settlement Meets the Requirements for Preliminary Approval

In the Ninth Circuit and nationwide, it is well settled that a strong judicial policy favors class action settlements. *See e.g., Tyus v. Wendy's of Las Vegas*, 2021 WL 2169928, at *2 (D. Nev. 2021); *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

Rule 23 requires judicial review and approval of all class action settlements. Fed. R. Civ. P. 23(e). There are three steps in the approval process. First, the Court must preliminarily approve

the proposed settlement.  Fed. R. Civ. P. 23(e)(2).  Second, members of the class must be given notice of the proposed settlement. Fed. R. Civ. P. 23(e)(1).  Third, after holding a fairness hearing, the Court must give its final approval of the settlement.  Fed. R. Civ. P. 23(e)(1); *Tyus*, at *2; *Acuna v. So. Nev. T.B.A. Supply Co.*, 324 F.R.D. 367, 379 (D. Nev. 2018) (*citing Manual for Complex Litigation*, Fourth, § 21.633 (2004) and *Nat.'l Rural Telecomms. Coop. v. DIRECTTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004)).

In determining whether preliminary approval is appropriate, the sole issue before the Court is whether the proposed Agreement is within the range of what *might* be later found fair, reasonable, and adequate, so that notice of the proposed Agreement can be sent to Hawaii Class Members and a hearing scheduled to consider final settlement approval.  *See Tyus*, at *2; *Acuna*, at 379; *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 470 (E.D. Cal. 2010); *see also* Manual for Complex Litigation § 13.14, at 173 (4th ed. 2004) ("First, the [court] reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing.  If so, the final decision on approval is made after the hearing.").  Therefore, the preliminary approval determination is not an ultimate determination of whether the settlement is fair, reasonable and adequate.  Rather, the Court must determine "whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982).

While "[t]he preliminary approval stage of the litigation requires the court to determine whether the settlement is preliminarily fair, reasonable, and adequate," it "does not require the court to review the merits of the case." *Miracle v. Bullitt County, Kentucky*, 2008 WL 3850477 at *5 (W.D. Ky. Aug. 15, 2008) (*quoting In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 370 (S.D. Ohio 1990)).  Instead, "[p]reliminary approval of a proposed settlement is based upon the court's familiarity with the issues and evidence, as well as the arms-length nature of the negotiations prior to the proposed settlement, ensuring that the proposed settlement is not illegal or collusive." *Id.*

Courts evaluate the "settlement as a whole, rather than assessing its individual components." *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012). "By definition, a fair settlement need not satisfy every concern of the plaintiff class, but may fall anywhere within a broad range of upper and lower limits. '(T)he essence of settlement is compromise ... a solution somewhere between the two extremes.'" *Alliance To End Repression v. City of Chicago*, 561 F. Supp. 537, 548 (N.D. Ill. 1982) (*quoting Armstrong v. Bd. Of School Dr. of the City of Milwaukee*, 616 F.2d 305, 315 (7th Cir. 1980)). If the court finds the settlement "within the range of possible approval," it should then order that the class be notified of the settlement and of a formal fairness hearing to be held on the question of settlement approval. *See* Manual for Complex Litigation at § 40.42 (model preliminary approval order).

Initially, the settlement should be accorded a presumption of fairness. A number of courts have held that it may be presumed that the agreement is fair and adequate when it is the product of arm's-length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced. *See Boggess v. Hogan*, 410 F. Supp. 433, 438 (N.D. Ill.1975); *Goldsmith v. Technology Solutions Co.*, No. 92 C 4374, 1995 WL 17009594, at *3, n. 2 (N.D. Ill. Oct. 10, 1995).

Under Ninth Circuit precedent, the Court must generally weigh the following: 1) the strength of the plaintiff's case; 2) the risk, expense, complexity and likely duration of further litigation; 3) the risk of maintaining class action status throughout the trial; 4) the amount offered in settlement; 5) the extent of discovery completed and the stage of the proceedings; 6) the experience and views of counsel; 7) the presence of a governmental participant; and 8) the reaction of the class members of the proposed settlement. *Hanlon*, 150 F.3d at 1026; *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011); *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

With respect to the first and second *Hanlon* factors, the Court must weigh the "strength of [the plaintiffs'] case relative to the risks of continued litigation." *Lane*, 696 F.3d at 823. Approval



of a class settlement is appropriate in cases in which "there are significant barriers plaintiffs must overcome in making their case." *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). Similarly, difficulties and risks in litigating weigh in favor of approving a class settlement. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009); *see also Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.").

