**MICHAEL N. FEDER**
Nevada Bar No. 7332
DICKINSON WRIGHT PLLC
3883 Howard Hughes Parkway, Suite 800
Las Vegas, NV 89169
Telephone:    702-550-4400
Facsimile:    844-670-6009
Email:        mfeder@dickinsonwright.com

**MARTIN D. HOLMES** (*Pro Hac Vice*)
Tennessee Bar No. 012122
**PETER F. KLETT** (*Pro Hac Vice*)
Tennessee Bar No. 012688
**AUTMUN L. GENTRY** (*Pro Hac Vice*)
Tennessee Bar No. 012688
DICKINSON WRIGHT PLLC
Fifth Third Center, Suite 800
424 Church Street
Nashville, TN 37219
Telephone:    615-244-6538
Facsimile:    844-670-6009
Email:        mdholmes@dickinsonwright.com
              pklett@dickinsonwright.com
              agentry@dickinsonwright.com

*Attorneys for Plaintiffs, Collective Class Members and Hawaii Class Members*

**UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA**

| | |
|---|---|
| DANIEL GONZALEZ and JEFFREY HUGHES, on behalf of themselves and others similarly situated,<br><br>            Plaintiffs,<br><br>v.<br><br>DIAMOND RESORTS INTERNATIONAL MARKETING, INC., and WEST MAUI RESORTS PARTNERS, L.P.,<br><br>            Defendants. | Case No. 2:18-cv-00979-APG-NJK<br><br>**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS AND FLSA COLLECTIVE ACTION SETTLEMENT AND SUPPORTING MEMORANDUM** |



1

Pursuant to Fed. R. Civ. P. 23 and the Fair Labor Standards Act ("FLSA"), Plaintiffs Daniel Gonzalez ("Gonzalez") and Jeffrey Hughes ("Hughes") ("Plaintiffs" or "Named Plaintiffs"), respectfully move the Court to approve:  1) the settlement as set forth in the parties' Settlement Agreement and Release ("Agreement");[1] 2) the Incentive Awards in the amount of $20,000.00 to each Named Plaintiff; 3) Class Counsel's attorney's fees in the amount of $2,723,173.50; and 4) Plaintiffs' costs in the amount of $450,763.00.

## INTRODUCTION

On August 10, 2022, Plaintiffs filed their Unopposed Motion for Preliminary Approval of Class Action Settlement and Supporting Memorandum. *ECF No. 283, Pls.' MT*. In their Motion, Plaintiffs summarized the procedural history of the case. *Id., pp. 2-5*.  As stated in Plaintiffs' Motion, **1,165** individuals remain in the lawsuit, which broken down by claims, consists of **600** Hawaii Class Members (51 who also have claims under the FLSA), and an additional **565** FLSA Collective Class Members. *Id., p. 4*.[2] Further, of the remaining **1,165** individuals in the lawsuit, based on the Court's Order ruling on Defendants' Motion to Dismiss (ECF No. 258, Order), **556** were compelled to pursue their claims in arbitration. *ECF No. 283-3, Declaration of Martin Holmes ("Holmes Decl."),¶ 21*.

Thereafter, Plaintiffs moved for preliminary approval of the $6,740,862.96 settlement, the terms of which are reflected in the Settlement Agreement and Release ("Agreement"). *See ECF No. 283-1, Agreement*.  Plaintiffs also requested that the Court:  1) preliminarily approve Class Counsel's attorney's fees not to exceed $2,723,173.50 and costs not to exceed $450,763.00; 2) preliminarily approve Incentive Awards in the amount of $20,000.00 to each Named Plaintiff ("Incentive Award"), which includes consideration for their general releases; 3) approve the proposed Notice to Hawaii Class Members, which included information regarding Hawaii Class

---

[1] The Agreement was filed previously as Exhibit 1 to Plaintiffs' Motion. *See ECF No. 283-1, Agreement*. Because this is a "hybrid" action involving both certified Rule 23 class claims and conditionally certified FLSA claims, Plaintiffs' Motion only sought preliminary approval of the Rule 23 class action settlement.  Now, Plaintiffs seek final approval of both the Rule 23 and FLSA class claims.

[2] As part of Defendants' Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment (ECF No. 202), Defendants successfully argued that Gonzalez's claim under the FLSA was barred based on an earlier class action settlement in California.  As a result, Hughes is the sole representative Plaintiff of the FLSA Collective Class and Gonzalez is the sole representative Plaintiff of the Hawaii Class.

Members' rights to object or opt out of the settlement; 4) approve KCC Class Action Services, LLC ("KCC") as the Settlement Administrator; 4) preliminarily approve the proposed distribution of the Net Settlement amount; and 5) schedule a fairness hearing to consider final approval of the settlement and any related matters. *ECF No. 283, Pls.' MT, pp. 5, 8-10 & 27*.