Here, while Plaintiffs have a strong case on the issue of liability, given the nature of the dispute and the uncertainties inherent in any class action litigation, should the case proceed there are certain risks. First, based on the Court's ruling, **556** of the remaining **1,165** individuals in the case (47.73%) have been compelled to pursue their claims in arbitration and because Defendants' arbitration agreement includes a class and collective action waiver, each of these individuals must file separate arbitration claims. Undoubtedly, many will elect not to do so given the relatively small amount of their individual claims, resulting in them receiving nothing. Further, Defendants will argue that the claims of these individuals were not tolled by the filing of their FLSA Consents to join this action and/or the filing of the Hawaii Class Action Complaint on May 29, 2012.[10] Thus, these individuals run the risk of having their claims diluted or completely extinguished should they file an arbitration claim and the arbitrators rule that there is no tolling.

Second, Defendants have maintained throughout this litigation that they acted in good faith. As to the FLSA claims, the Court denied Plaintiffs' Motion for Partial Summary Judgment, finding that there was a genuine issue of material fact to be tried. *ECF No. 260, Order, pp. 5-6*. If the case went to trial and/or individual arbitrations were filed and Defendants prevailed on this issue, FLSA Collective Class Members would only receive their overtime pay, and not an equal amount in liquidated damages.

Third, Defendants have maintained throughout this litigation that they did not act willfully. While the Court granted summary judgment on the willfulness issue as it relates to the claims of

---

[10]  In its Order compelling arbitration, the Court declined to rule on this issue, finding that it would be more appropriately addressed in each individual arbitration. *ECF No. 258, Order, p. 7.*



Hawaii Class Members, this is only an interlocutory order subject to review and modification. As it relates to the FLSA claims, however, the Court denied Plaintiffs' Motion for Partial Summary Judgment, finding that there was a genuine issue of material fact to be tried. *Id., Order, pp. 5-7.* If the case went to trial and/or individual arbitrations were filed and Defendants prevailed on this issue, FLSA Collective Class Members would only receive their overtime pay for a two-year recovery period – not a three-year recovery period based on a willful violation of the FLSA.

Fourth, following the trial, either side could appeal the Court's verdict, as well as the Court's pretrial orders, including the Court's Orders holding that the retail or service establishment exemption does not excuse Defendants from the overtime requirements under the FLSA and the Hawaii Wage and Hour Law. *ECF No. 261, Order.* Were Defendants to appeal this issue and prevail, Hawaii Class Members and Collective Class Members would receive *no* recovery whatsoever.

Thus, given the complexities of this litigation, and the substantial risks of continuing to litigate, including the potential filing of hundreds of arbitration claims and appeal,[11] Plaintiffs submit that the Settlement represents a very favorable resolution for Hawaii Class Members. Importantly, the Agreement eliminates any further prosecution of this case, including a trial and hundreds of potential claims, which would be lengthy and expensive. Further, the Agreement eliminates the risks, difficulties, and uncertainties of litigation, trial, and post-trial proceedings. Based on the foregoing, the first and second *Hanlon* factors are clearly met.

As to the third *Hanlon* factor, the Court considers the risk of maintaining class action status through the duration of the case. As discussed above, by granting Defendants' Motion to Dismiss, in part, on the arbitration issue, and by compelling **556** of the FLSA Collective Class Members and Hawaii Class Members to individual arbitrations, the Court effectively reduced the number of Hawaii Class Members and Collective Class Members who could pursue their claims at trial by almost half. Given that the Settlement includes those individuals, Plaintiffs are able to maintain the class action status for *all* Hawaii Class Members who, as discussed above and below, will

---

[11]  The Court previously held that 340 Opt-in Plaintiffs and 303 Hawaii Class Members were compelled to filing individual arbitrations. *See ECF No. 199, Order.*



receive *more* than the maximum amount they could have received had they gone to trial and individual arbitrations.