By Order entered on August 17, 2022, the Court granted Plaintiffs' Motion. *ECF No. 284, Order*. First, the Court preliminarily approved the Parties' Agreement. Second, the Court approved the Notice and the manner of distribution outlined in the Agreement. Third, the Court ordered that Hawaii Class Members may object to or request exclusion from the settlement by postmarking their opt out or request for exclusion within 45 calendar days after the Settlement Administrator mails the Notice, or October 22, 2022. Fourth, the Court approved KCC as the Settlement Administrator. Fifth, the Court preliminarily approved Plaintiffs' request for attorney's fees not to exceed $2,723,173.50 and costs not to exceed $450,763.00. Sixth, the Court preliminarily approved Plaintiffs' request for incentive awards in the amount of $20,000.00 each. Seventh, the Court preliminarily approved the proposed distribution of the Net Settlement Amount. Finally, the Court scheduled a Final Fairness hearing on November 8, 2022. *Id., pp. 1-2*.

Pursuant to the Agreement and the Court's August 17, 2022 Order, Notice was mailed to Hawaii Class Members on September 7, 2022. Hawaii Class Members were given until October 22, 2022, to object or request exclusion from the settlement by opting out. *Ex. 1, Supplemental Declaration of Martin Holmes ("Holmes Supp. Decl."), ¶ 2*. As of the date of this filing, none of the Hawaii Class Members have filed an objection or excluded themselves from the lawsuit by opting out. *Id.*

**LAW AND ARGUMENT**

**I.    The Settlement Meets the Requirements for Final Approval**

In the Ninth Circuit and nationwide, it is well settled that a strong judicial policy favors class action settlements. *See e.g., Tyus v. Wendy's of Las Vegas*, 2021 WL 2169928, at *2 (D. Nev. 2021); *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

3

Rule 23 requires judicial review and approval of all class action settlements. Fed. R. Civ. P. 23(e). There are three steps in the approval process. First, the Court must preliminarily approve the proposed settlement. Fed. R. Civ. P. 23(e)(2). Second, members of the class must be given notice of the proposed settlement. Fed. R. Civ. P. 23(e)(1). Third, after holding a fairness hearing, the Court must give its final approval of the settlement. Fed. R. Civ. P. 23(e)(1); *Tyus*, at *2; *Acuna v. So. Nev. T.B.A. Supply Co.*, 324 F.R.D. 367, 379 (D. Nev. 2018) (*citing Manual for Complex Litigation*, Fourth, § 21.633 (2004) and *Nat.'l Rural Telecomms. Coop. v. DIRECTTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004)).

Courts evaluate the "settlement as a whole, rather than assessing its individual components." *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012). "By definition, a fair settlement need not satisfy every concern of the plaintiff class, but may fall anywhere within a broad range of upper and lower limits. '(T)he essence of settlement is compromise ... a solution somewhere between the two extremes.'" *Alliance To End Repression v. City of Chicago*, 561 F. Supp. 537, 548 (N.D. Ill. 1982) (*quoting Armstrong v. Bd. Of School Dr. of the City of Milwaukee*, 616 F.2d 305, 315 (7th Cir. 1980)).

Initially, the Court should afford the settlement a presumption of fairness. A number of courts have held that it may be presumed that the agreement is fair and adequate when it is the product of arm's-length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced. *See Boggess v. Hogan*, 410 F. Supp. 433, 438 (N.D. Ill.1975); *Goldsmith v. Technology Solutions Co.*, No. 92 C 4374, 1995 WL 17009594, at *3, n. 2 (N.D. Ill. Oct. 10, 1995).

At the final fairness hearing, the Court entertains class members' objections to the terms of the settlement and then makes a final determination whether the parties should be allowed to settle the case pursuant to the terms of the proposed settlement. *Acuna*, 324 F.R.D. at 379 (citing *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 470 (E.D. Cal. 2010) and *Nat'l Rural Telecomms. Coop. v. DIRECTTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004)).

Although this is a "hybrid case" involving both claims brought under the FLSA and Hawaii Wage and Hour Law pursuant to Fed. R. Civ. P. 23, the Court makes similar inquiries as to each when determining whether to approve the settlement. *Acuna*, at 379; *Zako v. Hamilton Co.*, 2020 WL 406376 at *4 (D. Nev. Jan. 24, 2020). Under Ninth Circuit precedent, the Rule 23/FLSA fairness factors include: 1) the strength of plaintiffs' case; 2) the risk, expense, complexity, and likely duration of further litigation; 3) the risk of maintaining class action status throughout the trial; 4) the amount offered in settlement; 5) the extent of discovery completed and the stage of the proceedings; 6) the experience and views of counsel; 7) the presence of a governmental participant; and 8) the reaction of the class members to the proposed settlement. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011); *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); and *D'Amore v. Caesars Enterprise Svs., LLC*, 2020 WL 8613858 at *2 (D. Nev. Oct. 28, 2020) (citing *Hanlon*).

With respect to the first and second factors, the Court must weigh the "strength of [the plaintiffs'] case relative to the risks of continued litigation." *Lane*, 696 F.3d at 823. Approval of a class settlement is appropriate in cases in which "there are significant barriers plaintiffs must overcome in making their case." *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). Similarly, difficulties and risks in litigating weigh in favor of approving a class settlement. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009); *see also Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 526 (C.D. Cal. 2004) ("In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.").