As to the fourth *Hanlon* factor, the Court analyzes the proposed settlement amount. In assessing the consideration obtained by class members in a class action settlement, "[i]t is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Officers for Justice v. Civil Service Com'n of City & Cty. Of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982). In most class action cases, after deduction of attorney's fees and costs, the class is getting *less* than their maximum recovery. In this regard, "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998). Here, however, this is inapplicable because Hawaii Class Members and Collective Class Members will receive a minimum Net Settlement Amount of **$3,489,426.35**. Even after the maximum amount of attorney's fees, costs, Incentive Awards and settlement administration fees are deducted from the Gross Settlement Amount, the classes will not only receive *100%* of their overtime miscalculation claims and an equal amount representing liquidated damages for the full recovery periods (three years for FLSA Collective Class Members and six years for Hawaii Class Members), but a *premium* of 10.39%. Thus, the minimum Net Settlement Amount *exceeds* what they could have recovered had they gone to trial and been completely successful, including findings that Defendants did not act in good faith and acted willfully. For these reasons, the fourth *Hanlon* factor is easily met.

As to the fifth *Hanlon* factor, the Court evaluates the extent of discovery completed and the stage of the proceedings. "Class action settlements are favored more when a considerable amount of discovery has been conducted, and this is because the considerable discovery 'suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case.'" *Lusk v. Five Guys Enterprises LLC*, 2019 WL 7048792, at *7 (E.D. Cal. Dec. 23, 2019) (*quoting Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 977 (E.D. Cal.

2012)).  Under this factor, the Court analyzes the degree of case development accomplished prior to settlement in order to determine whether counsel had sufficient appreciation of the merits of the case before negotiating the settlement.  *See In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation*, 55 F.3d 768, 813 (3d Cir. 1995).

This action was filed on May 29, 2018.  Since that time, the parties engaged in almost 4 years of highly contentious litigation involving extensive written discovery (including voluminous electronic data going back to May 29, 2012), depositions, expert proof, and extensive motion practice.  Discovery is complete and the Court has ruled on all pending motions, including dispositive motions.

The parties have engaged in two eight-hour mediations, one in December 2020 which failed, and the other on April 6, 2022, which was successful.[12]  The April 6, 2022 mediation was conducted by David Rotman, a neutral, highly respected and experienced class action mediator. Attorneys for the parties were present during these settlement negotiations, as was in-house counsel for Defendants.  With Mr. Rotman's assistance, the parties extensively discussed the merits of the claims and defenses, as well as the relief available to Hawaii Class Members and Collective Class Members before agreeing to basic settlement terms.  Thereafter, the parties engaged in protracted negotiations regarding the terms of the Agreement over a period lasting more than three months before the Agreement presently before the Court was finalized.  Further, the Parties have expended millions of dollars in attorney's fees and Plaintiffs have incurred hundreds of thousands of dollars in costs, largely involving their experts.  Based upon this litigation history, the completion of discovery and dispositive motions, "counsel had a good grasp on the merits of their case before" the successful April 6, 2022 mediation.  *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009).  Thus, the stage of the proceedings weighs heavily in favor of approval.

---

[12]  The fact that the settlement was achieved during a mediation conference presided over by a neutral mediator is a factor supporting the reasonableness of the proposed settlement.  *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d at 946.

16

As to the sixth *Hanlon* factor, the Court considers the experience and views of Class Counsel. The Ninth Circuit has declared that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Id.* (*quoting In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)). The Court finds that the experience and views of counsel favor preliminary approval of the settlement as fair, reasonable, and adequate. *See Riker v. Gibbons*, 2010 WL 4366012, at *2 (D. Nev. Oct. 28, 2010) ("An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining.") (*quoting* 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11:42 (4th ed. 2002)).

Throughout this litigation, Hawaii Class Members and Collective Class Members had the benefit of highly experienced counsel. *See Ex. 3, Holmes Decl., ¶¶ 4-12.* Class Counsel collectively have approximately 75 years of experience litigating class and collective actions with over 20 multi-million dollar settlements. *Ex. 3, Holmes Decl., ¶ 4&11.* Michael Feder, Martin Holmes, Peter Klett and Reid Estes each have more than 30 years of civil litigation practice, and as to Holmes Klett, and Estes, the past 25 years being devoted largely to class and collective action cases. *Id.* It is well established that significant weight should be attributed to the opinion of experienced counsel that a settlement is in the best interests of the class. *See Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983) (the court should defer to the judgment of experienced counsel who has evaluated the strength of plaintiff's case); *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1016 (S.D. Ohio 2001) ("The Court should always give significant weight to the belief of experienced Counsel that the settlement is in the best interest of the class.") (citation omitted). Thus, the sixth factor weighs heavily in favor of approval.