Here, while Plaintiffs have a strong case on the issue of liability, given the nature of the dispute and the uncertainties inherent in any class or collective action litigation, should the case proceed there are certain risks. First, based on the Court's ruling, **556** of the remaining **1,165** individuals in the case (47.73%) have been compelled to pursue their claims in arbitration and because Defendants' arbitration agreement includes a class and collective action waiver, each of

these individuals must file separate arbitration claims. Undoubtedly, many will elect not to do so given the relatively small amount of their individual claims, resulting in them receiving nothing. Further, Defendants will argue that the claims of these individuals were not tolled by the filing of their FLSA Consents to join this action and/or the filing of the Complaint on May 29, 2012, asserting class-wide claims under the Hawaii Wage and Hour Law.[3] Thus, these individuals run the risk of having their claims diluted or completely extinguished should they file an arbitration claim and the arbitrators rule that there is no tolling.

Second, Defendants have maintained throughout this litigation that they acted in good faith and therefore owed no liquidated damages. As to the FLSA claims, the Court denied Plaintiffs' Motion for Partial Summary Judgment, finding that there was a genuine issue of material fact to be tried on the good faith issue. *ECF No. 260, Order, pp. 5-6*. If the case went to trial and/or individual arbitrations were filed and Defendants prevailed on this issue, FLSA Collective Class Members would only receive their overtime pay, and not an equal amount in liquidated damages.

Third, Defendants have maintained throughout this litigation that they did not act willfully. While the Court granted summary judgment on the willfulness issue as it relates to the claims of Hawaii Class Members, this is only an interlocutory order subject to review and modification. As it relates to the FLSA claims, however, the Court denied Plaintiffs' Motion for Partial Summary Judgment, finding that there was a genuine issue of material fact to be tried on the willfulness issue. *Id., Order, pp. 5-7*. If the case went to trial and/or individual arbitrations were filed and Defendants prevailed on this issue, FLSA Collective Class Members would only receive their overtime pay for a two-year recovery period – not a three-year recovery period based on a willful violation of the FLSA.

Fourth, following the trial, either side could appeal the Court's verdict, as well as the Court's pretrial orders, including the Court's Orders holding that the retail or service establishment exemption does not excuse Defendants from the overtime requirements under the FLSA and the Hawaii Wage and Hour Law. *ECF No. 261, Order*. Were Defendants to appeal this issue and

---

[3] In its Order compelling arbitration, the Court declined to rule on this issue, finding that it would be more appropriately addressed in each individual arbitration. *ECF No. 258, Order, p. 7*.

prevail, Hawaii Class Members and Collective Class Members would receive *no* recovery whatsoever.

Thus, given the complexities of this litigation, and the substantial risks of continuing to litigate, including the potential filing of hundreds of arbitration claims and appeal,[4] Plaintiffs submit that the Agreement represents a very favorable resolution for Hawaii Class Members. Importantly, the Agreement eliminates any further prosecution of this case, including a trial and hundreds of potential arbitration claims, which would be lengthy and expensive. Further, the Agreement eliminates the risks, difficulties, and uncertainties of litigation, trial, and post-trial proceedings. Based on the foregoing, the first and second factors are clearly met.

As to the third factor, the Court considers the risk of maintaining class/collective action status through the duration of the case. As discussed above, by granting Defendants' Motion to Dismiss, in part, on the arbitration issue, and by compelling **556** of the FLSA Collective Class Members and Hawaii Class Members to individual arbitrations, the Court effectively reduced the number of Hawaii Class Members and Collective Class Members who could pursue their claims at trial by almost half. Given that the Settlement includes those individuals, Plaintiffs are able to maintain the class action status for *all* Hawaii Class Members who, as discussed above and below, will receive *more* than the maximum amount they could have received had they gone to trial and pursued individual arbitrations.

As to the fourth factor, the Court analyzes the proposed settlement amount. In assessing the consideration obtained by class members in a class action settlement, "[i]t is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Officers for Justice v. Civil Service Com'n of City & Cty. Of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982). In most class action cases, after deduction of attorney's fees and costs, the class is getting *less* than their maximum recovery. In this regard, "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Linney*

---

[4] The Court previously held that 340 Opt-in Plaintiffs and 303 Hawaii Class Members were compelled to file individual arbitrations. *See ECF No. 258, Order*.

7

*v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998).  Here, however, this is inapplicable because Hawaii Class Members and Collective Class Members will receive a minimum Net Settlement Amount of **$3,489,426.35**.  Even after the maximum amount of attorney's fees, costs, Incentive Awards and settlement administration fees are deducted from the Gross Settlement Amount, the Classes will not only receive *100%* of their overtime miscalculation claims and an equal amount representing liquidated damages for the full recovery periods (three years for FLSA Collective Class Members and six years for Hawaii Class Members), but a *premium* of **10.39%**.  Thus, the minimum Net Settlement Amount *exceeds* what they could have recovered had they gone to trial and been completely successful, including findings that Defendants did not act in good faith and acted willfully.  For these reasons, the fourth factor is easily met.