The seventh *Hanlon* factor is inapplicable to this case. Finally, the eight *Hanlon* factor – the reaction of Hawaii Class Members to the proposed settlement – is premature and should be considered by the Court upon final fairness review.

Based on the foregoing, preliminary approval of the Settlement is appropriate.



## II.    The Court Should Approve the Proposed Notice to Hawaii Class Members

Fed. R. Civ. P. 23(e) requires notice in a reasonable manner to all class members who would be bound by a proposed settlement.    Fed. R. Civ. P. 23(e)(1)(B).  The "notice must include, in a manner that is understandable to potential class members: '(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).'" *Calderon v. Wolf Firm*, 2018 WL 6843723, at *10 (C.D. Cal. Mar. 13, 2018) (*citing* Fed. R. Civ. P. 23(c)(2)(B)).

A class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill*, 361 F.3d at 575; *UAW v. GMC*, 497 F.3d 615, 630 (6th Cir. 2007) (The notice must apprise the class members of the terms of the proposed settlement "so that class members may come to their own conclusions about whether the settlement serves their interests.").

"The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means."  Fed. R. Civ. P. 23(c)(2)(B).  Federal courts have generally held that an individual mailing to each class member's last known address is "reasonably calculated to reach interested parties" and is a sufficient form of notice.  *See, e.g. Mullane v. Cent Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (finding notice by mail as a sufficient form of delivery so long as notice is "reasonably calculated ... to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections"); *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008); *Karkoukli's, Inc. v. Dohany*, 409 F.3d 279, 285 (6th Cir. 2005).

Here, the parties have agreed to and propose direct mail to all Hawaii Class Members, and email notice to Hawaii Class Members with known, personal email addresses.  The mailing will include the ability for Hawaii Class Members to request pleadings and the Agreement from Class

Counsel or the Settlement Administrator. Further, the Notice fully apprises Hawaii Class Members of the terms of the Agreement and of their options to participate, object or opt-out. Accordingly, the detailed information in the proposed Notice attached as **Exhibit 2** (Exhibit A to the Agreement) is more than adequate to place Hawaii Class Members on notice of the proposed Settlement and fully complies with the requirements of Fed. R. Civ. P. 23(e)(1).

### III.    The Court Should Preliminarily Approve Incentive Awards to the Two Named Plaintiffs

The Agreement provides that Plaintiffs will request Incentive Awards each in the amount of $20,000.00, which includes consideration for a general release of all claims against Defendants. Because Plaintiffs will separately apply for the Incentive Awards at the time they seek final approval of the proposed class action Settlement, and following the opportunity for Hawaii Class Members to object, the Court should not determine the fairness of the Incentive Awards at the preliminary approval stage.

With respect to the preliminary approval stage, Plaintiffs submit that Incentive Awards of $20,000.00 are within the range of what the Court *might* award at final approval. A district court may award incentive payments to named plaintiffs in class action cases. *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-959 (9th Cir. 2009). The purpose of incentive awards is to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaking in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Id.* Such incentive awards are particularly appropriate in wage-and-hour actions where a plaintiff undertakes a significant reputational risk in bringing suit against his former employer. *Rodriguez*, 563 F.3d at 958-59. In determining the amount to award a named, plaintiff, the Court should consider the amount of time Plaintiffs spent on the litigation, the risks and burdens carried by Plaintiffs as a result of the litigation, and the particular benefit that Plaintiffs provided to counsel and the class as a whole throughout the litigation. *See Goodwin v. Winn Mgmt. Group LLC*, 2017 WL 3173006, at *12 (E.D. Cal. July 26, 2017) (citation omitted).