As to the fifth factor, the Court evaluates the extent of discovery completed and the stage of the proceedings.  "Class action settlements are favored more when a considerable amount of discovery has been conducted, and this is because the considerable discovery 'suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case.'"  *Lusk v. Five Guys Enterprises LLC*, 2019 WL 7048792, at *7 (E.D. Cal. Dec. 23, 2019) (*quoting Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012)).  Under this factor, the Court analyzes the degree of case development accomplished prior to settlement in order to determine whether counsel had sufficient appreciation of the merits of the case before negotiating the settlement.  *See In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation*, 55 F.3d 768, 813 (3d Cir. 1995).

This action was filed on May 29, 2018.  Since that time, the parties engaged in almost 4 years of highly contentious litigation involving extensive written discovery (including voluminous electronic data going back to May 29, 2012), depositions, expert proof, and extensive motion practice.  Discovery is complete and the Court has ruled on all pending motions, including dispositive motions.

The parties have engaged in two eight-hour mediations, one in December 2020 which failed, and the other on April 6, 2022, which was successful.[5] The April 6, 2022 mediation was conducted by David Rotman, a neutral, highly respected and experienced class action mediator. Attorneys for the parties were present during these settlement negotiations, as was in-house counsel for Defendants. With Mr. Rotman's assistance, the parties extensively discussed the merits of the claims and defenses, as well as the relief available to Hawaii Class Members and Collective Class Members before agreeing to basic settlement terms. Thereafter, the parties engaged in protracted negotiations regarding the terms of the Agreement over a period lasting more than three months before the Agreement presently before the Court was finalized. Further, the Parties have expended millions of dollars in attorney's fees and Plaintiffs have incurred hundreds of thousands of dollars in costs, largely involving their experts. Based upon this litigation history, the completion of discovery and dispositive motions, "counsel had a good grasp on the merits of their case before" the successful April 6, 2022 mediation. *See Rodriguez*, 563 F.3d at 967. Thus, the stage of the proceedings weighs heavily in favor of approval.

As to the sixth factor, the Court considers the experience and views of Class Counsel. The Ninth Circuit has declared that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Id.* (*quoting In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)). The Court finds that the experience and views of counsel favor approval of the settlement as fair, reasonable, and adequate. *See Riker v. Gibbons*, 2010 WL 4366012, at *2 (D. Nev. Oct. 28, 2010) ("An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining.") (*quoting* 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11:42 (4th ed. 2002)).

Throughout this litigation, Hawaii Class Members and Collective Class Members had the benefit of highly experienced counsel. *See ECF No. 283-3, Holmes Decl., ¶¶ 4-12*. Class Counsel

---

[5] The fact that the settlement was achieved during a mediation conference presided over by a neutral mediator is a factor supporting the reasonableness of the proposed settlement. *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d at 946.

collectively have approximately 75 years of experience litigating class and collective actions with over 20 multi-million dollar settlements. *Id., ¶ 4&11*. Michael Feder, Martin Holmes, Peter Klett and Reid Estes each have more than 30 years of civil litigation practice, and as to Holmes, Klett, and Estes, the past 25 years being devoted largely to class and collective action cases. *Id.* It is well established that significant weight should be attributed to the opinion of experienced counsel that a settlement is in the best interests of the class. *See Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983) (the court should defer to the judgment of experienced counsel who has evaluated the strength of plaintiff's case); *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1016 (S.D. Ohio 2001) ("The Court should always give significant weight to the belief of experienced Counsel that the settlement is in the best interest of the class.") (citation omitted). Thus, the sixth factor weighs heavily in favor of approval.

The seventh factor is inapplicable to this case. Finally, as to the eighth factor – the reaction of Hawaii Class Members to the proposed settlement – there were no objections to the settlement and no opt-outs.

Based on the foregoing, approval of the Agreement is appropriate.

**II.    The Court Should Approve Plaintiffs' Proposed Distribution of the Net Settlement Amount**

Plaintiffs request final approval for the distribution of the Net Settlement Amount.[6] First, under Plaintiffs' proposed distribution, each Hawaii Class Member and Collective Class Member will receive the amount owed to them for Defendants' underpayment of overtime, doubled for liquidated damages, which when combined, would compensate each Hawaii Class Member and Collective Class Member for 100% of his or her claims in this lawsuit for Defendants' underpayment of overtime. Second, as to the residual left, Class Counsel determined that the

---

[6] The Net Settlement Amount consists of the Gross Settlement amount less: 1) Class Counsel's attorney's fees not to exceed $2,723,173.50 and costs not to exceed $450,763.00; 2) Incentive Awards to the Named Plaintiffs not to exceed $20,000.00 each, for a total of $40,000.00; and 3) settlement administration costs not to exceed $37,500.00. The Gross Settlement Amount is $6,740,862.96. If the Court awards Class Counsel attorney's fees in the amount of $2,723,173.50 and costs in the amount of $450,763.00, awards the Named Plaintiffs Incentive Awards in the amount of $40,000.00, and the Settlement Administrator's fees equal its "not to exceed" quote of $37,500.00, that will result in a Net Settlement Amount of $3,489,427.46.