Here, the two Named Plaintiffs each seek Incentive Awards in the amount of $20,000.00, for a total of $40,000.00. This represents only approximately 0.59% of the Gross Settlement Amount. *Ex. 3, Holmes Decl., ¶ 24.* While the Court's determination should occur at the final approval stage, the following facts support preliminary approval. First, the Named Plaintiffs were highly paid Vacation Counselors who worked for Defendants, each earning over six figures annually. *Id., ¶ 25.* Second, each recognized the manner in which they were paid overtime and questioned its legality, which prompted each of them to consult with legal counsel. *Id., ¶ 26.* Third, each were willing to serve as one of the Named Plaintiffs representing over 1,000 putative class members, which would require their names to be publicly listed on all pleadings in this case against one of the largest vacation ownership companies in the industry. Each had worked for years in the vacation ownership industry and ran the risk of being "blackballed" by other vacation ownership companies, which are part of a tight knit community of individuals who frequently move from one vacation ownership company to another. *Id., ¶ 27.* Fourth, each recognized that this could potentially result in costly and protracted litigation for Defendants. *Id., ¶ 28.* Fifth, each recognized that the retail and service establishment exemption contained in the FLSA would be at issue and that the Court would likely rule on this issue, creating precedent which would not only affect Defendants, but also other vacation ownership companies desiring that the exemption apply so that they would not be legally required to pay overtime to their employees. *Id., ¶ 29.* Sixth, each were heavily involved in the case from its inception, including the drafting of the Complaint, the filings for conditional certification and class certification (in which they submitted declarations), opposition to Defendants' retail and service establishment defense (in which Hughes submitted a declaration), the preparation of voluminous written discovery responses, participation in depositions and participation in two eight-hour mediations. *Id., ¶ 30.* Finally, the Incentive Awards include a general release by each Named Plaintiff for any and all claims against Defendants, which is worthy of additional monetary consideration. *Id., ¶ 31.*

Based on the foregoing, the Court should preliminary approve the Named Plaintiffs' Requests for Incentive Awards in the amount of $20,000.00 each.



IV.    **The Court Should Preliminarily Approve Plaintiffs' Request for Attorney's Fees and Costs**

A.    **Attorney's Fees**

At the preliminary approval stage, the court may authorize the sending of a notice that includes class counsel's proposed attorney's fees and litigation costs so long as the fees and costs are reasonably within the range of what the court may ultimately approve.  *See Murillo v. Pac. Gas & Elec. Co*, 266 F.R.D. 468, 480 (E.D. Cal. 2010); *Millan v. Cascade Water Services, Inc.*, 310 F.R.D. 593, 613 (E.D. Cal. 2015).

A complicating factor in this case is its "hybrid" nature, involving claims brought under the FLSA and claims under the Hawaii Wage and Hour Law pursued on a class-wide basis under Fed. R. Civ. P. 23.  Both claims, however, are essentially the same based on the same alleged theory – Defendants violated the law by failing to include all compensation, such as commissions and bonuses, in calculating the regular rate of pay for overtime purposes.  Because the claims of the FLSA Collective Class and the Hawaii Class were prosecuted together, by their very nature it is impossible to segregate attorney's fees, costs, incentive awards and settlement administration fees between the FLSA Collective Class and Hawaii Class, necessitating a combined motion which Plaintiffs intend to present at the final approval stage.

Generally speaking, when a settlement produces a common fund for the benefit of the entire class, the Court has discretion to employ either the lodestar method or the percentage-of-recovery method.  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 942 (*citing In re Mercury Interactive Corp.*, 618 F.3d 988, 992 (9th Cir. 2010)).  The choice between lodestar and percentage calculation depends on the circumstances, and either method may have its place in determining what would be reasonable compensation for creating a common fund.  *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).

In this case, Plaintiffs request that the Court utilize the lodestar method for two reasons.  First, as to the claims brought under the Hawaii Wage and Hour Law, HRS 387-1 *et seq*., the statute provides for the recovery of attorney's fees and costs as part of an employee's recovery.

*See* HRS 387-12(c).  Hawaii courts have held that the lodestar method should be utilized when awarding attorney's fees under Hawaii fee-shifting statutes.  *See Gurrobat v. HTH Corp.*, 135 Hawaii 128, 138, 346 P.3d 197, 207 (Hawaii 2015); *Kaleikini v. Yoshioka*, 129 Hawaii 454, 469, 304 P.3d 252, 267 (Hawaii 2013); and *DFS Group, L.P. v. Paiea Props.*, 110 Hawaii 217, 222, 131 P.3d 500, 505 (Hawaii 2006).

Second, the lodestar method is a more accurate way to allocate the Gross Settlement Amount.  *Ex. 3, Holmes Decl., ¶ 33*.  As discussed above, if the Court awards Plaintiffs' counsel the attorney's fees and costs they request, awards the Named Plaintiffs the Incentive Awards they request, and settlement administrator costs reach the "not to exceed amount" of $37,500.00, the Net Settlement Amount of **$3,489,426.46** will not only compensate the classes at 100% for their miscalculation of overtime claims (which includes an equal amount in liquidated damages and the maximum recovery periods), but also will pay the classes a *premium* of approximately 10.39% above and beyond what they could have possibly recovered at trial.