10

fairest and most equitable way to distribute this amount would be on pro rata basis based on the number of workweeks worked by each Hawaii Class Member and Collective Class Member during the recovery periods. In that regard, Class Counsel, in consultation with CRA, have determined that there are approximately 61,098 workweeks for Hawaii Class Members and Collective Class Members during the FLSA and Hawaii Class recovery and class periods. Based on the foregoing, each Hawaii Class Member and Collective Class Member will receive his or her pro rata share of any residual based on the number of their workweeks during the recovery periods. *Ex. 1, Holmes Supp. Decl., ¶ 3.*

### III. The Court Should Approve Incentive Awards to the Two Named Plaintiffs

The Agreement provides that Plaintiffs will request Incentive Awards each in the amount of $20,000.00, which includes consideration for a general release of all claims against Defendants.

A district court may award incentive payments to named plaintiffs in class action cases. *Rodriguez*, 563 F.3d at 958-959. The purpose of incentive awards is to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Id.* Such incentive awards are particularly appropriate in wage-and-hour actions where a plaintiff undertakes a significant reputational risk in bringing suit against his former employer. *Id.*

In determining the amount to award a named, plaintiff, the Court should consider the amount of time Plaintiffs spent on the litigation, the risks and burdens borne by Plaintiffs as a result of the litigation, and the particular benefit that Plaintiffs provided to counsel and the class as a whole throughout the litigation. *See Goodwin v. Winn Mgmt. Group LLC*, 2017 WL 3173006, at *12 (E.D. Cal. July 26, 2017) (citation omitted).

Here, the two Named Plaintiffs each request Incentive Awards in the amount of $20,000.00, for a total of $40,000.00. The following facts support an award of these amounts. First, the $40,000.00 total represents only approximately 0.59% of the Gross Settlement Amount. *ECF No. 283-3, Holmes Decl., ¶ 24.* Second, the Named Plaintiffs were highly paid Vacation



11

Counselors who worked for Defendants, each earning over six figures annually. *Id., ¶ 25*. Third, each recognized the manner in which they were paid overtime and questioned its legality, which prompted each of them to consult with legal counsel. *Id., ¶ 26*. Fourth, each were willing to serve as one of the Named Plaintiffs representing over 1,000 putative class members, which would require their names to be publicly listed on all pleadings in this case against one of the largest vacation ownership companies in the industry. Each had worked for years in the vacation ownership industry and ran the risk of being "blackballed" by other vacation ownership companies, which are part of a tight knit community of individuals who frequently move from one vacation ownership company to another. *Id., ¶ 27*. Fifth, each recognized that this could potentially result in costly and protracted litigation for Defendants. *Id., ¶ 28*. Sixth, each recognized that the retail and service establishment exemption contained in the FLSA would be at issue and that the Court would likely rule on this issue, creating precedent which would not only affect Defendants, but also other vacation ownership companies desiring that the exemption apply so that they would not be legally required to pay overtime to their employees. *Id., ¶ 29*. Seventh, each were heavily involved in the case from its inception, including the drafting of the Complaint, the filings for conditional certification and class certification (in which they submitted declarations), opposition to Defendants' retail and service establishment defense (in which Hughes submitted a declaration), the preparation of voluminous written discovery responses, participation in depositions and participation in two eight-hour mediations. *Id., ¶ 30*. Finally, the Incentive Awards include a general release by each Named Plaintiff for any and all claims against Defendants, which is worthy of additional monetary consideration. *Id., ¶ 31*.

Based on the foregoing, the Court should approve the Named Plaintiffs' requests for Incentive Awards in the amount of $20,000.00 each.

### IV. The Court Should Approve Plaintiffs' Request for Attorney's Fees and Costs

#### A. Attorney's Fees

Generally speaking, when a settlement produces a common fund for the benefit of the entire class, the Court has discretion to employ either the lodestar method or the percentage-of-recovery



12

method. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 942 (*citing In re Mercury Interactive Corp.*, 618 F.3d 988, 992 (9th Cir. 2010)). The choice between lodestar and percentage calculation depends on the circumstances, and either method may have its place in determining what would be reasonable compensation for creating a common fund. *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).

In this case, Plaintiffs request that the Court utilize the lodestar method for two reasons. First, as to the claims brought under the Hawaii Wage and Hour Law, HRS 387-1 *et seq.*, the statute provides for the recovery of attorney's fees and costs as part of an employee's recovery. *See* HRS 387-12(c). Hawaii courts have held that the lodestar method should be utilized when awarding attorney's fees under Hawaii fee-shifting statutes. *See Gurrobat v. HTH Corp.*, 135 Hawaii 128, 138, 346 P.3d 197, 207 (Hawaii 2015); *Kaleikini v. Yoshioka*, 129 Hawaii 454, 469, 304 P.3d 252, 267 (Hawaii 2013); and *DFS Group, L.P. v. Paiea Props.*, 110 Hawaii 217, 222, 131 P.3d 500, 505 (Hawaii 2006).