The lodestar figure is calculated by multiplying the number of hours expended on the litigation by a reasonable hourly rate for the region and experience of the lawyer.  *Ballen v. City of Redmond,* 466 F.3d 736, 746 (9th Cir. 2006); *In re Bluetooth*, 654 F.3d at 941.

Class Counsel have kept and maintained contemporaneous records throughout the prosecution of this case detailing the tasks performed and the number of hours worked on each task.  *Id., ¶ 36*.  Further, Class Counsel have utilized Dickinson Wright PLLC's standard billing rates assigned to attorneys and staff based on their experience.  Dickinson Wright's standard billing rates are reasonable based on the experience of Class Counsel, and consistent with comparable law firms.  *Id., ¶¶ 34-35*.

Through June 30, 2022, Class Counsel and their staff have spent 6,358 hours on this matter, which at their standard billing rates, equals $2,912,849.00.  *Id., ¶ 36*.[13]  Thus, Plaintiffs' current

---

[13]  Obviously, this amount will increase prior to final approval based on additional work performed by Class Counsel.

22

1    lodestar is more than the $2,723,173.50 maximum amount that Class Counsel will seek in

2    Plaintiffs' motion for final approval.[14]

3          In computing the lodestar amount, this Court must determine a reasonable hourly rate to

4    use for Class Counsel.  *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205-1206 (9th Cir. 2013).

5    Typically, the established standard used to determine a reasonable hourly rate is the rate prevailing

6    in the community for similar work performed by attorneys of comparable skill, experience, and

7    reputation.  *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).  However, the

8    "community" does not mean simply the local geographic community where the matter was tried.

9    Rather, the court is also free to examine the "national" market in a specific practice area or area of

10   specialization.  *Louisville Black Police Officers Org.*, 700 F.2d 268, 278 (6th Cir. 1983); *see also*

11   *Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 768-69 (7th Cir. 1982); *Casey v. City of Cabool, Mo.*,

12   12 F.3d 799, 805 (8th Cir. 1993); *Blum v. Stenson*, 465 U.S. 866, 895, n. 11 (1984) ("[T]here is no

13   such thing as a prevailing market rate for the service of lawyers in a particular community. The

14   type of services rendered by lawyers, as well as their experience, skill and reputation, varies

15   extensively-even within a law firm.").

16         In this Circuit, the Court is required to calculate an award of attorney's fees by *first* utilizing

17   the lodestar.  *Caudle v. Bristow Optical Co., Inc.*, 224 F.3d 1014, 1028 (9th Cir. 2000).  Thereafter,

18   the Court may adjust the lodestar upward or downward based on 12 factors.  *See Hensley v.*

19   *Eckerhart*, 461 U.S. 424, 430 n. 3 (1983) (*citing Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d

20   714, 717 (5th Cir. 1974) *abrogated on other grounds by Blanchard v. Bergeron,* 489 U.S. 87, 109

21   S. Ct. 939, 103 L. Ed. 2d 67 (1989)).  The twelve facts are: 1) the time and labor required; 2) the

22   novelty and difficulty of the questions; 3) the skill requisite to perform the legal service properly;

23   4) the preclusion of employment by the attorney due to acceptance of the case; 5) the customary

24   fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or the

25   circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation, and

26

27   _____

28   [14]  It is well recognized that affidavits of the plaintiffs' attorneys and other attorneys in the community regarding
     prevailing fees in the community, and rate determinations in other cases are satisfactory evidence of the prevailing
     market rate.  *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008).

ability of the attorney; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases. *Johnson*, 488 F.2d at 717-719.[15]

Before discussing each of these factors, it is important to note that Plaintiffs are not requesting an upward adjustment to the lodestar, even though such an increase is warranted in this case. Instead, the amount requested will be less than the lodestar. Conversely, an analysis of the twelve factors does not warrant a downward adjustment to Plaintiffs' lodestar. To the contrary, each of the twelve factors discussed below support the fees requested by Plaintiffs' counsel.

The first factor – the time and labor required – are self-evident. Through June 30, 2022, Plaintiffs' counsel and staff have spent 6,358 hours litigating this case for over 4 years. A principal reason for the enormous expenditure of time and money was the contentious nature of this litigation in which virtually every issue was heavily contested.