Second, the lodestar method is a more accurate way to allocate the Gross Settlement Amount. *ECF No. 283-3, Holmes Decl., ¶ 33.* As discussed above, if the Court awards Plaintiffs' counsel the attorney's fees and costs they request, awards the Named Plaintiffs the Incentive Awards they request, and settlement administrator costs reach the "not to exceed amount" of $37,500.00, the Net Settlement Amount of **$3,489,426.46** will not only compensate the classes at 100% for their miscalculation of overtime claims (which includes an equal amount in liquidated damages and the maximum recovery periods), but also will pay the classes a *premium* of approximately **10.39%** above and beyond what they could have possibly recovered at trial.

The lodestar figure is calculated by multiplying the number of hours expended on the litigation by a reasonable hourly rate for the region and experience of the lawyer. *Ballen v. City of Redmond,* 466 F.3d 736, 746 (9th Cir. 2006); *In re Bluetooth*, 654 F.3d at 941.

Class Counsel have kept and maintained contemporaneous records throughout the prosecution of this case detailing the tasks performed and the number of hours worked on each task. *Id., ¶ 36.* Further, Class Counsel have utilized Dickinson Wright PLLC's standard billing

13

rates assigned to attorneys and staff based on their experience. Dickinson Wright's standard billing rates are reasonable based on the experience of Class Counsel, and consistent with comparable law firms. *Id., ¶¶ 34-35.*

Through September 30, 2022, Class Counsel and their staff have spent 6,710.70 hours on this matter, equals $3,138,019.00 at their standard billing rates. *Holmes Supp. Decl, ¶ 7.*[7] Thus, Plaintiffs' current lodestar is *more* than the $2,723,173.50 maximum amount that Class Counsel will seek in Plaintiffs' motion for final approval and represents a 13.2% reduction in Class Counsel's lodestar through September 30, 2022, based on DW's standard billing rates. *Id.*[8]

In computing the lodestar amount, this Court must determine a reasonable hourly rate to use for Class Counsel. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205-1206 (9th Cir. 2013). Typically, the established standard used to determine a reasonable hourly rate is the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). However, the "community" does not mean simply the local geographic community where the matter was tried. Rather, the court is also free to examine the "national" market in a specific practice area or area of specialization. *Louisville Black Police Officers Org.*, 700 F.2d 268, 278 (6th Cir. 1983); *see also Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 768-69 (7th Cir. 1982); *Casey v. City of Cabool, Mo.*, 12 F.3d 799, 805 (8th Cir. 1993); *Blum v. Stenson*, 465 U.S. 866, 895, n. 11 (1984) ("[T]here is no such thing as a prevailing market rate for the service of lawyers in a particular community. The type of services rendered by lawyers, as well as their experience, skill and reputation, varies extensively-even within a law firm.").

In this Circuit, the Court is required to calculate an award of attorney's fees by *first* utilizing the lodestar. *Caudle v. Bristow Optical Co., Inc.*, 224 F.3d 1014, 1028 (9th Cir. 2000). Thereafter, the Court may adjust the lodestar upward or downward based on 12 factors. *See Hensley v.*

---

[7] Even after final approval, this amount will increase based on additional work performed by Class Counsel to complete the settlement process.

[8] It is well recognized that affidavits of the plaintiffs' attorneys and other attorneys in the community regarding prevailing fees in the community, and rate determinations in other cases are satisfactory evidence of the prevailing market rate. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008).



*Eckerhart*, 461 U.S. 424, 430 n. 3 (1983) (*citing Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717 (5th Cir. 1974) *abrogated on other grounds by Blanchard v. Bergeron,* 489 U.S. 87, 109 S. Ct. 939, 103 L. Ed. 2d 67 (1989)).  The twelve facts are: 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the skill requisite to perform the legal service properly; 4) the preclusion of employment by the attorney due to acceptance of the case; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or the circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation, and ability of the attorney; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases.  *Johnson*, 488 F.2d at 717-719.[9]

      Before discussing each of these factors, it is important to note that Plaintiffs are not requesting an upward adjustment to the lodestar, even though such an increase is warranted in this case.  Instead, the amount requested will be less than the lodestar.  Conversely, an analysis of the twelve factors does not warrant a downward adjustment to Plaintiffs' lodestar.  To the contrary, each of the twelve factors discussed below support the fees requested by Plaintiffs' counsel.

      The first factor – the time and labor required – are self-evident.  Through September 30, 2022, Plaintiffs' counsel and staff have spent 6,711 hours litigating this case for over 4 years.  A principal reason for the enormous expenditure of time and money was the contentious nature of this litigation in which virtually every issue was heavily contested.

      As to the second factor – the novelty and difficulty of the questions – this case presented an attempt by Defendants to apply the retail and service establishment exemption to the sale of vacation ownership interests.  Had Defendants succeeded, Plaintiffs would not have been entitled to any overtime pay whatsoever, let alone additional overtime pay based on Defendants' policy of miscalculating overtime using the hourly rate only.  As class counsel for plaintiffs who sold

---

[9] The 12 factors are also contained in L.R. 54-14(a)(3).

15

vacation ownership interests in the *Wyndham* case,[10] Plaintiffs' counsel are very knowledgeable and well-versed on this area of the law.