As to the second factor – the novelty and difficulty of the questions – this case presented an attempt by Defendants to apply the retail and service establishment exemption to the sale of vacation ownership interests. Had Defendants succeeded, Plaintiffs would not have been entitled to any overtime pay whatsoever, let alone additional overtime pay based on Defendants' policy of miscalculating overtime using the hourly rate only. As class counsel for plaintiffs who sold vacation ownership interests in the *Wyndham* case,[16] Plaintiffs' counsel are very knowledgeable and well-versed on this area of the law.

As to the third factor – the skill requisite to perform the legal services properly, given the complexity, difficulty and duration of the case, Plaintiffs submit that lawyers lacking the knowledge, experience, size and staff expertise of class counsel would have been ill-equipped to adequately respond to many of Defendants' legal arguments and forced to "throw in the towel." Only counsel like Plaintiffs' counsel, who have collectively over 75 years of experience handling

---

[15] The 12 factors are also contained in L.R. 54-14(a)(3).

[16] *Pierce, et al v. Wyndham Vacation Resorts, Inc., et al.*, Case No. 3:13-cv-641 (E.D. Tenn.)

complex litigation, particularly FLSA and other wage and hour litigation, could have effectively handled Defendants' vigorous defense of the case.

As to the fourth factor – the preclusion of other employment – Plaintiffs' counsel and their staff had to forgo other less risky financial opportunities, and were no longer free to use the time spent on behalf of the class for other less risky pursuits. Plaintiffs' counsel are on both sides of the "v," which includes the representation of employers in large collective and class actions. In those instances, counsel are paid by the hour and on a regular basis. *Id., ¶ 47.*

As to the sixth factor – whether the fee is fixed or contingent – Class Counsel took this case on a contingency basis, increasing the risk that, absent an excellent result and solvent Defendants, Plaintiffs' counsel would not recoup the tremendous investment of time and money necessary to properly represent the class. Unlike defense counsel, Plaintiffs' counsel did not get paid a dime during the approximately 4-year course of this case, and in addition to the delay in getting paid, took on sizable risk. *Id., ¶ 48.*

As to the eighth factor – the amount of time involved and the results obtained – the Settlement speaks for itself. Not only will Class Members be guaranteed a 100% recovery for their miscalculation claims, doubled for liquidated damages and for the maximum recovery periods, the classes will receive a minimum of a 10.39% premium. Based on the foregoing, Plaintiffs' counsel obtained a substantial, multi-million dollar recovery on behalf of Class Members, whose rights were allegedly violated under the FLSA and/or Hawaii Wage and Hour Law.

As to the ninth factor – the experience, reputation, and ability of the attorneys – as set forth in the Declaration of Martin Holmes, the experience, reputation, and ability of Plaintiffs' counsel in handling FLSA and other class action cases merit an award of their lodestar fees. The track record of Plaintiffs' counsel speaks for itself and demonstrates counsel's vast experience, reputation and excellent abilities to successfully prosecute multiple multi-million dollar wage and hour recoveries over the past twenty 25 years.

As to the tenth factor – the undesirability of the case – while this case was an excellent case



on the merits, such a case would be undesirable to the vast majority of attorneys and law firms due to the time, monetary commitment, and risks involved.  Because of the substantial length of time that may occur before fees or expenses are recovered, if any, taking such a case can and often does have a substantial impact on a firm's earnings, or even existence.  *Id., ¶ 51.*

Per the Agreement, at the final approval stage, Plaintiffs will file an unopposed motion requesting the Court to award attorney's fees not to exceed $2,723,173.50 and costs not to exceed $450,763.00, for a total of $3,173,936.50.  As discussed above, the minimum Net Settlement Amount will be $3,489,426.46.  While the case includes a Rule 23 components involving 600 Hawaii Class Members, there are 565 Opt-in Plaintiffs in the FLSA Collective Class.   In determining the amount of attorney's fees to be awarded in FLSA actions such as this, courts have been instructed not to place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney's fees "encourage[s] the vindication of congressionally identified policies and rights." *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n Local 307 v. G&M Roofing and Sheet Metal Co.,* 732 F.2d 495, 503 (6th Cir. 1984).  Consistent with this policy, courts have upheld "substantial awards of attorney's fees even though a plaintiff recovered only nominal damages." *Posner v. The Showroom, Inc.,* 762 F.2d 1010, 1985 WL 13108 at *2 (6th Cir.1985); *Flitton v. Primary Residential Mortg., Inc.,* 614 F.3d 1173, 1178 (10th Cir.2010) (upholding the district court's decision to award the full amount of fees requested, based on "substantial success," even though the plaintiff obtained only about 1.3% of the damages she had requested); *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1473 (9th Cir. 1983) *disapproved of on other grounds by Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 105 S. Ct. 1005, 83 L. Ed. 2d 1016 (1985) (despite $20,000 recovery for plaintiffs, court awarded $100,000 in attorney's fees); *Cabrales v. Cty. of Los Angeles*, 864 F.2d 1454, 1464–65 (9th Cir. 1988), *cert. granted, judgment vacated,* 490 U.S. 1087, 109 S. Ct. 2425, 104 L. Ed. 2d 982 (1989), and *opinion reinstated,* 886 F.2d 235 (9th Cir. 1989) (court awarded $152,284 in attorney's fees where jury award and $150,000 in damages); *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1209 (9th Cir. 2013)(the court held it is not unreasonable for attorneys to receive a fee