As to the third factor – the skill requisite to perform the legal services properly, given the complexity, difficulty and duration of the case, Plaintiffs submit that lawyers lacking the knowledge, experience, size and staff expertise of class counsel would have been ill-equipped to adequately respond to many of Defendants' legal arguments and forced to "throw in the towel." Only counsel like Plaintiffs' counsel, who have collectively over 75 years of experience handling complex litigation, particularly FLSA and other wage and hour litigation, could have effectively rebuffed Defendants' vigorous defense of the case.

As to the fourth factor – the preclusion of other employment – Plaintiffs' counsel and their staff had to forgo other less risky financial opportunities, and were no longer free to use the time spent on behalf of the class pursuing those less risky pursuits. Plaintiffs' counsel are on both sides of the "v," which includes the representation of employers in large collective and class actions. In those instances, counsel are paid by the hour and on a regular basis. *ECF No. 283, Holmes Decl., ¶ 47*.

As to the sixth factor – whether the fee is fixed or contingent – Class Counsel took this case on a contingency basis, increasing the risk that, absent an excellent result and solvent Defendants, Plaintiffs' counsel would not recoup the tremendous investment of time and money necessary to properly represent the class. Unlike defense counsel, Plaintiffs' counsel did not get paid a dime during the approximately 4-year course of this case, and in addition to the delay in getting paid, took on sizable risk. *Id., ¶ 48*.

As to the eighth factor – the amount of time involved and the results obtained – the Settlement speaks for itself. Not only will Class Members be guaranteed a 100% recovery for their miscalculation claims, doubled for liquidated damages and for the maximum recovery periods, the classes will receive a minimum of a 10.39% premium. Based on the foregoing, Plaintiffs' counsel obtained a substantial, multi-million dollar recovery on behalf of Class

---

[10] *Pierce, et al v. Wyndham Vacation Resorts, Inc., et al.*, Case No. 3:13-cv-641 (E.D. Tenn.)



Members, whose rights were allegedly violated under the FLSA and/or Hawaii Wage and Hour Law.

As to the ninth factor – the experience, reputation, and ability of the attorneys – as set forth in the original Declaration of Martin Holmes, the experience, reputation, and ability of Plaintiffs' counsel in handling FLSA and other class action cases merit an award of their lodestar fees. The track record of Plaintiffs' counsel speaks for itself and demonstrates counsel's vast experience, reputation and excellent abilities to successfully prosecute multiple multi-million dollar wage and hour recoveries over the past twenty 25 years.

As to the tenth factor – the undesirability of the case – while this case was an excellent case on the merits, such a case would be undesirable to the vast majority of attorneys and law firms due to the time, monetary commitment, and risks involved. Because of the substantial length of time that may occur before fees or expenses are recovered, if any, taking such a case can and often does have a substantial impact on a firm's earnings, or even existence. *Id., ¶ 51.*

While the case includes a Rule 23 component involving 600 Hawaii Class Members, there are 565 Opt-in Plaintiffs in the FLSA Collective Class. In determining the amount of attorney's fees to be awarded in FLSA actions such as this, courts have been instructed not to place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney's fees "encourage[s] the vindication of congressionally identified policies and rights." *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n Local 307 v. G&M Roofing and Sheet Metal Co.,* 732 F.2d 495, 503 (6th Cir. 1984). Consistent with this policy, courts have upheld "substantial awards of attorney's fees even though a plaintiff recovered only nominal damages." *Posner v. The Showroom, Inc.,* 762 F.2d 1010, 1985 WL 13108 at *2 (6th Cir.1985); *Flitton v. Primary Residential Mortg., Inc.,* 614 F.3d 1173, 1178 (10th Cir.2010) (upholding the district court's decision to award the full amount of fees requested, based on "substantial success," even though the plaintiff obtained only about 1.3% of the damages she had requested); *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1473 (9th Cir. 1983) *disapproved of on other grounds by Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 105 S. Ct. 1005, 83 L. Ed.

2d 1016 (1985) (despite $20,000 recovery for plaintiffs, court awarded $100,000 in attorney's fees); *Cabrales v. Cty. of Los Angeles*, 864 F.2d 1454, 1464–65 (9th Cir. 1988), *cert. granted, judgment vacated,* 490 U.S. 1087, 109 S. Ct. 2425, 104 L. Ed. 2d 982 (1989), and *opinion reinstated,* 886 F.2d 235 (9th Cir. 1989) (court awarded $152,284 in attorney's fees where jury awarded $150,000 in damages); *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1209 (9th Cir. 2013)(the court held it is not unreasonable for attorneys to receive a fee award that exceeds the amount recovered by their clients).

As discussed above, Plaintiffs have achieved an excellent result in this case and reached a settlement which, after deduction of the full amount of attorney's fees and costs that Plaintiffs will request, provides more than a 100% recovery for Class Members.