award that exceeds the amount recovered by their clients).

As discussed above, Plaintiffs have achieved an excellent result in this case and reached a settlement which, after deduction of the full amount of attorney's fees and costs that Plaintiffs will request, provides more than a 100% recovery for Class Members.

Based on the foregoing and the facts contained in the Declaration of Martin Holmes, the attorney's fees and costs sought by Plaintiffs on behalf of Class Counsel are reasonably within the range of what the Court may ultimately approve, thereby making preliminary approval appropriate.

### B.    Costs

As of June 30, 2022, Class Counsel have incurred costs in the amount of $ 436,188.57, of which approximately $240,439.75 were payments to CRA, Plaintiffs' experts, whose services were invaluable in this case in order to establish liability (*i.e.,* Defendants' method of calculating overtime based solely on the hourly rate as opposed to all compensation), as well as calculating damages for the Classes and each individual Class Member.  At the final approval stage, Plaintiffs will provide an itemization of costs.  *Id., ¶ 52.*[17]

### CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court: 1) preliminarily approve the settlement terms set forth in the parties' Agreement; 2) approve the proposed Notice to send to the Hawaii Class Members; and 3) schedule a fairness hearing to consider final approval of the Settlement and any related matters.

Respectfully submitted,

DICKINSON WRIGHT PLLC

/s/ Martin D. Holmes
MICHAEL N. FEDER
Nevada Bar No. 7332
3883 Howard Hughes Parkway, Suite 800
Las Vegas, NV 89169

---

[17]  As with attorney's fees, costs will also increase prior to the final approval stage, including costs associated with CRA calculating the amounts owed to each Class Member, which will depend on the final Net Settlement Amount. The Agreement also provides for a redistribution of any uncashed checks, including those payable to Class Members who cannot be located, which will require the services of CRA to calculate these additional amounts.

DW
DICKINSON WRIGHT
ATTORNEYS AT LAW

MARTIN D. HOLMES (*Admitted Pro Hac Vice*)
Tennessee Bar No. 012122
PETER F. KLETT (*Admitted Pro Hac Vice*)
Tennessee Bar No. 012688
424 Church Street, Suite 800
Nashville, TN 37219

*Attorneys for Plaintiffs, Opt-in Plaintiffs and
Hawaii Class Members*

## CERTIFICATE OF SERVICE

I hereby certify that on August 10, 2022, I caused a true and accurate copy of the foregoing,

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS

ACTION SETTLEMENT AND SUPPORTING MEMORANDUM to be filed with the Clerk of

the Court via the Court's CM/ECF system, which sent an electronic copy of same to the following

counsel of record:

HOWARD E. COLE
JENNIFER K. HOSTETLER
LEWIS ROCA ROTHGERBER CHRISTIE LLP
3993 Howard Hughes Pkwy, Suite 600
Las Vegas, NV 89169-5996

ALISON MEGAN HAMER (Admitted Pro Hac Vice)
BENJAMIN JOSEPH TREGER (Admitted Pro Hac Vice)
KIRSTIN ELISABETH MULLER (Admitted Pro Hac Vice)
FERRY EDEN LOPEZ (Admitted Pro Hac Vice)
HIRSCHFELD KRAMER LLP
233 Wilshire Boulevard, Suite 600
Santa Monica, California  90401

*Attorneys for Defendants*

/s/ Martin D. Holmes
Martin D. Holmes

4859-3908-0492 v2 [77850-1]



28