Based on the foregoing and the facts contained in the Declaration of Martin Holmes and the Supplemental Declaration of Martin Holmes, the attorney's fees and costs sought by Plaintiffs on behalf of Class Counsel are reasonable and should be approved by the Court.[11]

### B.   Costs

Prevailing plaintiffs in wage and hour claims brought under the FLSA and the Hawaii Wage and Hour Law are entitled to reimbursement for their reasonable costs incurred in the litigation. *See* 29 U.S.C. § 216(b); and HRS 387-12(c).  "Under the FLSA, costs include reasonable out-of-pocket expenses.  They can include costs beyond those normally allowed under Fed.R.Civ.P. 54(d) and 28 U.S.C. §1920." *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 969 (10th Cir. 2002) (citation omitted); *Herold v. Hajoca Corp.*, 864 F.2d 317, 323 (4th Cir. 1988) (holding that FLSA's costs provision authorizes an award of costs as part of a "reasonable attorney's fee," which would not be authorized under Rule 54 or 28 U.S.C. § 1920); *Colunga v. Young*, 722 F. Supp. 1479, 1488 (W.D. Mich. 1989), aff'd 914 F.2d 255 (6th Cir. 1990) (holding that, while travel and telephone costs are not recoverable under Rule 54 or 28 U.S.C. §1920, they are recoverable under "the remedial and thus more broadly interpreted cost-shifting aspect" of the FLSA).

---

[11]   Class Counsel provide more detail regarding their request for attorney's fees and costs in the Supplemental Declaration of Martin Holmes attached hereto as **Exhibit 1**.

As of September 30, 2022, the costs advanced by Class Counsel on Plaintiffs' behalf total $458,460.48, which is slightly more than the amount requested in this Motion - $450,763.00. Of the $458,460.48 total advanced by Class Counsel, $323,108.55 were "hard" costs including payments to: 1) CRA – $211,326.75 (Plaintiffs' experts, whose services were invaluable in this case in order to establish liability (*i.e.,* Defendants' method of calculating overtime based solely on the hourly rate as opposed to all compensation), as well as calculating damages for the Classes and each individual Class Member); 2) Brian Farrington – $27,200.00 (Plaintiffs' expert, who rebutted Defendants' retail or service establishment defense); and 3) David Rotman/Steven Rottman - $22,250.00 (mediators used by the parties in the first and second mediations). *Ex. 1, Holmes Supp. Decl., ¶ 14.*[12] As to the remaining "soft" costs totaling $135,351.93, this reflects costs associated with computerized legal research (which Class Counsel have discounted by 40% from the amount charged to the file), as well as in-house copying and data housing. *Id., ¶ 15.*

As with attorney's fees, costs will also increase after the final approval hearing, including costs associated with CRA calculating the amounts owed to each Class Member, which will depend on the final Net Settlement Amount. The Agreement also provides for a redistribution of any uncashed checks, including those payable to Class Members who cannot be located, which will require the services of CRA to calculate these additional amounts. *Id., ¶ 16.*

Based on the foregoing, Plaintiffs' request for costs in the amount of $450,763.00 is reasonable and should be approved by the Court.

## CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court: 1) approve the settlement terms set forth in the parties' Agreement; 2) approve Plaintiffs' proposed distribution of the Net Settlement Amount; 3) award Named Plaintiffs Gonzalez and Hughes $20,000.00 each as Incentive Awards; 4) award Plaintiffs attorney's fees in the amount of $2,723,173.50; and 5) award Plaintiffs costs in the amount of $450,763.00.

Plaintiffs' proposed Order is attached hereto as **Exhibit 2**.

---

[12] Other "hard costs" totaling $40,076.10 include deposition transcripts, travel, outside duplication, search services (PACER), long distance, postage, and filing fees.

Respectfully submitted,

DICKINSON WRIGHT PLLC

/s/ Martin D. Holmes
MICHAEL N. FEDER
Nevada Bar No. 7332
3883 Howard Hughes Parkway, Suite 800
Las Vegas, NV 89169

MARTIN D. HOLMES (*Admitted Pro Hac Vice*)
Tennessee Bar No. 012122
PETER F. KLETT (*Admitted Pro Hac Vice*)
Tennessee Bar No. 012688
424 Church Street, Suite 800
Nashville, TN 37219

*Attorneys for Plaintiffs, Opt-in Plaintiffs and Hawaii Class Members*

## CERTIFICATE OF SERVICE

I hereby certify that on October 25, 2022, I caused a true and accurate copy of the foregoing, PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT AND SUPPORTING MEMORANDUM to be filed with the Clerk of the Court via the Court's CM/ECF system, which sent an electronic copy of same to the following counsel of record:

HOWARD E. COLE
JENNIFER K. HOSTETLER
LEWIS ROCA ROTHGERBER CHRISTIE LLP
3993 Howard Hughes Pkwy, Suite 600
Las Vegas, NV 89169-5996

ALISON MEGAN HAMER (Admitted Pro Hac Vice)
BENJAMIN JOSEPH TREGER (Admitted Pro Hac Vice)
KIRSTIN ELISABETH MULLER (Admitted Pro Hac Vice)
FERRY EDEN LOPEZ (Admitted Pro Hac Vice)
HIRSCHFELD KRAEMER LLP
233 Wilshire Boulevard, Suite 600
Santa Monica, California  90401

*Attorneys for Defendants*

/s/ Martin D. Holmes
Martin D. Holmes

4853-9116-0378 v1 [77850-1]

